## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**GM GLOBAL TECHNOLOGY OPERATIONS, LLC**, a Delaware limited liability company,

)
)
)
)

Plaintiff,

)

Case No. 2:23-cv-13026-JJCG-CI

v.

)

**QUALITY COLLISION PARTS, INC.,** a Michigan corporation,

)
)
)

Honorable Jonathan J.C. Grey

Magistrate Judge Curtis Ivy, Jr

Defendant.

)
)

**JURY TRIAL DEMANDED**

)

**QUALITY COLLISION PARTS, INC.,** a Michigan corporation,

)
)
)

Counter-Plaintiff,

)
)

v.

)

**GENERAL MOTORS COMPANY, INC,** a Delaware corporation, **GENERAL MOTORS, LLC,** a Delaware limited liability company, and **GM GLOBAL TECHNOLOGY OPERATIONS, LLC**, a Delaware limited liability company

)
)
)
)
)
)
)
)
)

Counter-Defendants.

---

### QUALITY COLLISION PARTS, INC.'s ANSWER TO GM GLOBAL TECHNOLOGY OPERATIONS, LLC's COMPLAINT FOR DESIGN PATENT INFRINGEMENT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND JURY DEMAND

Defendant Quality Collision Parts, Inc. ("Quality Collision), by and through its undersigned attorneys, for its Answer, Affirmative Defenses and Counterclaims, states as follows:

1

## NATURE OF THE ACTION

1.     This is an action for design patent infringement arising under the Patent laws of the United States, 35 U.S.C § 101 *et seq.* GM Global Technology is the owner and assignee of the designs claimed in United States Patent Nos. D670,840, D843,025, D807,241, D805,964, D811,954, 0811,964, 0826,114, 0800,615, 0867,939, and 0777,622 (collectively the "Asserted GM Patents").

**ANSWER**: Admitted

2.     Quality Collision has used and continues to use the claimed designs of the Asserted GM Patents, without the permission of GM Global Technology, on various replacement and replica car parts that Quality Collision makes, uses, offers for sale, sells, and/or imports into the United States.

**ANSWER**: Denied

## THE PARTIES

3.     GM Global Technology is a Delaware limited liability company having a principal place of business at 300 Renaissance Center, Detroit, MI, 48265.

**ANSWER**: Admitted

4.     Quality Collision is a Michigan corporation with a principal place of business at 5600 E Nine Mile Road, Warren, MI, 48091.

**ANSWER**: Admitted

## JURISDICTION AND VENUE

5.     The Court has subject matter jurisdiction over this patent infringement action under 28 U.S.C. §§ 1331, 1367, and 1338.

**ANSWER**: Admitted

6.     This Court has personal jurisdiction over Quality Collision at least because Quality Collision (i) transacts and solicits business in the State of Michigan,

(ii) is a Michigan corporation, and (iii) is committing acts of patent infringement in the State of Michigan, at least, by selling, offering to sell, and/or importing replacement and replica car parts that infringe the Asserted GM Patents.

**ANSWER**: Admitted that the Court has personal jurisdiction, otherwise Denied.

7.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400 because Quality Collision is incorporated in the State of Michigan, and because Quality Collision has a regular and established place of business in this judicial district, including its principal place of business at 5600 E Nine Mile Road, Warren, MI, 48091. Quality Collision's operations in this district include the soliciting of business in this district, including with respect to replacement and replica car parts that infringe the Asserted GM Patents, and the committing of acts of infringement in this judicial district, by selling, offering to sell, and importing into this district replacement and replica car parts that infringe the Asserted GM Patents. Quality Collision states on its web site that it "service[s] aftermarket auto body parts to residents in these [Michigan] cities," many of which are in this judicial district: "Auburn Hills, Allen Park, Berkley, Beverly Hills, Birmingham, Bloomfield Hills, Center Line, Chesterfield, Clarkston, Clawson, Dearborn Heights, Detroit, Eastpointe, Farmington, Ferndale, Franklin, Grosse Pointe, Hazel Park, Huntington Wood, Livonia, Macomb, Madison Heights, Mount Clemens, Novi, Oak Park, Rochester, Roseville, Royal Oak, Southfield, Southgate, Sterling Heights, Troy, Utica, Walled Lake, Warren, West Bloomfield, Wixom, Woodhaven." (Exhibit 21.)

**ANSWER**: Admitted that venue is proper, otherwise Denied.

## BACKGROUND

8.     General Motors Company is one of the largest automotive vehicle manufacturers and innovators in the world. GM Global Technology is a wholly-owned subsidiary of General Motors Holdings LLC, which is a wholly-owned subsidiary of General Motors Company. General Motors LLC is also a wholly-owned subsidiary of General Motors Holdings LLC and is the U.S. operating unit of General Motors Company (as used herein, "GM" refers to General Motors Company and its U.S. Operating Entity General Motors LLC).

**ANSWER**: Quality Collision lacks knowledge or information sufficient to

form a belief about this allegation, so it leaves GM to its proofs.

9.     For over a century, GM has been a pioneer and at the forefront of the design of unique vehicles, auto bodies, and components, creating innovative and aesthetically beautiful designs from the iconic Chevrolet Corvette to the Cadillac Escalade. GM manages a team of hundreds of designers globally, investing millions of dollars annually in the design of its products.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to

form a belief about this allegation, so it leaves GM to its proofs.

10.     GM updates its products with regularity, which includes aesthetic updates to the ornamental designs of its vehicles and to specific parts of each of its vehicles.

**ANSWER**: Admitted

11.     GM sells individual vehicle components, including replacement parts and accessories.

**ANSWER**: Admitted

12.     GM through its Global Technology subsidiary invests heavily in the protection of the unique and innovative ornamental features embodied in its vehicles and the component parts of those vehicles, and has applied for and received over a thousand issued U.S. Design Patents.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to

form a belief about this allegation, so it leaves GM to its proofs.

13.     Quality Collision is in the business of selling replacement and replica parts for automotive vehicles. These replacement parts are intended and designed to be substitutable with the GM branded parts, and are intended and designed to be, and indeed are, near-identical (if not completely identical) carbon copies in terms of ornamental appearance to the GM parts that they are meant to replace. Quality Collision's business model is premised on the offering of replacement components that perfectly match the ornamental appearance of OEM components, including those of GM, and Quality Collision profits heavily from the misuse and infringement

of GM's patented ornamental designs.

**ANSWER**: Quality Collision admits that it is in the business of selling replacement and replica parts for automotive vehicles, including GM vehicles; otherwise, Denied.

