# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| GM GLOBAL TECHNOLOGY OPERATIONS, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>QUALITY COLLISION PARTS, INC.,<br><br>      Defendant. | **Case No.:  2:23-cv-13026-JJCG**<br><br>**Honorable Jonathan J.C. Grey** |
| QUALITY COLLISION PARTS, INC.,<br><br>      Counterclaim-Plaintiff,<br><br>v.<br><br>GENERAL MOTORS COMPANY, INC, GENERAL MOTORS, LLC, and GM GLOBAL TECHNOLOGY OPERATIONS, LLC,<br><br>      Counterclaim-Defendants. | |

## GENERAL MOTORS' MOTION TO DISMISS

General Motors, by and through its counsel Honigman, LLP, respectfully requests that the Court dismiss Defendant Quality Collision Parts, Inc.'s Countercomplaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

In accordance with Local Rule 7.1, counsel for General Motors sought concurrence from counsel for Defendants on the relief sought herein on February 26, 2024 via electronic mail, but did not obtain concurrence.

WHEREFORE, General Motors respectfully requests that this Court enter an order granting this Motion to Dismiss.

Dated:  February 26, 2024                    By: /s/ Dennis J. Abdelnour

                                             J. Michael Huget (P39150)
Dennis J. Abdelnour                          Scott D. Barnett (P82673)
HONIGMAN LLP                                 HONIGMAN LLP
155 N. Wacker Drive, Suite 3100              315 E. Eisenhower, Suite 100
Chicago, IL 60606-1734                       Ann Arbor, MI 48108
(312) 701-9348                               (734) 418-4200
dabdelnour@honigman.com                      mhuget@honigman.com
                                             sbarnett@honigman.com

                                             *Attorneys for GM Global Technology Operations, LLC, General Motors, LLC and General Motors Company, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| GM GLOBAL TECHNOLOGY OPERATIONS, LLC, | **Case No.:  2:23-cv-13026-JJCG** |
| Plaintiff, | |
| v. | **Honorable Jonathan J.C. Grey** |
| QUALITY COLLISION PARTS, INC., | |
| Defendant. | |
| | |
| QUALITY COLLISION PARTS, INC., | |
| Counterclaim-Plaintiff, | |
| v. | |
| GENERAL MOTORS COMPANY, INC, GENERAL MOTORS, LLC, and GM GLOBAL TECHNOLOGY OPERATIONS, LLC, | |
| Counterclaim-Defendants. | |

**GENERAL MOTORS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES PRESENTED ................................................................. vi

CONTROLLING / MOST APPROPRIATE AUTHORITY ............................... vii

I.    Introduction ......................................................................................... 1

II.   Statement of Facts ............................................................................. 4

    A.    The U.S. Department of Homeland Security Applied For And Obtained Search Warrants Based On Probable Cause That Quality Collision Was Violating The Anti-Counterfeiting Statute, 18 U.S.C. § 2320 ...................................................... 4

    B.    Based On Its Findings Of Counterfeit Parts, The U.S. Department Of Homeland Security Applied For And Was Issued Additional Search Warrants On Other Quality Collision Facilities ................................................................................ 6

III.  Legal Standard ................................................................................... 7

    A.    Standard Under FRCP 9(b) ...................................................... 7

    B.    Standard Under FRCP 12(b)(6) ............................................... 8

IV.   Argument ............................................................................................ 8

    A.    Quality Collision's Counterclaims Should Be Dismissed For Failure To Satisfy Rule 9(b) ...................................................... 8

        1.    All Of Quality Collision's Counterclaims Contain An Averment Of Fraud And Thus Are Subject To The Heightened Pleading Standard Of Rule 9(b) ..................... 8

        2.    None Of The Counterclaims Satisfy Rule 9(b) ................ 10

    C.    Quality Collision's Claims Also Should Be Dismissed Because They Are Implausible ................................................. 13

    D.    Quality Collision's "Tortious Interference" Claim Should Be Dismissed For Failure To State A Claim ............................... 18

i

E.    Quality Collision's "Wrongful Seizure" Claim Should Be
      Dismissed For Failure To State A Claim ............................................21

F.    Quality Collision's "Abuse Of Process" Claim Should Be
      Dismissed For Failure To State A Claim ............................................24

V.    Conclusion ...................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*1 Stop MD, LLC v. Pods USA, LLC*,
  No. 8:22-CV-602-WFJ-AAS, 2023 WL 23102 (M.D. Fla. Jan. 3,
  2023) .............................................................................................................23

*Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*,
  176 F.3d 315 (6th Cir. 1999) ...........................................................7, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................12

*Berrocal v. Refloor, LLC*,
  Case No. 22-cv-10825, 2022 WL 7610180 (E.D. Mich. Oct. 13,
  2022) .............................................................................................................19

*Bischoff v. Waldorf*,
  660 F. Supp. 2d 815 (E.D. Mich. 2009) ...........................................................23

*Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*,
  No. 13-13804, 2015 WL 3541905 (E.D. Mich., Apr. 30, 2015)...................7, 12

*Brege v. Lakes Shipping Co.*,
  225 F.R.D. 546 (E.D. Mich. 2004) ..............................................7, 10, 12

*In re Consumers Power Co. Sec. Litig.*,
  105 F.R.D. 583 (E.D. Mich. 1985) ...................................................................11

*Curran v. City of Dearborn*,
  957 F. Supp. 2d 877 (E.D. Mich. 2013) ...........................................................25

*Dalley v. Dykema Gossett PLLC*,
  788 N.W.2d 679 (Mich. App. 2010)....................................................18, 19, 21

