UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GM GLOBAL TECHNOLOGY
OPERATIONS, LLC,

    Plaintiff,

v.

QUALITY COLLISION PARTS, INC.,

    Defendant/Counter-Plaintiff,

v.

GENERAL MOTORS COMPANY, INC.,
GENERAL MOTORS, LLC, and GM GLOBAL
TECHNOLOGY OPERATIONS, LLC,

    Counter-Defendants.
_____/

Case No. 23-13026

Hon. Denise Page Hood

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIM (ECF No. 25)

**I.    BACKGROUND**

On November 29, 2023, Plaintiff GM Global Technology Operations, LLC filed a Complaint[1] against Defendant Quality Collision Parts, Inc. alleging: Infringement of U.S. Patent D670,840 (Count I); Infringement of U.S. Patent D843,025 (Count II); Infringement of U.S. Patent D807,241) (Count III);

---

[1] This action was recently reassigned to the undersigned after the Honorable Paul D. Borman and Honorable Jonathan J.C. Grey entered Orders of Recusal and Reassignment. (ECF Nos. 8, 29)

Infringement of U.S. Patent D805,964 (Count IV); Infringement of U.S. Patent D811,954 (Count V); Infringement of U.S. Patent D811,964 (Count VI); Infringement of U.S. Patent D826,114 (Count VII); Infringement of U.S. Patent D800,615 (Count VIII); Infringement of U.S. Patent D867,939 (Count IX); and, Infringement of U.S. Patent D777,622 (Count X). (ECF No. 1)

Quality Collision filed its Answer on February 1, 2024, along with a Counterclaim against Defendants General Motors Company, Inc., General Motors, LLC and GM Global Technology Operations, LLC alleging: Tortious Interference with Business Expectancy (Count I); Wrongful Seizure under 18 U.S.C. § 2320 (Count II); and Abuse of Process (Count III). (ECF No. 19)

The Counterclaim states that GM Global Technology Operations, LLC is a wholly owned subsidiary of General Motors Holdings LLC, which is a wholly owned subsidiary of General Motors Company, Inc. General Motors, LLC is also a wholly owned subsidiary of General Motors Holdings LLC and is the U.S. operating unit of General Motors Company, Inc. (collectively by Quality Collision as "GM"). (ECF No. 19, PageID.361) Quality Collision asserts that it is in competition with GM in the automotive collision repair industry. *Id*. at PageID.362. GM sells its own Original Equipment Manufacturer (OEM) replacement parts for GM automobiles. Quality Collision sells aftermarket

2

collision repair products that are designed to replace damaged or worn original parts to return an automobile to its original condition. *Id*.

The aftermarket industry permits automobile owners to affordably replace damaged or worn automotive parts through competition between the original parts makers – the OEMs – and third-party aftermarket sellers. *Id*. at PageID.363. Quality Collision claims that to stifle aftermarket competition, GM takes aggressive, and sometimes unlawful action against aftermarket companies. As an example, Quality Collision asserts that GM improperly influenced the United States Department of Homeland Security to conduct a raid on Quality Collision's warehouses in Warren, Michigan and Richmond, Michigan from July 6, 2022 through July 15, 2022. GM did this by preparing and submitting false or misleading allegations that Quality Collision was engaged in counterfeiting or trafficking in counterfeit automotive parts. *Id*.

Quality Collision further asserts that the allegations submitted by GM to Homeland Security were supplied by GM employee Andrea Ankawi with the assistance or at the suggestion of Raphy Raad Yaldo, who is also employed at GM. *Id*. Raphy Raad Yaldo is the brother of Ramy Yaldo, an owner of Special Way Auto Parts, Inc., a competitor of Quality Collision in the aftermarket parts industry. *Id*. at PageID.364. GM's actions resulted in the issuance of a search and seizure

order that resulted in a raid on Quality Collision's warehouses in Warren, Michigan, and Richmond, Michigan. Quality Collision claims that some days before the raid, the owner of Special Way Auto Parts, Ramy Yaldo, called Quality Collision and stated Quality Collision was about to have a problem. The day of the raid, Special Way Auto Parts doubled its prices. *Id*.

