**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **GM GLOBAL TECHNOLOGY OPERATIONS, LLC**, a Delaware limited liability company, | )<br>)<br>) |
| Plaintiff/Counter-Defendant, | ) Case No. 2:23-cv-13026-DPH-CI<br>)<br>) Honorable Denise Page Hood |
| v. | )<br>) Magistrate Judge Curtis Ivy, Jr |
| **QUALITY COLLISION PARTS, INC.**, a Michigan corporation, | )<br>)<br>) |
| Defendant/Counter-Plaintiff. | )<br>)<br>) |

**QUALITY COLLISION PARTS, INC.'s MOTION TO STAY
DEPOSITIONS, AND FOR AN ADDITIONAL PROTECTIVE ORDER**

Defendant/Counter-Plaintiff Quality Collision Parts, Inc. ("Quality Collision"), by counsel and pursuant to Fed. R. Civ. P. 26(c), moves to stay depositions of its employees and owners, and for an additional protective order.

In accordance with E.D. Mich. L.R. 7.1, counsel for Quality Collision sought concurrence from counsel for GM on March 17, 2025 on a phone call, and in emails before that. GM refused to concur.

Date: March 25, 2025            Respectfully submitted,

                                                  **HOWARD & HOWARD ATTORNEYS PLLC**

                                                  By: */s/ Andrew M. Grove*
                                                      Andrew M. Grove (P48868)
                                                      Gerald E. McGlynn III (P41149)

1

Kristopher K. Hulliberger (P66903)
Joseph W. Barber (P82728)
450 West Fourth Street
Royal Oak, Michigan 48067
Phone: (248) 723-0343
Fax: (248) 645-1568
jg@h2law.com
gem3@h2law.com
kkh@h2law.com
jwb@h2law.com

*Attorneys for Defendant*
*Quality Collision Parts, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **GM GLOBAL TECHNOLOGY OPERATIONS, LLC**, a Delaware limited liability company, | )<br>)<br>)<br>) |
| Plaintiff/Counter-Defendant, | ) Case No. 2:23-cv-13026-DPH-CI |
| v. | ) Honorable Denise Page Hood |
| **QUALITY COLLISION PARTS, INC.,** a Michigan corporation, | ) Magistrate Judge Curtis Ivy, Jr |
| Defendant/Counter-Plaintiff. | ) |

## QUALITY COLLISION PARTS, INC.'s
## BRIEF IN SUPPORT OF ITS MOTION TO STAY DEPOSITIONS, AND
## FOR AN ADDITIONAL PROTECTIVE ORDER

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

ISSUES PRESENTED .......................................................................................... iii

I. INTRODUCTION ........................................................................................1

II. KEY BACKGROUND FACTS ...................................................................1

III. APPLICABLE LAW ....................................................................................4

   A. Stay or Delay of Depositions ..................................................................4

   B. Protective Order Amendments ...............................................................5

IV. ARGUMENT ................................................................................................6

   A. The Government Criminal Investigation is Impacting Discovery in This Case Because the Government can Subpoena What it Wants ..........6

   B. The Government Investigation Has Been Dragging on Since 2021 to the Detriment of Quality Collision ..........................................................7

   C. The Depositions Should be Stayed Until Quality Collision's Legitimate Concerns Under the Law of This Court are Addressed .........8

   D. There Should Also be an Additional Protective Order ..........................9

V. CONCLUSION ...........................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*In re Flint Water Cases. This Order Relates To: All Cases*, No. 5:16-cv-10444, 2019 U.S. Dist. LEXIS 195714 (E.D. Mich. Nov. 7, 2019) .......................... 5, 6, 9

*In re Grand Jury Subpoenas (04-124-03 & 04-124-05),* 454 F.3d 511 (6th Cir. 2006) ................................................................................................................7

*In the Matter of the Search of 5523 E. 9 Mile Rd., Warren, MI*, Case No. 2:22-mc-51121-DPH (E.D. Mich.) ...............................................................................1, 2

*Nix v. Sword*, 11 F. App'x 498 (6th Cir. 2001) ..........................................................5

*Petty ex rel. Doe v. Livonia Pub. Sch. ex rel. Doe*, No. 21-11328, 2023 U.S. Dist. LEXIS 38237(E.D. Mich. Mar. 7, 2023)...................................................... passim

*U.S. v. Bates*, 552 F.3d 472 (6th Cir. 2009)...........................................................5, 8