14.     Quality Collision recognizes the aesthetic similarity of the parts it sells with GTO's patented designs: "[Quality Collision's] aftermarket General Motors (GM) auto body parts are designed and built to fit the exact specifications of your General Motors (GM) vehicle." (Ex. 21, p. 7.) Quality Collision claims that buying these replica parts from Quality Collision will "save you money on your General Motors (GM) auto body parts" as compared to purchasing the same parts from a "General Motors (GM) dealership." (AZ.) In fact, Quality Collision suggests consumers "grab the estimate" from an authorized GM "dealership" and then "give us a call and let us try to save you money." *(Id.)*

**ANSWER**: Quality Collision does not understand the reference to GTO; and it denies infringement of any valid patent; otherwise, Admitted.

15.     Quality Collision's widespread and ongoing infringement has caused and continues to cause significant damage to GM. Because Quality Collision does not invest in design and intellectual property, but rather copies the patented designs of GM, it is able to charge less for aftermarket replacement parts than an authorized GM dealer. Quality Collision touts exactly this type of price undercutting and copying as the sole reason for a customer to purchase a Quality Collision infringing product. Its web site gives an example:

> You are driving a 2015 GMC Acadia and you are looking or a front bumper. You began heading to General Motors (GM) collision sh[o]ps and General Motors (GM) dealerships and they were all quoting you $450 and up. If you purchase the 2015 GMC Acadia bumper from us you will only be paying $258.00. This will save you $192.00 that can go towards paint and installation. If you needed more parts on your vehicle besides the front bumper, you can save at least half of the estimate on parts. **These are the same General Motors (GM) aftermarket auto body**

> **parts that your General Motors (GM) collision shop and General Motors (GM) dealership is quoting you for.**

(*Id.* at p.9) (emphasis added).

      **ANSWER**: Admitted that the quote is accurate; otherwise, Denied.

      16.    Quality Collision's infringement of Asserted GM Patents is widespread and ongoing, and extends across many categories of replacement parts, including but not limited to: mirrors, grilles, hoods, fenders, bumpers, headlamps, and taillamps.

      **ANSWER**: Denied

      17.    Quality Collision's infringement of Asserted GM Patents has caused, is causing, and will continue to cause irreparable harm to GM, including but not limited to: lost profits, lost customers, lost market share, price erosion, reputational harm, loss of good will, and harm to GM's reputation for innovation.

      **ANSWER**: Denied

      18.    Quality Collision was made aware of the Asserted GM Patents at least through the initiation of a governmental investigation and regulatory action that occurred in July 2022.

      **ANSWER**: Denied

      19.    Specifically, in July 2022, Customs and Border Protection ("CBP") seized a number of parts from Quality Collision's facilities in Warren and Richmond, Michigan, for various intellectual property violations, including that the seized parts infringed or were suspected of infringing on certain trademarks and design patents of various automotive companies including GM.

      **ANSWER**: Admitted that CBP seized parts; Denied that there is

infringement.

      20.    At CBP's request, in December 2022, GM employees inspected the seized parts at a CBP facility and concluded that the seized parts infringed upon various of GM's intellectual property rights, including infringing upon a number of GM's issued design patents, a portion of which include the Asserted GM Patents.

GM provided evidence to CBP detailing the basis for its determination of design patent infringement in the form of various sworn affidavits.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to form a belief about this allegation, so it leaves GM to its proofs. Denied that there was any infringement or wrongdoing.

21.     On information and belief, in and around December 2022, Quality Collision learned of GM's determination of design patent infringement, including that GM alleged design patent infringement of the Asserted GM Patents and the basis for those allegations as set forth in GM's sworn affidavits.

**ANSWER**: Denied

22.     During discussions with Quality Collision's previous counsel (Varnum) on May 22, 2023, Quality Collision was directed to and provided information regarding GM's virtual patent marking list located at https://www.gmparts.com/gm-part-design-patents. GM's virtual patent marking list includes all of the Asserted GM Patents and a correlation with their respective commercial embodiments.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to form a belief about the allegation contained in the second sentence, so it leaves GM to its proofs. Denied as to the remaining allegations.

23.     Quality Collision was formally notified, in writing, of its infringement of the Asserted GM Patents no later than June 13,2023, in a letter from GM counsel to Quality Collision. (Exhibit 22.) On August 7, 2023, counsel for Quality Collision acknowledged to GM counsel that it was in possession of copies of the various affidavits outlining the basis and evidence for GM's determination of design patent infringement that GM had previously provided to CBP.

**ANSWER**: Admitted that Quality Collision received a letter from GM on June 13, 2023 asserting claims of design patent infringement. Admitted that on

August 7, 2023 counsel for Quality Collision sent a communication to GM that outlined the deficiencies in the various affidavits provided to the CBP and requesting supporting detail, which GM has refused to provide. Denied as to the remaining allegations.

24.     Quality Collision does not have a license or any other authorization to practice the designs of the Asserted GM Patents.

**ANSWER**: Admitted that Quality Collision does not have a license. Denied that it needs one.

<u>**COUNT I**</u>
**(Infringement of U.S. Patent D670,840)**

25.     GM Global Technology restates and incorporates by reference each of its allegations in paragraphs 1-24 as if fully set forth herein.

**ANSWER**: Quality Collision likewise restates and incorporates by reference each of its responses as if fully set forth herein.

26.     One of GM Global Technology's designs is shown in United States Patent No. D670,840 ("the D'840 Patent"). The D'840 Patent is titled "Vehicle Head Lamp," and was duly issued by the United States Patent and Trademark Office ("USPTO") on November 13, 2012. A true and correct copy of the D'840 Patent is attached hereto as Exhibit 1.

**ANSWER**: Denied that the Patent was duly issued; otherwise admitted.

27.     The D'840 Patent is assigned to GM Global Technology, which owns all substantial rights, interest, and title in the D'840 Patent.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to form a belief about this allegation, so it leaves GM to its proofs.

28.    The D'840 Patent is presumed valid and enforceable.

**ANSWER**: Admitted as to the presumption, otherwise Denied.

29.    The design of the D'840 Patent is commercially embodied in the 2013-2016 Chevrolet Malibu headlamp.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to

form a belief about this allegation, so it leaves GM to its proofs.

30.    On its website, Quality Collision specifically states that it carries aftermarket auto body parts for the Chevrolet Malibu (1997-present) and for Chevrolet headlights, which includes the 2013-2016 Chevrolet Malibu headlamp. (Ex. 21, pp. 8, 15, 17.) Quality Collision's web site further states that it carries aftermarket auto body parts for "Chevrolet Aftermarket Headlights." (*Id.* at 29.)

**ANSWER**: Admitted

31.    As shown in claim chart attached as Exhibit 2 hereto, Quality Collision's Part Nos. GM2502362, GM2503362, and GM2503400 directly infringe the D'840 Patent and are substantially similar, if not identical, to the designs disclosed in the D'840 Patent.