*DirecTV, Inc. v. Zink*,
  286 F. Supp. 2d 873 (E.D. Mich. 2003) ...........................................................24

*Electronic Merchant Sys. LLC v. Gaal*,
    58 F. 4th 877 (6th Cir. 2023) ................................................................13

*In re Gen. Motors ERISA Litig.*,
    No. 05-71085, 2006 WL 897444 (E.D. Mich. Apr. 6, 2006) ............................12

*Gerics v. Trevino, Jr.*,
    2018 WL 1399168 (E.D. Mich, Mar. 19, 2018) ....................................24, 25

*Harbor Thirteen Mile-20600 LLC v. Employees' Ret. Plan of Consol.*
    *Elec. Distributors, Inc.*,
    No. 15-14066, 2016 WL 1665158 (E.D. Mich. Apr. 27, 2016) ................11, 12

*Innovation Ventures, L.L.C. v. Aspen Fitness Products, Inc.*,
    Case No. 11-cv-13537, 2015 WL 11071470 (E.D. Mich. Mar. 30,
    2015) ............................................................................................19

*Jergenson v. Inhale Int'l Ltd.*,
    No. 22 CV 2040, 2023 WL 167413 (N.D. Ill. Jan. 12, 2023) ............................23

*Magee v. BSN Sports, LLC*,
    No. 3:21-CV-01726-G-BT, 2022 WL 3701627 (N.D. Tex. Aug. 8,
    2022) ............................................................................................23

*Perkins v. Trek Bicycle Corp.*,
    No. 1:21-CV-179, 2021 WL 5925909 (W.D. Mich. Oct. 5, 2021) .............19, 20

*Plastech Engineered Prod., Inc. v. Balous*,
    No. 06-11704, 2007 WL 1827297 (E.D. Mich. June 22, 2007) ........................11

*Usevicz v. Weltman Weinberg & Reis, Co. of Michigan*,
    No. 22-11890, 2023 WL 1928495 (E.D. Mich. Feb. 10, 2023) ........................13

*Varlesi v Wayne State Univ.*,
    909 F. Supp. 2d 827 (E.D. Mich. 2012) .............................................20

**STATUTES**

15 U.S.C. § 1116(d)(11) ................................................................21, 23, 24

18 U.S.C. § 2320 ................................................................4, 21, 22, 23

Lanham Act ................................................................21, 22, 23, 24

**OTHER AUTHORITIES**

FRCP 9(b) ......................................................................................*passim*

FRCP 12(b)(6)...........................................................................................8

## **<u>STATEMENT OF ISSUES PRESENTED</u>**

Whether the Court should grant Plaintiff GM Global Technology Operations, LLC and Counterclaim-Defendants General Motors Company, Inc. and General Motors, LLC's (collectively "GM") motion to dismiss where baseless allegations of fraud were plead on mere "information and belief" without the particularity required under Fed. R. Civ. P. 9(b), and where each of the counterclaims fail to state a plausible claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6)?

GM's Answer: Yes.

Defendant/Counter-Plaintiff's Will Answer: No.

## **CONTROLLING / MOST APPROPRIATE AUTHORITY**

Pursuant to Local Rule 7.1(d)(2), GM hereby states that the following cases are the controlling and most appropriate authorities for the relief sought:

1. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)
2. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)
3. *Brege v. Lakes Shipping Co.*, 225 F.R.D. 546, 549 (E.D. Mich. 2004)
4. *Dalley v. Dykema Gossett PLLC*, 788 N.W.2d 679, 696 (Mich. App. 2010)
5. *Jergenson v. Inhale Int'l Ltd.*, No. 22 CV 2040, 2023 WL 167413, at *7 (N.D. Ill. Jan. 12, 2023)
6. *DirecTV, Inc. v. Zink*, 286 F. Supp. 2d 873, 875 (E.D. Mich. 2003)

## I.      Introduction

Quality Collision's (QC) counterclaims introduce a wild, fanciful narrative that General Motors (GM) conspired with the U.S. Department of Homeland Security (DHS) to disrupt QC's business in order "to avoid competition" and to benefit some unrelated third-party aftermarket company.  But these delusional allegations are not grounded in reality, and the paranoid suspicions of an entity under criminal investigation cannot possibly state a plausible claim.

The truth is far different.  Since at least 2021 (and potentially much earlier), QC has been and continues to be under criminal investigation by DHS.  In July 2022, DHS applied for search and seizure warrants associated with three different QC facilities.  The applications, which were unsealed on February 8, 2024, and on which this Court may take judicial notice, detail numerous and repeated shipments of QC counterfeit products detained by U.S. Customs and Border Protection (CBP) officials at the border, dating back to at least October 2021.  The applications also contain information about a comprehensive investigation, including information provided by brand representatives from three separate automakers—Ford, Chrysler, and General Motors—each of whom separately concluded that QC was selling counterfeit parts and/or parts that otherwise infringed duly-issued patents, trademarks and/or other intellectual property of those companies.

Based on all the information set forth in the applications, a special agent of

DHS concluded "there is probable cause to believe that evidence of a violation of Title 18, United States Code, Section 2320, which makes it unlawful to traffic in counterfeit goods and services, will be found at the Target Premises." *In the Matter of the Search of 5523 E. 9 Mile Rd., Warren, MI*, Case No. 2:22-mc-51121-DPH (E.D. Mich.), ECF No. 1 at ¶ 5 ("*Warrant Case*").  Upon application to this Court, two separate U.S. Magistrate Judges issued search and seizure warrants, finding probable cause.