Special Way Auto Parts, Inc. sells the same aftermarket GM parts that were seized from Quality Collision by Homeland Security. Ramy Yaldo, an owner of Special Way Auto Parts, Inc., had advance notice that Homeland Security planned to conduct a raid of Quality Collision's warehouses. *Id*. The raid involved hundreds of agents, and it was conducted in a manner that was reckless or indifferent to damage to Quality Collision's facility, inventory, and business operations. *Id*. at PageID.364-365. GM sent its employees and/or agents into Quality Collision's facilities with Homeland Security agents throughout the raid to direct the taking of Quality Collision's servers, business records and inventory, which caused disruption to Quality Collision's business, including the shutdown of its facilities for many months. *Id*. at PageID.365. The raid caused damage to Quality Collision's inventory, including non-counterfeit, non-infringing automotive parts, rendering it valueless and causing Quality Collision to scrap

destroyed non-counterfeit, non-infringing automotive parts, which were worth hundreds of thousands, if not millions, of dollars. *Id*. at PageID.366-.367.

Quality Collision claims that the raid did not result in seizure of any GM counterfeit parts as attested to in several affidavits provided by GM employee Andrea Ankawi. *Id*. at PageID.368. However, Quality Collision further claims that the raid gave GM an unfair advantage in its planned case against Quality Collision for design patent infringement because GM caused the seizure of non-counterfeit inventory that it alleges infringes its design patents. Quality Collision states that GM would not have been able to otherwise disrupt Quality Collision's business to this extent on account of design patent infringement claims. *Id*.

This matter is before the Court on the collective GM's Motion to Dismiss Quality Collision's Counterclaim. A response and reply have been filed and a hearing held on the matter.

## II. ANALYSIS

### A. Motion to Dismiss Standard of Review

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605,

5

608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

**B. Fraud under Rule 9(b) of the Rules of Civil Procedure**

GM asserts that Quality Collision's Counterclaim should be dismissed because the claims fail to satisfy Rule 9(b) of the Rules of Civil Procedure. All of

the claims in the Counterclaim are based on allegations that GM submitted false or misleading allegations to Homeland Security. GM argues that the misrepresentations alleged do not satisfy the pleading requirements for fraud under Rule 9(b).

In response, Quality Collision argues that Rule 9(b) does not apply to its Counterclaim since the Counterclaim does not allege fraud. Quality Collision instead argues that the three claims in its Counterclaim are based on GM's bad faith conduct, not fraud.

The Sixth Circuit has interpreted Rule 9(b) as requiring a plaintiff to allege the time, place, and content of the alleged misrepresentation on which they relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. *See, Yuhasz v. Brush Welman, Inc.,* 341 F.3d 559, 563 (6th Cir. 2003). Claims for fraud and misrepresentation in Michigan common law are:

> (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to recovery.

*Hi Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336 (1976).

Reviewing the Counterclaim, the Court finds that Quality Collision did not allege a fraud and misrepresentation claim against GM. As noted above, Quality Collision alleges three counts: Tortious Interference with Business Expectancy (Count I); Wrongful Seizure under 18 U.S.C. § 2320 (Count II); and Abuse of Process (Count III). It may be that the facts alleged in the Counterclaim states that GM submitted false or misleading allegations to Homeland Security leading to the raid on Quality Collision's business, however, those statements were not alleged as *made to* Quality Collision to support a fraud and misrepresentation claim. The statements were made by GM *to* Homeland Security which led to the raid. Quality Collision did act upon the statements made by GM, nor did it rely on the statements made by GM to Homeland Security. The statements, as alleged in the Counterclaim, may be tested during discovery as to whether they were made in bad faith as they relate to Quality Collision. The alleged statements made by GM to Homeland Security relate to the three claims alleged by Quality Collision against GM. The heightened pleading requirement in Rule 9(b) is not applicable to the three counts alleged in the Counterclaim and the Court declines to dismiss the case based on Rule 9(b) since there are no fraud counts alleged by Quality Collision as to statements made by GM to Quality Collision.