*U.S. v. McAllister*, 693 F.3d 572 (6th Cir. 2012).....................................................5, 8

*United States v. Calandra*, 414 U.S. 338; 94 S. Ct. 613 (1974)...............................6

*United States v. Miller*, 425 U.S. 435, 443, 96 S. Ct. 1619 (1976) ..........................7

**Other Authorities**

Michigan Constitution, Article 1, § 17 ......................................................................4

**Rules**

E.D. Mich. L.R. 7.1...................................................................................................1

Fed. R. Civ. P. 26(c)...............................................................................................1, 5

Fed. R. Civ. P. 26(c)(1)....................................................................................... iii, 5

Fed. R. Crim. P. 17(c)(1) ..........................................................................................6

Fed. R. Crim. P. 6(e)(6) ............................................................................................6

# ISSUE PRESENTED

**Issue:** the Fifth Amendment protects people against the risk of self-incrimination. Rule 26(c)(1) of the Federal Rules of Civil Procedure permits courts to fashion protective orders to protect litigants against "annoyance, embarrassment, oppression, or undue burden or expense." *Petty ex rel. Doe v. Livonia Pub. Sch. ex rel. Doe*, No. 21-11328, 2023 U.S. Dist. LEXIS 38237, at *11-12.

Should the Court here order a delay in the depositions of Quality Collision witnesses, and additional protections for them?

**Answer: YES**

**I.    INTRODUCTION**

Quality Collision asks the Court for additional measures to protect its personnel and their rights under the Fifth Amendment.  As the Court may know, Quality Collision is still exposed to a long-running criminal investigation for alleged acts of trafficking in counterfeit goods. Quality Collision needs a delay in the depositions of its people, and additional measures in place before its witnesses can testify in this case.

**II.    KEY BACKGROUND FACTS**

The Government (including the U.S. Attorney's Office for the Eastern District of Michigan, working with the Department of Homeland Security and U.S. Customs and Border Patrol – collectively "the Government") began investigating Quality Collision at least as early as October of 2021. Supported by false and misleading statements mainly from GM, the Government conducted raids on Quality Collision, and it seized dozens of truckloads of parts in July 2022. According to the affidavit from the Government that led to the seizure in July of 2022, the Government began investigating potential counterfeit activity at Quality Collision in early October of 2021. *Warrant Case*, ECF No. 1, at PageID.8.

The affidavit deals almost entirely with GM and allegations of *hundreds* of counterfeit GM parts. The affidavit states – falsely – in at least *five* different places that GM told the Government that Quality Collision's parts were counterfeit.

1

*Warrant Case*, ECF No. 1, ¶¶ 13, 15, 17, 21 and 24 (referencing "an official authentication letter via email from a Global Brand Protection Investigator with General Motors (GM) stating that the Chevrolet branded auto parts in all the shipments that were seized and inventoried were counterfeit…"). The affidavit references only *one* grille from Dodge, but the affidavit does not conclude that the grille is counterfeit; and the hearsay discussion of the grille suggests that it is not counterfeit because it has packaging that is not Dodge packaging, and the grille itself has "markings and labels inconsistent with a genuine Mopar® part like this." *Id*. at PageID.15–16. The affidavit references only *one* grille from Ford with only hearsay discussion of the part. *Id*. at PageID.20. So, the Government raid was based almost entirely on GM.

The problem with the affidavit is that now, GM argues that it *never* told the Government that *any* of the hundreds of GM parts in the affidavit were counterfeit. **Ex. A**. Decl. of Andrew Grove, ¶ 2, referring to GM's First Supplemental Responses and Objections to Quality Collision's Interrogatories, pp. 3–4 ("GM states that it did not tell the government that Quality Collision parts are or appear to be counterfeiting."). See also ECF No. 25, PageID. 412; see also *Id.* at PageID.402 (GM made test purchases but did not conclude counterfeiting); see also ECF No. 28, PageID.559-560 (denying that GM told DHS that Quality Collision parts were counterfeit). Thus, GM contradicts the affidavit from the Government and makes the

2

Government inspector look incompetent or dishonest. The problem for GM is that it still supported the raid, apparently knowing that there was no evidence of any crime, and GM still attended the raid and directed the seizure of truckloads of parts that – according even to GM – were not the subject of any crime.