**ANSWER**: Denied

32.    Quality Collision has made, used, offered for sale, sold, and/or imported into the United States at least Part Nos. GM2502362, GM2503362, and GM2503400, having designs that infringe the D'840 Patent.

**ANSWER**: Denied

33.    Quality Collision has been on notice of its infringement of the D'840 Patent at least by December 7, 2022, if not earlier, and Quality Collision's infringement is willful.

**ANSWER**: Denied

34.    Quality Collision does not have a license to practice the designs claimed in the D'840 Patent, and is not otherwise authorized to do so.

**ANSWER**: Admitted that Quality Collision does not have a license. Denied that it needs one.

35.     Accordingly, Quality Collision has engaged in infringing acts related to the D'840 Patent with knowledge of the fact Quality Collision's parts infringe the D'840 Patent. Further, Quality Collision has disregarded an objectively high likelihood of infringement of the D'840 Patent, and has acted, and continues to act, willfully, wantonly, and in deliberate disregard of GM Global Technology's rights.

**ANSWER**: Denied

**COUNT II**
**(Infringement of U.S. Patent D843,025)**

36.     GM Global Technology restates and incorporates by reference each of its allegations in paragraphs 1-35 as if fully set forth herein.

**ANSWER**: Quality Collision likewise restates and incorporates by reference each of its responses as if fully set forth herein.

37.     One of GM Global Technology's designs is shown in United States Patent No. D843,025 ("the D'025 Patent"). The D'025 Patent is titled "Vehicle Front Headlamp," and was duly issued by the USPTO on March 12, 2019. A true and correct copy of the D'025 Patent is attached hereto as Exhibit 3.

**ANSWER**: Denied that the Patent was duly issued; otherwise admitted.

38.     The D'025 Patent is assigned to GM Global Technology, which owns all substantial rights, interest, and title in the D'025 Patent.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to form a belief about this allegation, so it leaves GM to its proofs.

39.     The D'025 Patent is presumed valid and enforceable.

**ANSWER**: Admitted as to the presumption, otherwise Denied.

40.    The design of the D'025 Patent is commercially embodied in the 2019-2024 Chevrolet Malibu headlamp.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to form a belief about this allegation, so it leaves GM to its proofs.

41.    On its website, Quality Collision specifically states that it carries aftermarket auto body parts for the Chevrolet Malibu (1997-present) and for Chevrolet headlights which includes the 2019-2024 Chevrolet Malibu headlamp. (Ex. 21, pp. 8, 15, 17, 29.)

**ANSWER**: Admitted

42.    As shown in the attached claim chart at Exhibit 4 attached hereto, Quality Collision's Part Nos. GM2502498 and GM2503498 directly infringe the D'025 Patent and are substantially similar, if not identical, to the designs disclosed in the D'025 Patent.

**ANSWER**: Denied

43.    Quality Collision has made, used, offered for sale, sold, and/or imported into the United States at least Part Nos. GM2502498 and GM2503498, having designs that infringe the D'025 Patent.

**ANSWER**: Denied

44.    Quality Collision has been on notice of its infringement of the D'025 Patent at least by December 7, 2022, if not earlier, and Quality Collision's infringement is willful.

**ANSWER**:

45.    Quality Collision does not have a license to practice the designs claimed in the D'025 Patent, and is not otherwise authorized to do so.

**ANSWER**: Admitted that Quality Collision does not have a license. Denied that it needs one.

46.     Accordingly, Quality Collision has engaged in infringing acts related to the D'025 Patent with knowledge of the fact Quality Collision's parts infringe the D'025 Patent. Further, Quality Collision has disregarded an objectively high likelihood of infringement of the D'025 Patent, and has acted, and continues to act, willfully, wantonly, and in deliberate disregard of GM Global Technology's rights.

**ANSWER**: Denied

## COUNT III
**(Infringement of U.S. Patent D807,241)**

47.     GM Global Technology restates and incorporates by reference each of its allegations in paragraphs 1-46 as if fully set forth herein.

**ANSWER**: Quality Collision likewise restates and incorporates by reference each of its responses as if fully set forth herein.

48.     One of GM Global Technology's designs is shown in United States Patent No. D807,241 ("the D'241 Patent"). The D'241 Patent is titled "Vehicle Grille," and was duly issued by the USPTO on January 9, 2018. A true and correct copy of the D'241 Patent is attached hereto as Exhibit 5.

**ANSWER**: Denied that the Patent was duly issued; otherwise admitted.

49.     The D'241 Patent is assigned to GM Global Technology, which owns all substantial rights, interest, and title in the D'241 Patent.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to form a belief about this allegation, so it leaves GM to its proofs.

50.     The D'241 Patent is presumed valid and enforceable.

**ANSWER**: Admitted as to the presumption, otherwise Denied.

51.     The design of the D'241 Patent is commercially embodied in the 2018-2021 Chevrolet Equinox grille.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to

form a belief about this allegation, so it leaves GM to its proofs.

52.    On its website, Quality Collision specifically states that it carries aftermarket auto body parts for the Chevrolet Equinox (2005-present) and for Chevrolet grilles which includes the 2018-2021 Chevrolet Equinox grille. (Ex. 21, pp. 9, 15, 18, 23.

**ANSWER**: Admitted

53.    As shown in the attached claim chart at Exhibit 6 attached hereto, Quality Collision's Part Nos. GM1200760 and GM1200685 directly infringe the D'241 Patent and are substantially similar, if not identical, to the designs disclosed in the D'241 Patent.

**ANSWER**: Denied

54.    Quality Collision has made, used, offered for sale, sold, and/or imported into the United States at least Part Nos. GM1200760 and GM1200685, having designs that infringe the D'241 Patent. This includes the grille alone and in combination as part of a larger grille assembly.

**ANSWER**: Denied

55.    Quality Collision has been on notice of its infringement of the D'241 Patent at least by December 7, 2022, if not earlier, and Quality Collision's infringement is willful.

**ANSWER**: Denied

56.    Quality Collision does not have a license to practice the designs claimed in the D'241 Patent, and is not otherwise authorized to do so.

**ANSWER**: Admitted that Quality Collision does not have a license. Denied

that it needs one.

57.    Accordingly, Quality Collision has engaged in infringing acts related to the D'241 Patent with knowledge of the fact Quality Collision's part infringes the D'241 Patent. Further, Quality Collision has disregarded an objectively high likelihood of infringement of the D'241 Patent, and has acted, and continues to act,

willfully, wantonly, and in deliberate disregard of GM Global Technology's rights.