Following execution of the two original search and seizure warrants, DHS applied for three additional warrants to search three other QC facilities.  In each of these three additional applications for warrant, the DHS special agent stated that the prior warrants revealed "***a large percentage of the parts that have been inspected at these locations appear to be counterfeit or patent infringing***."  *Warrant Case*, ECF No. 11 at ¶ 13 (emphasis added).  Again, two separate U.S. Magistrate Judges agreed, issuing the warrants and finding probable cause.

Against this, QC's counterclaims cannot survive.  Each of the counterclaims depends on the unfounded allegation that "on information and belief," "GM…prepar[ed] and submit[ed] false or misleading allegations [to DHS] that Quality Collision was engaged in counterfeiting or trafficking in counterfeit automotive parts." ECF No. 19, Counterclaim at ¶¶ 11-12.  Not only does this vague allegation of alleged fraud fail to provide the detail required by Rule 9(b), but it is

also facially implausible in view of the fact that multiple government agencies (CBP, DHS) have determined that QC is in fact dealing in counterfeit parts.

Allowing a criminal entity to prosecute a civil action against victims of that criminal activity, simply because the criminal entity denies wrongdoing and disagrees with findings to the contrary, would set a dangerous precedent. QC's counterclaims should be summarily dismissed.

QC's counterclaims also fail to state a claim and should be dismissed under Rule 12(b)(6) for various other reasons. QC's "tortious interference" claim is based on GM's lawful exercise of its right to cooperate with a government investigation; such facts fail to state a claim as a matter of law. QC's "wrongful seizure" claim proceeds under 15 U.S.C. § 1116(d)(11), but that statute only applies to a seizure made by a private party made upon *ex parte* application to a Court under 15 U.S.C. § 1116(d). The only seizure that occurred here was by the government pursuant to a duly-issued search warrant. Finally, QC's claim for "abuse of process" relies only on acts alleged in the issuance of a warrant, but the law requires allegations of an act that occurred *after* the process has been instituted.

Thus, each of these claims fails for multiple independent reasons, and all three should be dismissed with prejudice.

## II.    Statement of Facts

### A.    The U.S. Department of Homeland Security Applied For And Obtained Search Warrants Based On Probable Cause That Quality Collision Was Violating The Anti-Counterfeiting Statute, 18 U.S.C. § 2320

On July 1, 2022, Special Agent Lorin Allain of DHS appeared in this Court before Magistrate Judge Grey with an application for a search warrant. *Warrant Case*, ECF No. 1. In the accompanying affidavit, Special Agent Allain detailed the facts and circumstances that supported her conclusion that there was "probable cause to believe that evidence of a violation of Title 18, United States Code, Section 2320, which makes it unlawful to traffic in counterfeit goods and services, will be found at the Target Premises." *Id.* at ¶ 5.

The affidavit describes numerous seizures of QC counterfeit parts by CBP agents, dating back to at least October 2021. *Id.* at ¶¶ 7-23. The first seized shipment referenced, which had arrived on October 2, 2021, "was placed on hold by CBP because it was discovered that the consignee (Quality Collision) had imported counterfeit auto parts in the past." *Id.* at ¶ 8. Upon inspection of the seized parts, CBP "determined that the shipment contained 180 counterfeit Chevrolet Grilles." *Id.* at ¶ 10. Days later, "two additional shipments" were seized, and both shipments were "deemed counterfeit." *Id.* at ¶¶ 10-15. Additional shipments made on October 24, 2021, December 9, 2021, and December 25, 2021, also contained counterfeit parts. *Id.* at ¶¶ 16-20. The total value of the seized items was $711,721.02. *Id.* at

¶ 22.

The affidavit also discusses undercover purchases of counterfeit parts.  *Id.* at ¶¶ 24-31.   Special Agent Lorrain states that she "spoke with brand protection representatives from Chrysler (Stellantis), and General Motors and asked if they could make test purchases of auto parts from Quality Collision."  *Id.* at ¶ 26.

Chrysler did so and provided DHS with a letter detailing the test purchase, which included Chrysler's determination that the parts obtained "are infringing/counterfeit to the FCA US LLC trademark(s) referenced above and were applied to the part without authorization.  I further believe this mark to be counterfeit under Title 18 USC Section 2320 (e)(1)(A)."  *Id.* at ¶ 27.  "FCA US LLC desires prosecution of this matter."  *Id.*

GM likewise made test purchases and provided their findings to DHS.  *Id.* at ¶¶ 28-30.  GM reported several findings, including for example that "we deem the suspect fascia to be infringing upon GM's patented rights in the '15 Chevrolet Malibu front fascia design."  *Id.* at ¶ 28.  As to another product, GM stated "we deem the suspect grille to be infringing upon GM's trademarked rights in the CHEVROLET BOWTIE design."  *Id.* at ¶ 29.

Further, "Ford Brand Protection Representatives" notified DHS "that Ford conducted a test purchase of a Ford branded Grille on April 5, 2022 from Quality Collision. According to representatives from Ford the part is covered by US Reg.

No.6414452 and 3580534 and would be counterfeit and infringing on Ford's 3D trademarks." *Id.* at ¶ 31.

Upon review of the application, U.S. Magistrate Judge Grey issued the warrant for the search of one of QC's facilities. The same day, another warrant issued on the same probable cause as to a second location. *Warrant Case*, ECF No. 3 (amended to include the adjacent property, at ECF No. 5).