### C. Implausible Claims

GM next seeks to dismiss the Counterclaim because it was Homeland Security who obtained warrants and raided Quality Collision. GM claims the Court should take judicial notice of the warrants obtained by Homeland Security. GM asserts that Homeland Security, as well as Customs and Border Patrol, determined that Quality Collision over the years have repeatedly violated the law regarding OEM parts, deeming those counterfeits.

Quality Collision responds that GM's claims of counterfeiting are baseless and false. Although the Court may consider documents outside the pleadings, such as publicly available documents, Quality Collision argues that the Court cannot weigh evidence or determine facts at the pleading stage. Quality Collision further argues that GM's submissions of affidavits and other evidence are out of court statements from the affiants, which are hearsay, or hearsay upon hearsay.

This matter is at the pleading stage. Although as noted above, the Court may consider certain documents outside the allegations in the Counterclaim at issue, the Court finds that doing so would require the Court to weigh GM's submissions to determine whether the Counterclaim allegations must be dismissed. The Court would have to weigh the affidavits, the underlying investigations by various governmental agencies, along with the search warrants, to determine

9

whether the allegations in the Counterclaim are plausible. The Court declines to do so at this time, but instead will look to the Counterclaim allegations set forth by Quality Collision. The Court will not dismiss the Counterclaim on a determination of implausibility based on a broad and sweeping investigation by the federal government.

### D. Tortious Interference (Count I)

GM argues that Quality Collision's Tortious Interference claim must be dismissed because it attempts to hold GM liable for exercising its legal right to cooperate with a government investigation in the protection of GM's valuable intellectual property. In response, Quality Collision argues that it has stated a claim for Tortious Interference and that GM interfered with its prospective business relations.

To establish a claim for tortious interference of a business relationship in Michigan, a plaintiff must show: 1) the existence of a valid business relationship or expectancy; 2) knowledge of the relationship or expectancy on the part of the defendant; 3) intentionally causing or inducing a breach or termination of the relationship or expectancy; and 4) resultant actual damage. *BPS Clinical Laboratories v. Blue Cross & Blue Shield of Michigan,* 217 Mich. App. 687, 698-99 (1997). A plaintiff is required to allege that a defendant acted with malice

10

and the actions were unjustified in law for the purpose of invading the contractual rights or business relationship of another. *Feldman v. Green,* 138 Mich. App. 360 (1984). A plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive or interference. *BPS Clinical,* 217 Mich. App. at 699. Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference. *Id.*

Addressing the first factor, Quality Collision identified an existence of a valid business relationship or expectancy. It has been in business selling aftermarket automotive parts for years, including to GM dealerships and in competition with GM. Quality Collision has more than one place of business, with large inventory of parts. (ECF No. 19 at PageID.362, .368-.369) This shows that Quality Collision has an existence of a valid business relationship or expectancy with various customers who come to its place of businesses for after-market parts. As to the second factor, Quality Collision has alleged that GM had knowledge of the relationship or expectancy. *Id*. at PageID.363-.364, .369. Regarding the third factor, whether GM intentionally caused or induced a breach or termination of the relationship or expectancy, Quality Collision has alleged that one of GM's employees is a brother of a Quality Collision competitor and

somehow had knowledge of the upcoming raid. *Id*. at PageID.364. In addition, as noted by GM, it cooperated with the government regarding information GM may have had as to alleged counterfeit parts possessed by Quality Collision. GM would have known that any raid would disrupt Quality Collision's business. *Id*. at PageID.364-.368, .370. Quality Collision has further alleged that GM's actions resulted in actual damages, the fourth factor. *Id*. at PageID. 367, .370.

After a review of the Counterclaim, the Court finds that Quality Collision has sufficiently pled a Tortious Interference with Business Relations claim in Count I. GM's Motion to Dismiss Count I is denied.

### E. Wrongful Seizure (Count II)

GM asserts that the Wrongful Seizure claim fails to state a claim because there is no such civil cause of action and that the count is "actually an incomprehensible mish mash of various inapplicable provisions." (ECF No. 25, PageID.418) GM further asserts that it did not seize anything, therefore it is not liable for Wrongful Seizure. Quality Collision responds that the Lanham Act provides a cause of action for wrongful seizure and that it has stated such a claim.