From Quality Collision's standpoint, it believes that the Government is stalling to avoid admitting error or even potential liability because GM now disavows that it provided the evidence of counterfeiting that the Government relied on to conduct the devastating raids. The Government has still not decided whether to bring charges against anyone, despite the passing of over three and a half years. However, the Government returned around 90% of the parts it seized in 2022 starting in late 2024 and continuing into early 2025. **Ex. B.** Decl. of Tom Hermez, ¶ 4-8. While the Government has not clearly indicated its intentions, Quality Collision supposed – with justification - that the Government might make a decision about charging it in early 2025. *Id*. at ¶¶ 4-10.

Quality Collision served subpoenas and discovery requests on the Government on March 4, 2025, in order to further establish that there was no justification for the raids. **Ex. A**, ¶ 3. The subpoenas requested documents and testimony in April. Nevertheless, Quality Collision expected that one possible – even likely – response from the Government would be for the Government to move to stay this case so as not to disrupt any remaining criminal investigation. Quality

3

Collision expected that another possible response from the government would be to drop the investigation completely. **Ex. B**, ¶ 4-10.

To the present date, the Government has not indicated that it intends to stay the action. So Quality Collision must assume that the Government will not try to stay the action.

Despite Quality Collision's confidence that it is not involved in any criminal activity, Quality Collision and its people must still be concerned about the potential for Fifth Amendment risks in offering evidence in this case that might be used in the criminal investigation. GM has served deposition notices for several Quality personnel, including Tom Hermez, Ken Hermez, Alden Hermez, Nathir Hermez, and Bashar Yalda. ECF No. 50, PageID.1058. These are the people who have Fifth Amendment concerns about testifying while they and the company are still suffering under the Government's criminal investigation for trafficking in counterfeit parts.

## III. APPLICABLE LAW

The fundamental law at issue here is the right against self-incrimination as enshrined in the Fifth Amendment of the Constitution of the United States of America. A similar right is in the Michigan Constitution, Article 1, § 17.

### A. Stay or Delay of Depositions

Under the law of the Sixth Circuit and this District, courts can and have stayed depositions and other testimony until Fifth Amendment concerns can be addressed.

*Petty,* 2023 U.S. Dist. LEXIS 38237, at *11 (E.D. Mich. Mar. 7, 2023) (Suspending discovery deadlines that would require defendant to compromise his Fifth Amendment rights, and precluding depositions and other discovery that would have the same effect); *U.S. v. Bates*, 552 F.3d 472, 476 (6th Cir. 2009) (Defendant need not take stand when he has clear entitlement to Fifth Amendment privilege); *U.S. v. McAllister*, 693 F.3d 572, 583-584 (6th Cir. 2012). But see, *In re Flint Water Cases. This Order Relates To: All Cases*, No. 5:16-cv-10444, 2019 U.S. Dist. LEXIS 195714, at *33 (E.D. Mich. Nov. 7, 2019) (Defendant ordered to assert privilege on question-by-question basis).

### B. Protective Order Amendments

Federal Rule of Civil Procedure 26(c) also gives this Court the power to issue a protective order limiting discovery for good cause "to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "To show good cause for a protective order, a party must 'articulate specific facts showing clearly defined and serious injury resulting from the discovery sought. . . .'" *Petty*, 2023 U.S. Dist. LEXIS 38237, at *6, (quoting *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). The list of protective orders in Federal Rule of Civil Procedure 26(c)(1) is non-exhaustive.

In *Petty*, Judge Roberts ordered an indefinite delay in witness testimony to protect him against Fifth Amendment risks. *Petty*, 2023 U.S. Dist. LEXIS 38237, at

5

*11-12. See also *In re Flint Water Cases*, 2019 U.S. Dist. LEXIS 195714, at *33-36 (Ordering depositions and written discovery to be sealed, and allowing witness to assert Fifth Amendment privilege).

## IV. ARGUMENT

### A. The Government Criminal Investigation is Impacting Discovery in This Case Because the Government can Subpoena What it Wants

Quality Collision is concerned that the U.S. Attorneys office can get information from this case and the discovery GM is trying to take right now. The Government has the power to subpoena "any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1).

Moreover, the Government can subpoena the records *in secret* and with no notice to permit objections. Fed. R. Crim. P. 6(e)(6) provides that all "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." As the Supreme Court has stated:

> Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials.

*United States v. Calandra*, 414 U.S. 338, 343, 94 S. Ct. 613, 617 (1974). And further:

> This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.