**ANSWER**: Denied

## COUNT IV
### (Infringement of U.S. Patent D805,964)

58.    GM Global Technology restates and incorporates by reference each of its allegations in paragraphs 1-57 as if fully set forth herein.

**ANSWER**: Quality Collision likewise restates and incorporates by reference

each of its responses as if fully set forth herein.

59.    One of GM Global Technology's designs is shown in United States Patent No. D805,964 ("the D'5,964 Patent"). The D'5,964 Patent is titled "Vehicle Grille," and was duly issued by the USPTO on December 26, 2017. A true and correct copy of the D'5,964 Patent is attached hereto as Exhibit 7.

**ANSWER**: Denied that the Patent was duly issued; otherwise admitted.

60.    The D'5,964 Patent is assigned to GM Global Technology, which owns all substantial rights, interest, and title in the D'5,964 Patent.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to

form a belief about this allegation, so it leaves GM to its proofs.

61.    The D'5,964 Patent is presumed valid and enforceable.

**ANSWER**: Admitted as to the presumption, otherwise Denied.

62.    The design of the D'5,964 Patent is commercially embodied in the 2017-2019 Buick LaCrosse Grille.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to

form a belief about this allegation, so it leaves GM to its proofs.

63.    On its website, Quality Collision specifically states that it carries

aftermarket auto body parts for the Buick Lacrosse and for GM grilles which includes the 2017-2019 Buick LaCrosse Grille. (Ex. 21, pp. 7, 23.)

**ANSWER**: Admitted

64.    As shown in the attached claim chart at Exhibit 8 attached hereto, Quality Collision's Part Nos. GM1200749 and ASYA16 directly infringe the D'5,964 Patent and are substantially similar, if not identical, to the designs disclosed in the D'5,964 Patent.

**ANSWER**: Denied

65.    Quality Collision has made, used, offered for sale, sold, and/or imported into the United States at least Part Nos. GM1200749 and ASYA16, having designs that infringe the D'5,964 Patent. This includes the grille alone and in combination as part of an assembly.

**ANSWER**: Denied

66.    Quality Collision has been on notice of its infringement of the D'5,964 Patent at least by December 7, 2022, if not earlier, and Quality Collision's infringement is willful.

**ANSWER**: Denied

67.    Quality Collision does not have a license to practice the designs claimed in the D'5,964 Patent, and is not otherwise authorized to do so.

**ANSWER**: Admitted that Quality Collision does not have a license. Denied

that it needs one.

68.    Accordingly, Quality Collision has engaged in infringing acts related to the D'5,964 Patent with knowledge of the fact Quality Collision's part infringes the D'5,964 Patent. Further, Quality Collision has disregarded an objectively high likelihood of infringement of the D'5,964 Patent, and has acted, and continues to act, willfully, wantonly, and in deliberate disregard of GM Global Technology's rights.

**ANSWER**: Denied

## COUNT V
### (Infringement of U.S. Patent D811,954)

69.     GM Global Technology restates and incorporates by reference each of its allegations in paragraphs 1-68 as if fully set forth herein.

**ANSWER**: Quality Collision likewise restates and incorporates by reference each of its responses as if fully set forth herein.

70.     One of GM Global Technology's designs is shown in United States Patent No. D811,954 ("the D'954 Patent"). The D'954 Patent is titled "Radiator Grille of Car," and was duly issued by the USPTO on March 6, 2018. A true and correct copy of the D'954 Patent is attached hereto as Exhibit 9.

**ANSWER**: Denied that the Patent was duly issued; otherwise admitted.

71.     The D'954 Patent is assigned to GM Global Technology, which owns all substantial rights, interest, and title in the D'954 Patent.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to form a belief about this allegation, so it leaves GM to its proofs.

72.     The D'954 Patent is presumed valid and enforceable.

**ANSWER**: Admitted as to the presumption, otherwise Denied.

73.     The design of the D'954 Patent is commercially embodied in the 2017-2022 Buick Encore Grille.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to form a belief about this allegation, so it leaves GM to its proofs.

74.     On its website, Quality Collision specifically states that it carries aftermarket auto body parts for the Buick Encore and for GM grilles which includes the 2017-2022 Buick Encore grille. (Ex. 21, pp. 7, 23.)

**ANSWER**: Admitted

75.     As shown in the attached claim chart at Exhibit 10 attached hereto, Quality Collision's Part Nos. FZ1109, ASY4127, ASY4128, and ASY4127A directly infringe the D'954 Patent and are substantially similar, if not identical, to the designs disclosed in the D'954 Patent.

**ANSWER**: Denied

76.     Quality Collision has made, used, offered for sale, sold, and/or imported into the United States at least Part Nos. FZ1109, ASY4127, ASY4128, and ASY4127A, having designs that infringe the D'954 Patent. This includes the grille alone and in combination as part of an assembly.

**ANSWER**: Denied

77.     Quality Collision has been on notice of its infringement of the D'954 Patent at least by December 7, 2022, if not earlier, and Quality Collision's infringement is willful.

**ANSWER**: Denied

78.     Quality Collision does not have a license to practice the designs claimed in the D'954 Patent, and is not otherwise authorized to do so.

**ANSWER**: Admitted that Quality Collision does not have a license. Denied

that it needs one.

79.     Accordingly, Quality Collision has engaged in infringing acts related to the D'954 Patent with knowledge of the fact Quality Collision's part infringes the D'954 Patent. Further, Quality Collision has disregarded an objectively high likelihood of infringement of the D'954 Patent, and has acted, and continues to act, willfully, wantonly, and in deliberate disregard of GM Global Technology's rights.

**ANSWER**: Denied

## COUNT VI
### (Infringement of U.S. Patent D811,964)

80.     GM Global Technology restates and incorporates by reference each of its allegations in paragraphs 1-79 as if fully set forth herein.

**ANSWER**: Quality Collision likewise restates and incorporates by reference each of its responses as if fully set forth herein.

81.     One of GM Global Technology's designs is shown in United States Patent No. D811,964 ("the D'1,964 Patent"). The D'1,964 Patent is titled "Vehicle Front Upper Bumper," and was duly issued by the USPTO on March 6, 2018. A true and correct copy of the D' 1,964 Patent is attached hereto as Exhibit 11.

**ANSWER**: Denied that the Patent was duly issued; otherwise admitted.

82.     The D'1,964 Patent is assigned to GM Global Technology, which owns all substantial rights, interest, and title in the D'1,964 Patent.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to form a belief about this allegation, so it leaves GM to its proofs.

83.     The D'1,964 Patent is presumed valid and enforceable.

**ANSWER**: Admitted as to the presumption, otherwise Denied.

84.     The design of the D'1,964 Patent is commercially embodied in the 2018-2021 Chevrolet Equinox Front Bumper.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to form a belief about this allegation, so it leaves GM to its proofs.