> **B.     Based On Its Findings Of Counterfeit Parts, The U.S. Department Of Homeland Security Applied For And Was Issued Additional Search Warrants On Other Quality Collision Facilities**

On July 6, 2022, while it was continuing its search of QC facilities pursuant to the earlier warrants, DHS applied for two additional warrants to search other QC facilities. *Warrant Case*, ECF Nos. 7, 9. In both applications, DHS stated: "The Search warrant of the Quality Collision building located at 5523 E. 9 Mile Rd., Warren, is still ongoing due to the large quantity of parts that need to be inspected and identified, however thus far a large percentage of the parts that have been inspected by Ford, Chrysler, and GM appear to be counterfeit or patent infringing." *Warrant Case*, ECF No. 7 at ¶ 12; *Warrant Case*, ECF No. 9 at ¶ 16.

On July 12, 2022, DHS applied for and obtained another warrant to search yet another QC facility. *Warrant Case*, ECF No. 11. DHS stated: "Searches of the first four (4) locations are still ongoing due to the large quantity of parts that need to be inspected, however thus far a large percentage of the parts that have been inspected

at these locations appear to be counterfeit or patent infringing." *Id.* at ¶ 13.

## III.  Legal Standard

### A.  Standard Under FRCP 9(b)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).  "The purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999).  To satisfy Rule 9(b), "a pleader must (1) specify the statements that the [pleader] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, No. 13-13804, 2015 WL 3541905, at *3 (E.D. Mich., Apr. 30, 2015).

Thus, "to satisfy the requirements of Rule 9(b), a party must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the [the other party]; and the injury resulting from the fraud." *Brege v. Lakes Shipping Co.*, 225 F.R.D. 546, 549 (E.D. Mich. 2004).  Further "[i]t matters not whether a claim is grounded in fraud or some other legal theory.  Rather, if an allegation in a pleading contains 'an averment of fraud,' whether as part of a fraud claim or an element of a non-fraud claim, the

'averment of fraud' must be stated with the requisite particularity." *Id*. "Fraud allegations may damage a [party's] reputation regardless of the cause of action in which they appear, and they are therefore properly subject to Rule 9(b) in every case." *Id*.

### B.    Standard Under FRCP 12(b)(6)

On a motion to dismiss pursuant to 12(b)(6), a court reviews the complaint to assess whether a party has included "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is facially plausible when a party "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* Although the district court must accept all of the complaint's allegations as true, a party must plead facts to show "more than a sheer possibility that a [other party] has acted unlawfully." *Id.*   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 555.

### IV.   Argument

#### A.    Quality Collision's Counterclaims Should Be Dismissed For Failure To Satisfy Rule 9(b)

##### 1.    All Of Quality Collision's Counterclaims Contain An Averment Of Fraud And Thus Are Subject To The Heightened Pleading Standard Of Rule 9(b)

The fundamental allegation underlying all three of QC's counterclaims is that

GM fraudulently induced DHS into obtaining a warrant to search QC's premises

based on false information.  Specifically, QC alleges:

> 11.   For example, and without limitation, on information and belief, ***GM
> improperly influenced the United States Department of Homeland
> Security to conduct a raid*** on Quality Collision's warehouses in
> Warren, Michigan and Richmond, Michigan from July 6, 2022 through
> July 15, 2022.

> 12.   ***GM did this by preparing and submitting false or misleading
> allegations*** that Quality Collision was engaged in counterfeiting or
> trafficking in counterfeit automotive parts.

ECF No. 19 at ¶¶ 11-12.[1]

For its claim of "Tortious Interference with Business Expectancy" (Count 1),

QC repeats these allegations, and further alleges:

> 32.   GM is aware of Quality Collision's business relationships and
> expectancies, and ***GM conspired to cause the United States
> Department of Homeland Security to use its power to raid Quality
> Collision's facilities in order to intentionally and improperly interfere
> with such opportunities***, and thereby gain a competitive advantage for
> itself against Quality Collision.

*Id.* at ¶ 32; *see also id.* at ¶¶ 33-34 ("GM caused interference by preparing and

submitting allegations that caused the United States Department of Homeland

Security to raid Quality Collision's facilities….The ***allegations included either false***

***statements or otherwise misleading statements*** that improperly caused the United

States Department of Homeland Security to believe, incorrectly, that Quality

---

[1] All ***emphasis*** added in this brief unless otherwise noted.  In addition, for all
case quotes, any internal quotations and citations have been omitted.

Collision was engaged in counterfeiting or trafficking in counterfeit parts"); *id.* at ¶ 45 (claiming GM "allegations against Quality Collision were ***brought in bad faith***").

For its claim of "Wrongful Seizure" (Count II), QC repeats the allegations of paragraphs 11-12, and states that "GM improperly influenced the United States Department of Homeland Security to conduct a raid on Quality Collision's warehouses," and that "GM promoted the raid in bad faith." *Id.* at ¶¶ 49-50.

For its claim of "Abuse of Process" (Count III), QC likewise repeats the allegations of paragraphs 11-12, and further states: "***GM conspired*** with the United States Department of Homeland Security ***to improperly obtain a seizure order for counterfeit products GM knew did not exist, GM was acting in bad faith and with an ulterior purpose*** of surreptitiously seeking information and a *de facto* injunction for its contemplated complaint for design patent infringement." *Id.* at ¶ 57; *see also id.* at ¶ 59 ("GM's actions constitute bad faith.")

Accordingly, all three counterclaims are explicitly grounded in fraud or in specific averments of fraud, and thus all three counterclaims must satisfy the heightened pleading standard of Rule 9(b). *Brege*, 225 F.R.D. at 549.

### 2. None Of The Counterclaims Satisfy Rule 9(b)

QC's allegations fall well short of what Rule 9(b) requires, leaving GM with no "fair notice" to respond to these vague and generic allegations of fraud. *Advoc.*

*Org. for Patients & Providers*, 176 F.3d at 322.