The Lanham Act provides that "[a] person who suffers damage by reason of a wrongful seizure under this subsection has a cause of action against the applicant for the order under which such seizure was made." 15 U.S.C. § 1116(d)(11); *See,*

*Waco Int'l Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 531 (5th Cir. 2022)(An application for *ex parte* seizure could be found wrongful even if a party prevails on a trademark infringement claim); *General Elec. Co. v. Speicher*, 877 F.2d 531, 537 (7th Cir. 1989).

In the Counterclaim, Quality Collision alleges that "GM improperly influenced the United States Department of Homeland Security to conduct a raid on Quality Collision's warehouses in Warren, Michigan and Richmond, Michigan from July 6, 2022 through July 15, 2022." (ECF No. 19, PageID.372) Section 1116(d)(11) expressly states that a party has a cause of action "against the *applicant* for the order under which such seizure was made." Quality Collision only alleges that GM "influenced" Homeland Security to obtain a seizure order. There is no allegation in the Counterclaim that GM is the applicant for an order under which the seizure was made. Quality Collision fails to state a claim for a Wrongful Seizure in Count II and Count II is dismissed.

F.  **Abuse of Process (Count III)**

GM seeks to dismiss the Abuse of Process claim for failure to state a claim because Quality Collision does not allege any "use of process" after the warrant was issued by Homeland Security. Quality Collision responds it pled that GM

13

went beyond the search and seizure order and used the process to seize parts that were not counterfeit.

In Michigan, a plaintiff must plead "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc*, 312 N.W.2d 585, 594 (Mich. 1981) (citing *Spear v. Pendill*, 130 N.W. 343, 344 (Mich. 1911)). A plaintiff must allege "more than the mere issuance of the process, because an 'action for abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue.'" *See Dalley v. Dykema Gossett*, 788 N.W.2d 679, 695 (Mich. Ct. App. 2010) (quoting *Friedman*, 312 N.W.2d at 595). The misconduct in an abuse of process claim "is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." *Curran v. City of Dearborn*, 957 F. Supp. 2d 877, 887 (E.D. Mich. 2013) (quoting *Friedman*, 312 N.W.2d at 594 n.18).

After reviewing the Counterclaim, the Court finds that Quality Collision has sufficiently stated an ulterior purpose and improper use for GM's part in the raid, meeting the factors required for an Abuse of Process claim. Quality Collision alleged that GM used the raid and the underlying Anti-Counterfeiting Act used by

14

Homeland Security to improperly injure a competitor it had no reason to believe was engaged in counterfeiting. (ECF No. 19, PageID.363-364) It further alleged that GM used the process to direct the destruction of Quality Collision's inventory it knew were not counterfeit and to examine its business records and inventory to improperly engage in a pre-suit investigation to support its design patent infringement claims. *Id*. at PageID.364-67, .374. The Court finds that Quality Collision has sufficiently pled that after the raid, GM was able to investigate Quality Collision's business records and inventory to conduct a pre-suit investigation of GM's patent infringement claims and was able to direct destruction of Quality Collision's inventory and business equipment. Quality Collision's factual allegations to support is Abuse of Process claim went beyond the initiation of the process for obtaining the warrants and order of seizure by Homeland Security. Count III remains and will not be dismissed.

### III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Counter Defendants General Motors Company, Inc., General Motors, LLC and GM Global Technology Operations, LLC's Motion to Dismiss the Counterclaim **(ECF No. 25)** is GRANTED IN PART and DENIED IN PART. The claims of Tortious Interference with Business Expectancy (Count I)

and the Abuse of Process (Count III) REMAIN. The Wrongful Seizure claim under 18 U.S.C. § 2320 (Count II) is DISMISSED.

IT IS FURTHER ORDERED that a Scheduling Conference date will be issued in this matter.

                                                                                s/Denise Page Hood
                                                                                 DENISE PAGE HOOD
                                                                                  United States District Judge

DATED: September 30, 2024