*United States v. Miller*, 425 U.S. 435, 443, 96 S. Ct. 1619, 1624 (1976). See also *In re Grand Jury Subpoenas (04-124-03 & 04-124-05),* 454 F.3d 511, 521 (6th Cir. 2006) (internal quotation and citation omitted) ("Grand jury secrecy is thus a strong command, and federal courts must recognize that, for the system to function properly, grand jury proceedings must be conducted essentially in a vacuum, free from outside influence and sufficiently enveloped so that grand jury information is not disclosed to the general public.").

Accordingly, Quality Collision has reasonable concerns that GM can take information it obtains in discovery – including deposition testimony – and share it with the Government, putting Quality Collision and its people in undue peril. Absent additional protection from this Court, Quality Collision would have no right to notice of the subpoena and an opportunity to object if the Government serves a secret subpoena on GM.

**B.     The Government Investigation Has Been Dragging on Since 2021 to the Detriment of Quality Collision**

Of course, Quality Collision and GM would prefer to move ahead with their respective claims without any concern for the Government and whatever it might do

7

in the manner of criminal investigations. But through no fault of Quality Collision, it must be concerned with the Government. The Government is not helping. On the one hand, the investigation has been going on for more than three years; and it must end at some point because of the five-year statute of limitations. The Government is returning *dozens of truckloads* of parts and retaining comparatively few parts for review and consideration. **Ex. B**, ¶¶ 4-7. Yet the Government will not make a decision one way or another as to *whether* it will seek criminal charges or *against whom*, which is why the individuals at Quality Collision must be concerned. So the Government is holding the investigation over Quality Collision people and keeping them at risk while GM tries to take discovery. It is obvious that the Government and GM have a common interest against Quality Collision because Quality Collision has claims against both of them for their roles in the damage they did in the improper seizure. **Ex. B**, ¶ 11. So it is not surprising that the Government has an interest in delaying as long as possible.

    **C.    The Depositions Should be Stayed Until Quality Collision's Legitimate Concerns Under the Law of This Court are Addressed**

As reported above, the *Petty, Bates* and *McAllister* cases all favor a delay in depositions of persons at risk. The law in those cases can and should be applied here.

### D. There Should Also be an Additional Protective Order

There is a Protective Order in this case, and it is reasonably comprehensive for a typical civil case. ECF No. 37. According to Section 6. b), Attorneys Eyes Only documents can only be used for the present case and only by certain people.

But this is not a typical civil case, and Quality Collision needs a supplemental order to deal with the concern that the Government's investigation is ongoing, and can issue a secret subpoena to GM for documents and deposition testimony without giving notice to Quality Collision or an opportunity to object.

This Court has previously imposed a special protective order in light of criminal proceedings in at least two cases – as reported above. *See In re Flint Water Cases*, 2019 U.S. Dist. LEXIS 195714, at *36–37; *Petty*, 2023 U.S. Dist. LEXIS 38237, at *11. Similarly here, Quality Collision seeks an order sealing Attorneys Eyes Only documents, and otherwise preventing the Government from obtaining them without notice and an opportunity for Quality Collision to object. *In re Flint Water Cases* 2019; *Petty*, 2023 U.S. Dist. LEXIS 38237, at *11–12.

GM will argue that this is all inconvenient for it and disruptive to its case. But it must be recognized that GM caused the entirety of this problem by urging, supporting and participating in an illegal and improper seizure. There would be no criminal investigation without GM's improper conduct, so GM cannot be heard to complain.

## V. CONCLUSION

Quality Collision asks the Court for:

1) A delay in the deposition schedule until such time as the Court and the parties can get protections in place, and

2) A supplemental protective order sealing Attorneys Eyes Only documents and ordering that General Motors cannot give the Government any sealed deposition testimony or documents without giving Quality Collision timely notice and an opportunity to object to any Subpoena from the Government.

Date: March 25, 2025  Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

By: */s/ Andrew M. Grove*
    Andrew M. Grove (P48868)
    Gerald E. McGlynn III (P41149)
    Kristopher K. Hulliberger (P66903)
    Joseph W. Barber (P82728)
450 West Fourth Street
Royal Oak, Michigan 48067
Phone: (248) 723-0343
Fax: (248) 645-1568
jg@h2law.com
gem3@h2law.com
kkh@h2law.com
jwb@h2law.com

*Attorneys for Defendant*
*Quality Collision Parts, Inc.*

## CERTIFICATE OF SERVICE

      I certify that on March 25, 2025, I caused the foregoing document to be filed with the Clerk of the Court via the CM/ECF system, which will cause notice of same to be sent to all counsel of record.

      By: */s/ Andrew M. Grove*