85.     On its website, Quality Collision specifically states that it carries aftermarket auto body parts for the Chevrolet Equinox (2005-present) and for Front & Rear Aftermarket Bumper Covers which includes the 2019-2021 Chevrolet Equinox front bumper. (Ex. 21, pp. 7-8, 9, 15-16, 18, 35.)

**ANSWER**: Admitted

86.     As shown in the attached claim chart at Exhibit 12 attached hereto, Quality Collision's Part No. GM1014130 directly infringes the D'1,964 Patent and is substantially similar, if not identical, to the designs disclosed in the D'1,964

Patent.

**ANSWER**: Denied

87.     Quality Collision has made, used, offered for sale, sold, and/or imported into the United States at least Part No. GM1014130, having a design that infringes the D'1,964 Patent. This includes the bumper alone and in combination as part of a larger assembly.

**ANSWER**: Denied

88.     Quality Collision has been on notice of its infringement of the D'1,964 Patent at least by December 7, 2022, if not earlier, and Quality Collision's infringement is willful.

**ANSWER**: Denied

89.     Quality Collision does not have a license to practice the designs claimed in the D'1,964 Patent, and is not otherwise authorized to do so.

**ANSWER**: Admitted that Quality Collision does not have a license. Denied

that it needs one.

90.     Accordingly, Quality Collision has engaged in infringing acts related to the D'1,964 Patent with knowledge of the fact Quality Collision's part infringes the D'1,964 Patent. Further, Quality Collision has disregarded an objectively high likelihood of infringement of the D'1,964 Patent, and has acted, and continues to act, willfully, wantonly, and in deliberate disregard of GM Global Technology's rights.

**ANSWER**: Denied

## <u>COUNT VII</u>
**(Infringement of U.S. Patent D826,114)**

91.     GM Global Technology restates and incorporates by reference each of its allegations in paragraphs 1-90 as if fully set forth herein.

**ANSWER**: Quality Collision likewise restates and incorporates by reference

each of its responses as if fully set forth herein.

92.    One of GM Global Technology's designs is shown in United States Patent No. D826,114 ("the D'114 Patent"). The D'114 Patent is titled "Vehicle Front Bumper," and was duly issued by the USPTO on August 21,2018. A true and correct copy of the D'114 Patent is attached hereto as Exhibit 13.

**ANSWER**: Denied that the Patent was duly issued; otherwise admitted.

93.    The D'114 Patent is assigned to GM Global Technology, which owns all substantial rights, interest, and title in the D'114 Patent.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to

form a belief about this allegation, so it leaves GM to its proofs.

94.    The D'114 Patent is presumed valid and enforceable.

**ANSWER**: Admitted as to the presumption, otherwise Denied.

95.    The design of the D'114 Patent is commercially embodied in the 2019-2020 Chevrolet Malibu Fascia.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to

form a belief about this allegation, so it leaves GM to its proofs.

96.    On its website, Quality Collision specifically states that it carries aftermarket auto body parts for the Chevrolet Malibu (1997-present) and for Chevrolet Upper, Center, & Lower Grille Moldings which includes the 2019-2020 Chevrolet Malibu fascia. (Ex. 21, pp. 8, 15, 17, 23.)

**ANSWER**: Admitted

97.    As shown in the attached claim chart at Exhibit 14 attached hereto, Quality Collision's Part No. GM1000A37 directly infringes the D'114 Patent and is substantially similar, if not identical, to the designs disclosed in the D'114 Patent.

**ANSWER**: Denied

98.    Quality Collision has made, used, offered for sale, sold, and/or imported into the United States at least Part No. GM1000A37, having a design that infringes the D' 114 Patent. This includes the fascia alone and in combination as part of a larger assembly.

**ANSWER**: Denied

99.    Quality Collision has been on notice of its infringement of the D'114 Patent at least by December 7, 2022, if not earlier, and Quality Collision's infringement is willful.

**ANSWER**: Denied

100.    Quality Collision does not have a license to practice the designs claimed in the D'114 Patent, and is not otherwise authorized to do so.

**ANSWER**: Admitted that Quality Collision does not have a license. Denied

that it needs one.

101.    Accordingly, Quality Collision has engaged in infringing acts related to the D'114 Patent with knowledge of the fact Quality Collision's part infringes the D'114 Patent. Further, Quality Collision has disregarded an objectively high likelihood of infringement of the D'114 Patent, and has acted, and continues to act, willfully, wantonly, and in deliberate disregard of GM Global Technology's rights.

**ANSWER**: Denied

## COUNT VIII
### (Infringement of U.S. Patent D800,615)

102.    GM Global Technology restates and incorporates by reference each of its allegations in paragraphs 1-101 as if fully set forth herein.

**ANSWER**: Quality Collision likewise restates and incorporates by reference

each of its responses as if fully set forth herein.

103.    One of GM Global Technology's designs is shown in United States Patent No. D800,615 ("the D'615 Patent"). The D'615 Patent is titled "Front

Bumper of Car," and was duly issued by the USPTO on October 24, 2017. A true and correct copy of the D'615 Patent is attached hereto as Exhibit 15.

**ANSWER**: Denied that the Patent was duly issued; otherwise admitted.

104.   The D'615 Patent is assigned to GM Global Technology, which owns all substantial rights, interest, and title in the D'615 Patent.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to

form a belief about this allegation, so it leaves GM to its proofs.

105.   The D'615 Patent is presumed valid and enforceable.

**ANSWER**: Admitted as to the presumption, otherwise Denied.

106.   The design of the D'615 Patent is commercially embodied in the 2017-2022 Buick Encore Fascia.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to

form a belief about this allegation, so it leaves GM to its proofs.

107.   On its website, Quality Collision specifically states that it carries aftermarket auto body parts for Buick Encore and for Bumper Cover(s) which includes the 2017-2022 Buick Encore Fascia. (Ex. 21, pp. 7, 35, 36.)

**ANSWER**: Admitted

108.   As shown in the attached claim chart at Exhibit 16 attached hereto, Quality Collision's Part Nos. GM1014127, ASY4127A, and ASY4128 directly infringe the D'615 Patent and are substantially similar, if not identical, to the designs disclosed in the D'615 Patent.

**ANSWER**: Denied

109.   Quality Collision has made, used, offered for sale, sold, and/or imported into the United States at least Part Nos. GM1014127, ASY4127A, and ASY4128, having designs that infringe the D'615 Patent. This includes the fascia alone and in combination as part of an assembly.