With respect to all three claims, QC says that GM "improperly influenced" DHS to search QC premises and did so by "submitting false or misleading allegations" to DHS. ECF No. 19 at ¶¶ 11-12. But QC has no good faith basis to make such an allegation because QC admits this is based on nothing more than "information and belief." *Id.* at ¶ 11.

"[A]llegations based on information and belief fail to satisfy the particularity requirement of Rule 9(b)," *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 591 (E.D. Mich. 1985), "except where the relevant facts lie exclusively within knowledge and control of the opposing party." *Plastech Engineered Prod., Inc. v. Balous*, No. 06-11704, 2007 WL 1827297, at *3 (E.D. Mich. June 22, 2007). But, "even then, [a party] must plead a particular statement of facts upon which his belief is based." *Id.* Dismissal is appropriate where a party "make[s] no attempt to substantiate even the most basic elements of their claim" based on information and belief. *Harbor Thirteen Mile-20600 LLC v. Employees' Ret. Plan of Consol. Elec. Distributors, Inc.*, No. 15-14066, 2016 WL 1665158, at *3 (E.D. Mich. Apr. 27, 2016). This is because "Rule 9(b) was designed to prevent fishing expeditions based on vague allegations sounding in fraud." *Id.* Thus, the allegations at paragraphs 11-12, explicitly made on "information and belief," fail to satisfy Rule 9(b).

Likewise, the specific allegations in each Count lack requisite detail. QC

merely states, without any support, that GM somehow "conspired" with governmental agencies in the application for, and execution of, a duly-issued federal warrant signed by a Federal Magistrate Judge.  ECF No. 19 at ¶¶ 32, 57.  Each such allegation apparently stems from the allegations at the outset in paragraphs 11-12 that GM, "on information and belief," "influenced" the government to seek a search warrant by submitting "false or misleading" allegations to the government.

This is, of course, insufficient.  QC does not identify any specific (or even general) statement, let alone an explanation of "why the statement [is] fraudulent." *Bowlers' Alley, Inc.*, 2015 WL 3541905 at *3 (*citing Indiana State*, 583 F.3d at 942-43); *In re Gen. Motors ERISA Litig.*, No. 05-71085, 2006 WL 897444, at *15-16 (E.D. Mich. Apr. 6, 2006); *see also Brege*, 225 F.R.D. at 549-550.  That detail is nowhere to be found in the specific paragraphs alleging fraud, or anywhere else in QC's counterclaims.

The heightened pleading requirement of Rule 9 is designed to prevent what QC does here:  make broad allegations of fraud—with no support—in a way that is "damage[ing]" to GM and its "reputation."  *Brege*, 225 F.R.D. at 549.  This Court should not credit such threadbare, conclusory, false and harmful allegations to pass muster at the pleadings stage, and QC should not be allowed a "fishing expedition" on groundless allegations. *Bell Atl. Corp.*, 550 U.S. at 555; *see also Harbor Thirteen Mile-20600 LLC*, 2016 WL 1665158 at *3.  The Court should dismiss all of QC's

claims for failure to state with particularity its fraud allegations under Rule 9(b).

**C.   Quality Collision's Claims Also Should Be Dismissed Because They Are Implausible**

Underlying each of QC's counterclaims is the premise that it was "false or misleading" for GM to tell DHS that "Quality Collision was engaged in counterfeiting or trafficking in counterfeit automotive parts."  ECF No. 19 at ¶ 12. QC avers that "GM did not even have reason to believe that there were counterfeit parts in Quality Collision's facilities," and that DHS's search of QC facilities "did not result in seizure of any counterfeit parts."  *Id.* at ¶¶ 43-44.

None of this is plausible in view of the record made by DHS in obtaining the various search warrants, all of which are public records filed in this Court, and on which this Court may properly take judicial notice.  *Electronic Merchant Sys. LLC v. Gaal*, 58 F. 4th 877, 882-883 (6th Cir. 2023) ("[A] court may, in undertaking a 12(b)(6) analysis, take judicial notice of matters of public record…." without "convert[ing] the motion into one for summary judgment under Rule 56."); *Usevicz v. Weltman Weinberg & Reis, Co. of Michigan,* No. 22-11890, 2023 WL 1928495, at *2 & n.2 (E.D. Mich. Feb. 10, 2023) (taking judicial notice of proceedings in another court of record).

***First***, both CBP and DHS had determined that QC had repeatedly violated the law over a period of years going back to at least 2021 by importing automotive parts for various OEM vehicles that those government agencies deemed to be counterfeits.

*E.g.*, *Warrant Case*, ECF No. 1 at ¶ 10 ("CBP Import Specialists (IS) Verdell Blackmon and Drucilla Bookout responded to the warehouse for inspection. They determined that the shipment contained 180 counterfeit Chevrolet Grilles.");[2] *id.* at ¶ 8 ("The Shipment was placed on hold by CBP because it was discovered that the consignee (Quality Collision) had imported counterfeit auto parts in the past.")  On top of this, both Ford and Chrysler provided statements to DHS concluding that QC was selling counterfeit products.  *Id.* at ¶¶ 27, 31.  DHS thus had more than probable cause to believe that evidence of further violations of the law against trafficking in counterfeit goods would have been found at QC's domestic facilities.