**ANSWER**: Denied

110.   Quality Collision has been on notice of its infringement of the D'615 Patent at least by December 7, 2022, if not earlier, and Quality Collision's infringement is willful.

**ANSWER**: Denied

111.   Quality Collision does not have a license to practice the designs claimed in the D'615 Patent, and is not otherwise authorized to do so.

**ANSWER**: Admitted that Quality Collision does not have a license. Denied

that it needs one.

112.   Accordingly, Quality Collision has engaged in infringing acts related to the D'615 Patent with knowledge of the fact Quality Collision's part infringes the D'615 Patent. Further, Quality Collision has disregarded an objectively high likelihood of infringement of the D'615 Patent, and has acted, and continues to act, willfully, wantonly, and in deliberate disregard of GM Global Technology's rights.

**ANSWER**: Denied

## COUNT IX
### (Infringement of U.S. Patent D867,939)

113.   GM Global Technology restates and incorporates by reference each of its allegations in paragraphs 1-112 as if fully set forth herein.

**ANSWER**: Quality Collision likewise restates and incorporates by reference

each of its responses as if fully set forth herein.

114.   One of GM Global Technology's designs is shown in United States Patent No. D867,939 ("the D'939 Patent"). The D'939 Patent is titled "Vehicle Grille Bezel," and was duly issued by the USPTO on November 26, 2019. A true and correct copy of the D'939 Patent is attached hereto as Exhibit 17.

**ANSWER**: Denied that the Patent was duly issued; otherwise admitted.

115.   The D'939 Patent is assigned to GM Global Technology, which owns all substantial rights, interest, and title in the D'939 Patent.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to form a belief about this allegation, so it leaves GM to its proofs.

116.   The D'939 Patent is presumed valid and enforceable.

**ANSWER**: Admitted as to the presumption, otherwise Denied.

117.   The design of the D'939 Patent is commercially embodied in the 2019 Chevrolet Cruze Grille.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to form a belief about this allegation, so it leaves GM to its proofs.

118.   On its website, Quality Collision specifically states that it carries aftermarket auto body parts for the Chevrolet Cruze (compact) (2008-present) and for Chevrolet Grilles which includes the 2019 Chevrolet Cruze grille bezel. (Ex. 21, pp. 7, 15, 17, 23.)

**ANSWER**: Admitted

119.   As shown in the attached claim chart at Exhibit 18 attached hereto, Quality Collision's Part No. ASYA36CV includes a part that directly infringes the D'939 Patent and is substantially similar, if not identical, to the designs disclosed in the D'939 Patent.

**ANSWER**: Denied

120.   Quality Collision has made, used, offered for sale, sold, and/or imported into the United States at least Part No. ASYA36CV, having a part that has a design that infringes the D'939 Patent. This includes the grille bezel alone and in combination as part of an assembly.

**ANSWER**: Denied

121.   Quality Collision has been on notice of its infringement of the D'939

Patent at least by December 7, 2022, if not earlier, and Quality Collision's infringement is willful.

**ANSWER**: Denied

122.   Quality Collision does not have a license to practice the designs claimed in the D'939 Patent, and is not otherwise authorized to do so.

**ANSWER**: Admitted that Quality Collision does not have a license. Denied

that it needs one.

123.   Accordingly, Quality Collision has engaged in infringing acts related to the D'939 Patent with knowledge of the fact Quality Collision's part infringes the D'939 Patent. Further, Quality Collision has disregarded an objectively high likelihood of infringement of the D'939 Patent, and has acted, and continues to act, willfully, wantonly, and in deliberate disregard of GM Global Technology's rights.

**ANSWER**: Denied

## COUNT X
### (Infringement of U.S. Patent D777,622)

124.   GM Global Technology restates and incorporates by reference each of its allegations in paragraphs 1-123 as if fully set forth herein.

**ANSWER**: Quality Collision likewise restates and incorporates by reference

each of its responses as if fully set forth herein.

125.   One of GM Global Technology's designs is shown in United States Patent No. D777,622 ("the D'622 Patent"). The D'622 Patent is titled "Vehicle Hood," and was duly issued by the USPTO on January 31,2017. A true and correct copy of the D'622 Patent is attached hereto as Exhibit 19.

**ANSWER**: Denied that the Patent was duly issued; otherwise admitted.

126.   The D'622 Patent is assigned to GM Global Technology, which owns all substantial rights, interest, and title in the D'622 Patent.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to form a belief about this allegation, so it leaves GM to its proofs.

127.   The D'622 Patent is presumed valid and enforceable.

**ANSWER**: Admitted as to the presumption, otherwise Denied.

128.   The design of the D'622 Patent is commercially embodied in the 2016-2019 Chevrolet Cruze hood.

**ANSWER**: Quality Collision lacks knowledge or information sufficient to form a belief about this allegation, so it leaves GM to its proofs.

129.   On its website, Quality Collision specifically states that it carries aftermarket auto body parts for the Chevrolet Cruze (compact) (2008-present) and for Chevrolet Hoods which includes the 2016-2019 Chevrolet Cruze hood. (Ex. 21, pp. 7, 15, 17, 40.)

**ANSWER**: Admitted

130.   As shown in the attached claim chart at Exhibit 20 attached hereto, Quality Collision's Part No. GM1230443 directly infringes the D'622 Patent and is substantially similar, if not identical, to the designs disclosed in the D'622 Patent.

**ANSWER**: Denied

131.   Quality Collision has made, used, offered for sale, sold, and/or imported into the United States at least Part No. GM1230443, having a design that infringes the D'622 Patent. This includes the hood alone and in combination as part of a larger assembly.

**ANSWER**: Denied

132.   Quality Collision has been on notice of its infringement of the D'622 Patent at least by December 7, 2022, if not earlier, and Quality Collision's infringement is willful.

**ANSWER**: Denied

133.   Quality Collision does not have a license to practice the designs claimed in the D'622 Patent, and is not otherwise authorized to do so.

**ANSWER**: Admitted that Quality Collision does not have a license. Denied that it needs one.

134.   Accordingly, Quality Collision has engaged in infringing acts related to the D'622 Patent with knowledge of the fact Quality Collision's part infringes the D'622 Patent. Further, Quality Collision has disregarded an objectively high likelihood of infringement of the D'622 Patent, and has acted, and continues to act, willfully, wantonly, and in deliberate disregard of GM Global Technology's rights.

**ANSWER**: Denied

## AFFIRMATIVE DEFENSES

By way of further Answer and as affirmative defenses, Quality Collision Parts, Inc. ("Quality Collision") denies that it is liable to Plaintiff on any of the claims alleged and denies that Plaintiff is entitled to damages, treble or punitive damages, equitable relief, attorneys' fees, costs, pre-judgment interest, or to any relief whatsoever, and asserts the following.