**Second**, the notion that GM somehow conspired with DHS does not align with the fact that both Ford and Chrysler provided similar information of QC's violations of intellectual property laws to DHS, as detailed in the applications for the search warrants.  Both Chrysler and Ford determined that QC was selling counterfeit parts and/or parts that otherwise infringed various intellectual property of the automakers. *Warrant Case*, ECF No. 1 at ¶ 27 (quoting a Chrysler Brand Protection Representative who stated: "I further believe this mark to be counterfeit as defined under Title 18 USC Section 2320 (e)(1)(A)."); *id.* at ¶ 31 ("According to

---

[2] To be sure, the government agencies sought assistance from General Motors where the counterfeit products infringed upon the intellectual property rights of GM. *See id.* at ¶¶ 13, 17.  But such cooperation is standard practice, and GM is well within its legal right to cooperate with the government.

representatives from Ford the part is covered by US Reg. No.6414452 and 3580534 and would be counterfeit and infringing on Ford's 3D trademarks.").  It is thus clear that the statements of either Ford or Chrysler, or both, in combination with QC's prior violations of the anti-counterfeiting laws, would have sufficed to provide probable cause for a search of QC's facilities.  GM's statements to DHS provide further corroboration and probable cause, but they are not alone responsible for the issuance of the warrant, contrary to QC's allegations.

**Third**, QC's repeated statement that the search "did not result in seizure of any counterfeit parts," (ECF No. 19 at ¶¶ 25, 43, 52), is not just groundless, it is flatly contradicted by DHS.  In seeking a further search warrant on another QC facility, DHS stated:  "Searches of the first four (4) locations are still ongoing due to the large quantity of parts that need to be inspected, however thus far ***a large percentage of the parts that have been inspected at these locations appear to be counterfeit or patent infringing***."  *Warrant Case*, ECF No. 11 at ¶ 13.

**Fourth**, the statements that GM provided to DHS and that DHS relied on in its application for warrant do not state that QC parts are counterfeit, contrary to QC's allegations.  GM's statements are contained in paragraphs 28 through 30 of DHS's affidavit in the application for warrant.  *Warrant Case*, ECF No. 1 at ¶¶ 28-30.  As a plain reading of those paragraphs reveals, GM did not state that it believes the parts to be "counterfeit"—the word counterfeit is not even used in those paragraphs.

Rather, GM concludes that various products are "deem[ed]…to be infringing upon GM's patented rights" in the product's design and "deem[ed]… to be infringing upon GM's trademarked rights."  *Id.* at ¶¶ 28-29.

Not only is this true (as GM's affirmative design patent infringement claims show), such statements about GM's understanding of its legal rights cannot possibly be the type of "false or misleading" information that could give rise to QC's counterclaims.  In any event, the GM statements do not state, as QC alleges in its counterclaims, "that Quality Collision was engaged in counterfeiting or trafficking in counterfeit automotive parts."  ECF No. 19 at ¶ 12.  Notably, the counterclaim contains no allegation that DHS or any government agency has taken the position that the information GM provided to it was in any way false or misleading.

*Fifth*, much, if not all, of the allegations underlying QC's counterclaims are facially implausible on their face.  Some of the most egregious examples include:

- The assertion that GM would conspire with DHS to benefit a third-party aftermarket company so that they could "double [their] prices."  ECF No. 19 at ¶¶ 17-19.  That a multi-national corporation would do this to apparently benefit a relative of a single GM employee makes no sense.

- That it would even be in GM's interest to help an aftermarket competitor raise prices.  *Id.* at ¶ 19.

- That GM takes "unlawful action against aftermarket companies" to "stifle aftermarket competition."  *Id.* at ¶ 10.

- That GM employees "direct[ed] the taking [by DHS] of Quality Collision's servers, business records, and inventory."  *Id.* at ¶ 21.

- That GM itself was responsible for the "seizure of automotive parts" and that GM seized (for its own use), and otherwise "destr[oyed]," QC's business records, inventory, and equipment.  *Id.* at ¶ 58.

- That GM was somehow responsible for the way in which DHS conducted the search on QC's facilities.  *Id.* at ¶¶ 38-39.

- That the search "gave GM an unfair advantage in its planned case against Quality Collision for design patent infringement."  *Id.* at ¶ 40.

Each of these are so facially implausible that to just say them is enough to disprove them.  But the absurdity of the last one—that GM needed a search of QC facilities to bring the instant design patent case—bears discussion.  Design patent infringement can be assessed by comparing the patents to the accused products— GM did not need any government search and seizure to support a claim of design patent infringement.  It could have simply bought the infringing products on the open market, something that GM did at DHS's request to assist in DHS's criminal investigation.[3]  QC's attempt to tie its conspiracy story into the underlying design patent case fails, and further shows that these counterclaims are just an improper distraction. For at least all the reasons above, the counterclaims should be dismissed for failure to state a plausible claim.

---

[3] Quality Collision's website indicates that it "distributes aftermarket auto body parts to collision shops, dealerships, mechanic shops, and walk in customers." https://www.qualityautomotivepart.com/ (accessed Feb. 22, 2024).  Indeed, QC actively promotes its products as "the same General Motors (GM) aftermarket auto body parts that your General Motors (GM) collision shop and General Motors (GM) dealership is quoting you for."  https://www.qualityautomotivepart.com/general-motors--gm-.html (accessed Feb. 22, 2024).

**D.    Quality Collision's "Tortious Interference" Claim Should Be Dismissed For Failure To State A Claim**

At its core, QC's "tortious interference with business" claim attempts to hold GM liable for exercising its legal right to cooperate with a government investigation in the protection of GM's valuable intellectual property.  This does not state a claim.

"The elements of tortious interference with a business relationship are the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff."  *Dalley v. Dykema Gossett PLLC*, 788 N.W.2d 679, 696 (Mich. App. 2010).