## FIRST AFFIRMATIVE DEFENSE

GM's design patents are each invalid under one or more sections in 35 U.S.C. §§101, 102, 103, 112 and 171.

## SECOND AFFIRMATIVE DEFENSE

GM has unclean hands in the way it pursued whatever patent rights it had before the present case started.

## THIRD AFFIRMATIVE DEFENSE

GM's design patents each claim functional subject matter and are ineligible for design patent protection.

## COUNTERCLAIMS

NOW COMES Quality Collision Parts, Inc. (the "Counter-Plaintiff" or "Quality Collision") and for its counterclaims against General Motors Company, Inc., General Motors, LLC, and GM Global Technology Operations, LLC, states as follows:

1.     On information and belief, GM Global Technology Operations, LLC is a wholly-owned subsidiary of General Motors Holdings LLC, which is a wholly-owned subsidiary of General Motors Company, Inc. General Motors, LLC is also a wholly-owned subsidiary of General Motors Holdings LLC and is the U.S. operating unit of General Motors Company, Inc. These three companies operate in conjunction with each other and coordinated the actions as more fully described herein. Collectively, General Motors Company, Inc., General Motors, LLC, and GM Global Technology Operations, LLC are described herein as "GM".

2.     This Court has personal jurisdiction because each of General Motors Company, Inc., General Motors, LLC, and GM Global Technology Operations, LLC has a corporate office located in this District at 300 Renaissance Center, Detroit, MI,

48265 and the acts giving rise to Quality Collision's counterclaims took place in this District.

3.      Venue is proper under 28 U.S.C. § 1391(b) because each of General Motors Company, Inc., General Motors, LLC, and GM Global Technology Operations, LLC has a corporate office is located in this District at 300 Renaissance Center, Detroit, MI, 48265 and a substantial part of the events giving rise to Quality Collision's counterclaims took place in this District.

4.      This Court has subject matter jurisdiction over Quality Collision's Counterclaim against pursuant to 28 U.S.C. § 1367 because the Court has original jurisdiction over Plaintiff GM Global Technology Operation, LLC's claims under 28 U.S.C. § 1331 and Quality Collision's counterclaims are so related to these claims that they form the same case or controversy.

## FACT COMMON TO ALL COUNTS

5.      Quality Collision and GM are competitors in the automotive collision repair industry.

6.      GM sells its own Original Equipment Manufacturer (OEM) replacement parts for GM automobiles.

7.      Quality Collision sells aftermarket collision repair products that are designed to replace damaged or worn original parts to return an automobile to its original condition.

8.     The aftermarket industry permits automobile owners to affordably replace damaged or worn automotive parts through competition between the original parts makers – the OEMs – and third-party aftermarket sellers.

9.     OEMs like GM would prefer to avoid competition with aftermarket companies like Quality Collision for the replacement of damaged or worn automotive parts.

10.     To stifle aftermarket competition, GM takes aggressive, and sometimes unlawful action against aftermarket companies.

11.     For example, and without limitation, on information and belief, GM improperly influenced the United States Department of Homeland Security to conduct a raid on Quality Collision's warehouses in Warren, Michigan and Richmond, Michigan from July 6, 2022 through July 15, 2022.

12.      GM did this by preparing and submitting false or misleading allegations that Quality Collision was engaged in counterfeiting or trafficking in counterfeit automotive parts.

13.     On information and belief, the allegations submitted by GM were supplied by GM employee Andrea Ankawi with the assistance or at the suggestion of Raphy Raad Yaldo, who is also employed at GM.

14.     Raphy Raad Yaldo is the brother of Ramy Yaldo, an owner of Special Way Auto Parts, Inc., a competitor of Quality Collision in the aftermarket parts industry.

15.     GM had no reason to believe the allegations it supplied to the United Stated Department of Homeland Security because the information came from its own employees with connections to Quality Collision's competitor.

16.     GM's actions resulted in the issuance of a search and seizure order that resulted in a raid on Quality Collision's warehouses in Warren, Michigan, and Richmond, Michigan.

17.     Some days before the raid, the owner of Special Way Auto Parts, Ramy Yaldo, called Quality Collision and stated Quality Collision was about to have a problem. The day of the raid, Special Way Auto Parts doubled its prices.

18.     Special Way Auto Parts, Inc. sells the same aftermarket GM parts that were seized from Quality Collision by the United States Department of Homeland Security.

19.     On information and belief, Ramy Yaldo, an owner of Special Way Auto Parts, Inc., had advance notice that the United States Department of Homeland Security planned to conduct a raid of Quality Collision's warehouses.

20.     The raid involved hundreds of agents, and it was conducted in a manner that was reckless or indifferent to damage to Quality Collision's facility, inventory,

and business operations. The photo below shows a safe which was destroyed during

the raid:



21.     GM also sent its employees and/or agents into Quality Collision's

facilities with United States Department of Homeland Security agents throughout

the raid to direct the taking of Quality Collision's servers, business records and

inventory, which caused disruption to Quality Collision's business, including the

shutdown of its facilities for many months.

22.     The raid also caused damage to Quality Collison's inventory, including non-counterfeit, non-infringing automotive parts, rendering it valueless and causing Quality Collision to scrap destroyed non-counterfeit, non-infringing automotive parts. The photos below show some such non-seized parts destroyed during the raid and the damage caused by the raid:

 

23.     The raid unnecessarily and improperly damaged a great deal of inventory worth hundreds of thousands, if not millions, of dollars, including non-counterfeit, non-infringing automotive parts lawfully in the possession of Quality Collision as shown in the photo below picturing damage to non-seized replacement hoods:



24.     In comparison, below is how Quality Collision stores its automotive parts in the ordinary course of business:

 

25.     The raid did not result in seizure of any GM counterfeit parts as attested to in several affidavits provided by GM employee Andrea Ankawi.

26.     The raid also gave GM an unfair advantage in its planned case against Quality Collision for design patent infringement because GM caused the seizure of non-counterfeit inventory that it alleges infringes its design patents.

27.     GM would not have been able to otherwise disrupt Quality Collision's business to this extent on account of design patent infringement claims.

## COUNT I - TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

28.     Quality Collision repeats and incorporates Paragraphs 1 to 27 as if fully stated herein.

29.     Quality Collision had and has business relationships and expectancies with a number of different entities and individual customers based on years of servicing its customers.

30.     For example, and without limitation, Quality Collision has an expectancy of selling aftermarket automotive parts to a number of customers in the business of vehicle repair, including even General Motors dealerships.