"To fulfill the third element, intentional interference inducing or causing a breach of a business relationship, a plaintiff must demonstrate that the defendant acted both intentionally and either improperly or without justification."  *Id.*  "To establish that a defendant's conduct lacked justification and showed malice, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference."  *Id.*  "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference."  *Id.*

Here, there can be no dispute that GM, like Ford and Chrysler, was motivated by a legitimate business reason: to cooperate with a government investigation into

suspected counterfeiting operations that have a direct and detrimental impact on GM, the holder of some of the intellectual rights being infringed. Put simply, "there is nothing illegal, unethical or fraudulent" in providing support to a government investigation involving the protection of GM's valuable intellectual property rights. *See id.*; *see also Perkins v. Trek Bicycle Corp.*, No. 1:21-CV-179, 2021 WL 5925909, at *4 (W.D. Mich. Oct. 5, 2021), *report and recommendation adopted*, No. 1:21-CV-179, 2022 WL 472955 (W.D. Mich. Feb. 16, 2022) (recommending dismissal of tortious interference claim and remarking that "[p]rotecting the value of one's trademark is certainly a legitimate act").

Indeed, QC cannot allege that GM's assistance in the government investigation was not "prompted by legitimate business reasons": protecting the value of its valuable trademark and patent rights. *Id.*; *Innovation Ventures, L.L.C. v. Aspen Fitness Products, Inc.*, Case No. 11-cv-13537, 2015 WL 11071470, at *20 (E.D. Mich. Mar. 30, 2015) (dismissing claim for tortious interference with business relations based on threat of enforcing trade secret, copyright, and trademark rights); *Berrocal v. Refloor, LLC*, Case No. 22-cv-10825, 2022 WL 7610180, at *2-*3 (E.D. Mich. Oct. 13, 2022) (same).

Moreover, QC's counterclaim contains no allegations with "specificity" of "affirmative acts by" GM "that corroborate the improper motive of the interference." *Id.* at *2. The only corroborating evidence is found in the various DHS applications

for warrant that detail QC's history of importing counterfeit products, and DHS's findings upon conducting a search of QC's premises that "a large percentage of the parts that have been inspected at these locations appear to be counterfeit or patent infringing." *Warrant Case*, ECF No. 11 at ¶ 13.

Further, "to plead this claim properly," QC "must show that [it] had 'more than a subjective expectation of entering into a [business] relationship." *Perkins*, 2021 WL 5925909, at *3. QC "must show 'a reasonable likelihood or probability [of an expectation], not mere wishful thinking." *Id.* But QC's allegations that it "has an expectancy of selling aftermarket automotive parts to a number of customers" (ECF No. 19 at ¶ 30) is the type of "conclusory and vague" allegation that is nothing "more than a possibility of a business relationship with members of the public at large." *Perkins*, 2021 WL 5925909, at *3 (dismissing claim of tortious interference with business expectancy on this basis, and citing further cases); *see also Varlesi v Wayne State Univ.*, 909 F. Supp. 2d 827, 850 (E.D. Mich. 2012). Likewise, QC alleges that "GM is aware of Quality Collision's business relationships and expectancies," (ECF No. 19 at ¶ 32), but this too "is nothing more than a legal conclusion that fails to satisfy the *Twombly/Iqbal* standard." *Perkins*, 2021 WL 5925909, at *4. "[QC] fails to allege how [GM] was aware of a specific business relationship or expectancy that [QC] had." *Id.*

Likewise, the inferences that QC attempts to draw from its version of the facts

in order to make out a claim for tortious interference are not reasonable.  For example, there is no reasonable inference of causation—i.e., but for GM's assistance to DHS, QC would not have been subject to a search.  In view of the application for search warrant which contains affidavits from other automotive companies finding that QC was engaged in counterfeiting, it is unreasonable to infer that, but for GM's statement, DHS would not have pursued the warrant.  Regardless, GM did not interfere in QC's business at all; and the government's lawful activity is thus the type of intervening action that makes an inference of causation under the circumstances unreasonable.

Accordingly, QC's "allegations do not set forth a claim for tortious interference with a business relationship."  *See Dalley*, 788 N.W.2d at 696 (affirming dismissal of claim for tortious interference with business expectancy).

### E.    Quality Collision's "Wrongful Seizure" Claim Should Be Dismissed For Failure To State A Claim

Count II purports to state a claim for "wrongful seizure under 18 U.S.C. § 2320," while also vaguely invoking "the Lanham Act" and specifically citing "15 U.S.C. § 1116(d)(11)."  But there is no civil cause of action here and the entire Count is actually an incomprehensible mish mash of various inapplicable provisions.  This Count does not withstand even the slightest scrutiny.

***First***, QC's factual allegations are internally inconsistent and blatantly implausible.  As QC acknowledges and alleges throughout its Answer and in its

counterclaims, it was a government agency that seized property from QC and did so pursuant to a lawfully issued warrant signed by a U.S. Magistrate Judge in this District.  Yet somehow, QC alleges that "GM engaged in the seizure of automotive parts" as a basis to support its claim.  ECF No. 19 at ¶¶ 53, 55.  This of course did not happen: as a matter of law and logic, a private entity such as GM did not and could not seize anything.  QC's baseless allegation to the contrary is implausible.

*Second*, QC's legal theory is also badly flawed.  18 U.S.C. § 2320 is a *criminal* statute that makes it a federal offense to traffic counterfeit goods, and that provides for criminal penalties against those convicted of such crimes.  DHS applied for and was granted a search warrant signed by a U.S. Magistrate Judge in this District based on probable cause to believe that QC had violated 18 U.S.C. § 2320.  But as the warrant provides, and as QC admits in its Answer to GM's claims (response to ¶ 19), it was DHS that seized items from QC during the lawful search of QC's premises; GM had no authority to, and did not, "seize" anything.