31.     Quality Collision sells aftermarket automotive parts in competition with GM.

32.     GM is aware of Quality Collision's business relationships and expectancies, and GM conspired to cause the United States Department of Homeland Security to use its power to raid Quality Collision's facilities in order to intentionally and improperly interfere with such opportunities, and thereby gain a competitive advantage for itself against Quality Collision.

33.     For example, and without limitation, GM caused interference by preparing and submitting allegations that caused the United States Department of Homeland Security to raid Quality Collision's facilities without legal cause or justification.

36

34.     The allegations included either false statements or otherwise misleading statements that improperly caused the United States Department of Homeland Security to believe, incorrectly, that Quality Collision was engaged in counterfeiting or trafficking in counterfeit parts when GM had no reason to believe this.

35.     On information and belief, GM encouraged the search and seizure order to gain competitive knowledge and other advantage – including litigation advantage – over Quality Collision.

36.     The raid involved hundreds of agents, and it was conducted in a manner that was reckless or indifferent to damage to Quality Collision's facility, inventory and business operations.

37.     GM also sent its people into Quality Collision's facilities with United States Department of Homeland Security agents throughout the raid to direct the taking of Quality Collision's servers, business records and inventory, which caused disruption to Quality Collision's business including the shutdown of its facilities for many months.

38.     The raid also caused damage to inventory, including automotive parts, rendering it valueless.

39.     The raid unnecessarily and improperly damaged a great deal of inventory worth hundreds of thousands, if not millions, of dollars, including non-counterfeit automotive parts lawfully in the possession of Quality Collision.

40.     The raid also gave GM an unfair advantage in its planned case against Quality Collision for design patent infringement because GM caused the seizure of inventory that it alleges is infringing its design patents.

41.     GM would not have been able to otherwise disrupt Quality Collision's business to this extent on account of design patent infringement claims.

42.     GM's improper and intentional interference has induced disruptions to Quality Collision's business relationships or expectancies, causing damage to Quality Collision.

43.     The raid did not result in seizure of any counterfeit parts as attested to in several affidavits provided by GM employee Andrea Ankawi.

44.     GM did not even have reason to believe that there were counterfeit parts in Quality Collision's facilities.

45.     GM's baseless claims and allegations against Quality Collision were brought in bad faith to conceal an attempt to directly interfere with Quality Collision's business relationships and expectancies.

## COUNT II – WRONGFUL SEIZURE UNDER 18 U.S.C. § 2320

46.    Quality Collision repeats and incorporates Paragraphs 1 to 27 as if fully stated herein.

47.    All defenses, affirmative defenses, and limitations on remedies that would be applicable in an action under the Lanham Act are applicable to the seizure order against Quality Collision. *See* 18 U.S.C. § 2320(d).

48.    The Lanham Act provides for damages including lost profits, attorneys' fees, loss of goodwill, and punitive damages for wrongful seizures. 15 U.S.C. § 1116(d)(11).

49.    On information and belief, GM improperly influenced the United States Department of Homeland Security to conduct a raid on Quality Collision's warehouses in Warren, Michigan and Richmond, Michigan from July 6, 2022 through July 15, 2022

50.    GM promoted the raid in bad faith.

51.    GM had no basis to allege that Quality Collision possessed any counterfeit parts or that Quality Collision was trafficking in counterfeit parts.

52.    The raid did not result in seizure of any GM counterfeit parts as attested to in several affidavits provided by GM employee Andrea Ankawi.

53.     Rather, GM engaged in the seizure of automotive parts that allegedly infringe GM's design patents, which even if GM's allegations are true cannot support a seizure order.

54.     GM's primary purpose in promoting the seizure was to disrupt Quality Collision's business and to gain an unfair advantage in its effort to limit Quality Collision's sales of replacement automotive parts in competition with GM by causing the seizure of a large quantity of Quality Collision's inventory, its books, records, and general ability to conduct its business.

55.     Quality Collision was damaged by GM's wrongful seizure through lost profits, damaged inventory, lost goodwill, and the imposition of unnecessary legal fees.

## COUNT III – ABUSE OF PROCESS

56.     Quality Collision repeats and incorporates Paragraphs 1 to 27 as if fully stated herein.

57.     When GM conspired with the United States Department of Homeland Security to improperly obtain a seizure order for counterfeit products GM knew did not exist, GM was acting in bad faith and with an ulterior purpose of surreptitiously seeking information and a *de facto* injunction for its contemplated complaint for design patent infringement.

58.     In addition, GM engaged in improper actions unrelated to the seizure order for counterfeit products, including, but not limited to:

    a.  GM's seizure of automotive parts that were not counterfeit that GM alleges infringe certain design patents;

    b.  GM's investigation of Quality Collision's business records and inventory to conduct a pre-suit investigation of Quality Collision for trademark and design patent infringement; and

    c.  GM's destruction of Quality Collision's inventory and business equipment.

59.     GM's actions constitute bad faith.

60.     Quality Collision was damaged by GM's abuse of process.

## PRAYER FOR RELIEF

Wherefore, Quality Collision Parts, Inc. demands the following relief:

A.      An order requiring General Motors Company, Inc., General Motors, LLC, and GM Global Technology Operations, LLC to compensate Quality Collision for the damage caused to Quality Collision's inventory, including, but not limited to, the loss or destruction of inventory, and the loss of use of inventory.

B.      An order requiring General Motors Company, Inc., General Motors,

LLC, and GM Global Technology Operations, LLC to compensate Quality Collision for all other damage caused to Quality Collision's business, including, but not limited to, lost profits, lost goodwill, and punitive damages.

C.     An order requiring General Motors Company, Inc., General Motors, LLC, and GM Global Technology Operations, LLC to pay Quality Collision's costs and attorney fees.

D.     All appropriate interest, including pre-judgment and post-judgment interest.

E.     All other just and proper relief.

## JURY DEMAND

Quality Collision Parts, Inc. demands a trial by jury as to all issues triable herein.

Date: February 1, 2024          Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

By: _/s/Joseph W. Barber_
Andrew M. Grove (P48868)
Gerald E. McGlynn III (P41149)
Kristopher K. Hulliberger (P66903)
Joseph W. Barber (P82728)
Dane M. Lepola (P82742)
450 West Fourth Street
Royal Oak, Michigan 48067
Phone: (248) 645-1483

Fax: (248) 645-1568
Email:jg@h2law.com
        gem3@h2law.com
        kkh@h2law.com
        jwb@h2law.com
        dlepola@howardandhoward.com

*Attorneys for Defendant*
*Quality Collision Parts, Inc.*

## CERTIFICATE OF SERVICE

I certify that on February 1, 2024, I caused the foregoing document to be filed with the Clerk of the Court via the CM/ECF system, which will cause notice of same to be sent to all counsel of record.

By: /s/ Joseph W. Barber