Critically, 18 U.S.C. § 2320 provides no civil cause of action whatsoever, let alone a civil cause of action against a private party, for any "wrongful seizure."

Subsection (d) of 18 U.S.C. § 2320 refers to the Lanham Act but does so only in the context of providing a *criminal defendant* "defenses, affirmative defenses, and limitations on remedies" that would apply in a civil Lanham Act case.  That does

not create a civil cause of action as suggested by QC's counterclaim.[4]

QC's citation to 15 U.S.C. § 1116(d)(11) is even further off the mark.  That provision creates a cause of action for a person subjected to "a wrongful seizure *under this subsection*," meaning a seizure made in the context of a civil action by a private party under the Lanham Act.  Specifically, 15 U.S.C. § 1116(d)(1) allows a private party who has brought a civil action against an alleged counterfeiter under the Lanham Act to seek a seizure of counterfeit goods "upon ex parte application" and by "order" of a Court.  Section 1116(d)(11) obviously does not apply here because GM did not file a Lanham Act civil action against QC, much less make an "ex parte application" to a Court seeking an order for a seizure of goods.  *Jergenson v. Inhale Int'l Ltd.*, No. 22 CV 2040, 2023 WL 167413, at *7 (N.D. Ill. Jan. 12, 2023) (noting that §1116(d)(11) applies only in the context of "an ex parte seizure order of goods that violate the Lanham Act").

---

[4] Courts have summarily dismissed attempts to bring civil actions under 18 U.S.C. § 2320.  *See 1 Stop MD, LLC v. Pods USA, LLC*, No. 8:22-CV-602-WFJ-AAS, 2023 WL 23102, at *2 (M.D. Fla. Jan. 3, 2023) (stating 18 U.S.C § 2320 "is a criminal statute with no civil remedy provision" and dismissing claim); *Magee v. BSN Sports, LLC*, No. 3:21-CV-01726-G-BT, 2022 WL 3701627, at *5 (N.D. Tex. Aug. 8, 2022), *report and recommendation adopted*, No. 3:21-CV-1726-G-BT, 2022 WL 3702035 (N.D. Tex. Aug. 26, 2022) (dismissing civil claim with prejudice because party "cannot bring a cause of action under 18 U.S.C. § 2320" and party "does not have standing to institute a federal criminal prosecution or any power to enforce a criminal statute"); *Bischoff v. Waldorf*, 660 F. Supp. 2d 815, 818 (E.D. Mich. 2009).

By sharp contrast, the only "seizure" that occurred here, and the only seizure described by QC, was made by DHS pursuant to a search and seizure warrant in the course of a criminal investigation against QC.  An *ex parte* request by a private entity for a seizure under a civil Lanham Act cause of action could not possibly be confused with a criminal seizure order by a U.S. federal agency.  Accordingly, there is no legal claim for "wrongful seizure" under 15 U.S.C. § 1116(d)(11).

**F.      Quality Collision's "Abuse Of Process" Claim Should Be Dismissed For Failure To State A Claim**

QC's third counterclaim for "abuse of process" alleges that GM improperly caused DHS to conduct a search of QC's facilities by providing false statements to DHS.  As discussed above, there are multiple fatal problems with this theory that necessitate dismissal.  In addition to those, QC's "abuse of process" claim fails to state a claim under established Michigan law.

In Michigan, an "abuse of process" claim requires some action *after* the legal process.  *DirecTV, Inc. v. Zink*, 286 F. Supp. 2d 873, 875 (E.D. Mich. 2003).  That is, "an abuse of process action is only appropriate 'for the improper use of process after it has been issued, not for maliciously causing it to issue.'" *Id*.; *Gerics v. Trevino, Jr.*, 2018 WL 1399168, at *6 (E.D. Mich, Mar. 19, 2018) ("A plaintiff will not prevail on an abuse of process claim through merely contending that a defendant 'cause[d] a summons and complaint to be issued.'  Instead, a plaintiff must plausibly plead 'the improper use of process after it has been issued.'").

24

Here, the only "process" identified is DHS obtaining the warrant, and GM's alleged actions in aiding DHS in obtaining it.  This is insufficient to state a claim under Michigan law because QC does not allege any "use of process" after the warrant was issued.  *Id.*; *see also Curran v. City of Dearborn*, 957 F. Supp. 2d 877, 887 (E.D. Mich. 2013) ("Other than the fact of the prosecution itself, [party] does not allege any incident of improper use of the litigation process during the pendency of the case.").

QC's abuse of process claim should be dismissed for this additional reason.

## V.   Conclusion

This Court should dismiss all three of QC's counterclaims with prejudice.

Dated:  February 26, 2024

By: /s/ Dennis J. Abdelnour

Dennis J. Abdelnour
HONIGMAN LLP
155 N. Wacker Drive, Suite 3100
Chicago, IL 60606-1734
(312) 701-9348
dabdelnour@honigman.com

J. Michael Huget (P39150)
Scott D. Barnett (P82673)
HONIGMAN LLP
315 E. Eisenhower, Suite 100
Ann Arbor, MI 48108
(734) 418-4200
mhuget@honigman.com
sbarnett@honigman.com

*Attorneys for GM Global Technology Operations, LLC, General Motors, LLC and General Motors Company, Inc.*

## **<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on February 26, 2024, a copy of the foregoing was electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

<u>/s/ Dennis J. Abdelnour</u>