# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

GM GLOBAL TECHNOLOGY
OPERATIONS LLC,

      Plaintiff,

v.

QUALITY COLLISION PARTS, INC.,

      Defendant.

**Case No.: 2:23-cv-13026-JJCG**

**Honorable Denise Page Hood**

---

QUALITY COLLISION PARTS, INC.,

      Counterclaim-Plaintiff,

v.

GENERAL MOTORS COMPANY,
INC, GENERAL MOTORS LLC, and
GM GLOBAL TECHNOLOGY
OPERATIONS LLC,

      Counterclaim-Defendants.

---

## GM'S RESPONSE IN OPPOSITION OF QUALITY COLLISION'S MOTION TO STAY DEPOSITIONS, AND FOR AN ADDITIONAL PROTECTIVE ORDER

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ...........................................................................1

II.    ARGUMENT.................................................................................2

    A.    Quality Collision's Request For An Indefinite Stay Of All Depositions Of Its Witnesses Should Be Denied..................................2

        1.    The Stay Request Is Untimely And Waived Given Quality Collision's Failure To Appear For Noticed Depositions............2

        2.    Reference To Vague Unspecified Fifth Amendment Concerns Does Not Justify An Indefinite Stay Of All Quality Collision Depositions......................................................5

        3.    The Stay Factors Overwhelmingly Favor Denial Of A Stay ...................................................................................8

    B.    Quality Collision's Request To Modify The Protective Order Should Be Denied................................................................12

III.    CONCLUSION.............................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*In re Air Crash Disaster at Detroit Metropolitan Airport on Aug. 16, 1987*,
  130 F.R.D. 627 (E.D. Mich. 1989) ....................................................................4

*Chao v. Fleming*,
  498 F. Supp. 2d 1034 (W.D. Mich. 2007) .........................................................10

*In re Flint Water Cases*,
  Case No. 16-cv-1044, 2019 WL 5802706 (E.D. Mich. Nov. 7, 2019) ............................................................................................................7, 9

*FTC v. E.M.A. Nationwide, Inc.*,
  767 F.3d 611 (6th Cir. 2014) ........................................................................9, 11

*Hoffman v. United States*,
  341 U.S. 479 (1951) ...........................................................................................6

*In re Morganroth*,
  718 F.2d 161 (6th Cir. 1983) ..............................................................................6

*Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*,
  565 F.2d 393 (6th Cir. 1977) ..............................................................................9

*Petty v. Livonia Pub. Schools, et al.*,
  Case No. 21-11328, 2023 WL 2392113 (E.D. Mich. Mar. 7, 2023)................11

*Pritchard v. County of Erie*,
  No. 04CV534C, 2006 WL 2927852 (W.D.N.Y. Oct. 12, 2006).........................7

*Scovill Mfg. Co. v. Sunbeam Corp.*,
  61 F.R.D. 598 (D. Del. 1973) .............................................................................6

*Sexual Sin De Un Abdul Blue v. River Rouge*,
  No. 16-cv-10526, 2017 WL 2438789 (E.D. Mich. Jun. 6, 2017)....................4, 5

*U.S. v. Bates*,
  552 F.3d 472 (6th Cir. 2009) ............................................................................11

ii

*U.S. v. McAllister*,
    693 F.3d 572 (6th Cir. 2012) ...............................................................................11

**RULES**

Fifth Amendment ........................................................................................5, 6, 7, 8

*Federal Rule of Civil Procedure 26(c)* ....................................................................4

## <u>STATEMENT OF THE QUESTIONS PRESENTED</u>

Quality Collision asks this Court to stay all depositions of its personnel and for this Court to impose additional protections. Quality Collision's request comes after it failed to appear for three depositions. Moreover, Quality Collision's request fails to articulate a legitimate basis for staying this case, instead claiming a blanket Fifth Amendment privilege. Should the Court grant Quality Collision's request to stay depositions and for additional protections?

GM Answers: No.

Quality Collision Presumably Answers: Yes.

The Court Should Answer: No.

## <u>CONTROLLING AND MOST APPROPRIATE AUTHORITIES</u>

Fed. R. Civ. P. 26(c)

## I.    INTRODUCTION

Quality Collision is a serial infringer of GM's design patents, necessitating this 10-patent infringement case. But instead of answer for its transgressions, Quality Collision appears determined to prevent GM from fairly pursuing even basic discovery on its claims.

This motion makes that clear. The discovery cutoff is less than two-months away and Quality Collision unilaterally ***refused to appear for any of the five noticed depositions of its witnesses***. Quality Collision's principal, Tom Hermez, likewise ***refused to appear*** as the designated representative for a properly noticed deposition pursuant to Rule 45 of an importing company that Quality Collision used to import infringing product. GM was forced to file a motion for sanctions based on this obstruction, and a motion to compel the depositions.  ECF No. 50.

Quality Collision now seeks an ***indefinite stay*** which would grind discovery to a halt and severely prejudice GM's ability to advance its case.

Quality Collision's motion for a stay should be denied for two key reasons. ***First***, it is untimely. This motion comes after Quality Collision's witnesses failed to appear for noticed depositions, and a week after GM was forced to move to compel Quality Collision's depositions. ECF No. 50.  It should be summarily denied for that reason alone.

***Second***, Quality Collision's vague reference to speculative and ill-defined

1

"Fifth Amendment concerns" is no basis to refuse to produce **any witness for any deposition**. The "normal practice is to allow the deposition to go forward and for the deponent to assert [fifth amendment] privilege in response to particular questions, thereby allowing the court to rule upon a concrete record." *Pritchard v. County of Erie*, No. 04CV534C, 2006 WL 2927852, at *3 (W.D.N.Y. Oct. 12, 2006).

Quality Collision knows full well that depositions on GM's patent infringement claims[1] will not elicit any Fifth Amendment privilege objections, but even if they somehow did, the Court could rule after the deposition on specific objections and specific questions, i.e., a "concrete record."  A complete indefinite stay serves no purpose other than prejudicing GM.

This Court should deny Quality Collision's Motion.

## II.     ARGUMENT

### A.     Quality Collision's Request For An Indefinite Stay Of All Depositions Of Its Witnesses Should Be Denied

#### 1.     The Stay Request Is Untimely And Waived Given Quality Collision's Failure To Appear For Noticed Depositions

Quality Collision's request to stay depositions is procedurally improper and

---

[1] GM filed a motion for sanctions (ECF No. 52) against Quality Collision for serious discovery and other litigation misconduct, and as a remedy seeks judgment against Quality Collision's counterclaims.  In connection with that request, GM filed a motion for protective order (ECF No. 57) seeking to stay discovery on Quality Collision's counterclaims.  To be clear, as set forth herein, GM opposes staying any discovery on its affirmative claims of willful design patent infringement.

should be denied. The request comes only after Quality Collision refused to appear for three scheduled depositions, despite ample notice and opportunity to raise concerns promptly.

On January 27, 2025, GM noticed the depositions of five Quality Collision witnesses. ECF No. 50, PageID.1056. The depositions were scheduled as follows: 1) Bashar Yalda – March 18, 2025; 2) Nathir Hermez – March 21, 2025; 3) Kanaan Hermez – March 25, 2025; 4) Alden Hermez – March 27, 2025; and 5) Tom Hermez – March 28, 2025. *Id.*

On the eve of Bashar Yalda's deposition, Quality Collision's counsel abruptly informed GM's counsel via email that none of the depositions would proceed, vaguely citing concerns about a potential overlap with a criminal investigation. ECF No. 50, PageID.1056-57. This was the first time Quality Collision had raised any such objection. It could have raised objection when GM filed suit on November 29, 2023 (more than a year and a half after Quality Collision's facility was searched), when the parties were negotiating the Stipulated Protective Order, or when GM noticed the depositions in January. Yet it did not raise any issue about depositions until March 11, one week before the first deposition, and did not file this for a protective order until March 25, after failing to appear for three of the five noticed depositions.

Quality Collision had a clear obligation to seek a protective order before the

depositions. "If a party objects to the sequence and timing of any properly noticed depositions, then ***that party must seek a protective order pursuant to Federal Rule of Civil Procedure 26(c).***" *Sexual Sin De Un Abdul Blue v. River Rouge*, No. 16-cv-10526, 2017 WL 2438789, at \*2 (E.D. Mich. Jun. 6, 2017).[2] Quality Collision's failure to do so waives its objections. *See In re Air Crash Disaster at Detroit Metropolitan Airport on Aug. 16, 1987*, 130 F.R.D. 627, 630 (E.D. Mich. 1989) (holding that a party forfeits objections by failing to seek judicial relief before the deposition date).[3]

In view of this, GM filed a motion for sanctions and a motion to compel these noticed depositions.  ECF No. 50.  In that co-pending motion GM established that, since Quality Collision unilaterally refused to comply with the deposition notices without first obtaining a protective order, it must produce its witnesses immediately.

---

[2] Quality Collision attempts to distinguish this case in its Response to GM's Motion to Compel Deposition Testimony and for Sanctions. *See* ECF No. 60, PageID.1327-28. Quality Collision is wrong. GM cited *River Rouge* for the proposition that a party must file a protective order prior to its failure to appear for a deposition. *See* ECF No. 50, PageID.1060. The *River Rouge* decision plainly holds that and Quality Collision fails to address this established case law.

[3] Quality Collision also attempts to distinguish this case in its Response to GM's Motion to Compel Deposition Testimony and for Sanctions. ECF No. 60, PageID.1332. Quality Collision claims its actions are not like the defendant in this case. Incorrect. Like the defendant in *In re Air Crash Disaster*, Quality Collision failed to provide witnesses for deposition without a protective order. This Court should mirror the relief given in the *In re Air Crash* case and force Quality Collision to provide witnesses to testify.

*See River Rouge*, 2017 WL 2438789, at *2 (ordering a deposition after a party unilaterally canceled without seeking a protective order); *see also Volkswagen AG v. Dorling Kindersley Pub.*, Inc., No. 05-cv-72654, 2006 WL 2357543, at *1 (E.D. Mich. Aug. 15, 2006) (compelling depositions of seven witnesses improperly blocked by defendants without a protective order).[4]

Quality Collision did not file this motion until a week after GM's parallel motion for sanctions/compel depositions, and after it failed to produce witnesses at several of the noticed depositions. It is too little too late. The Court should summarily deny this motion outright as untimely, and the objections raised therein are now waived. At the same time, the Court should grant GM's motion for sanctions and to compel Quality Collision to immediately produce its witnesses for deposition.

### 2. Reference To Vague Unspecified Fifth Amendment Concerns Does Not Justify An Indefinite Stay Of All Quality Collision Depositions

The Court should also deny the motion because there is no legitimate justification for Quality Collision's unilateral refusal to appear for depositions.

---

[4] Quality Collision also tries to distinguish this case in its Response to GM's Motion to Compel Depositions and for Sanctions. ECF No. 60, PageID.1328. Although Quality Collision claims it did not "unilaterally . . .block[]" the depositions, it abruptly cancelled all depositions, one week before they were set to start, and failed to provide a date for the depositions. The record is clear, Quality Collision did **unilaterally block** the depositions.

Quality Collision seeks to stop all depositions of its witnesses "to protect" "their rights under the Fifth Amendment."   ECF No. 51 at PageID.1097.   Quality Collision states that its witnesses are "concerned about the potential for Fifth Amendment risks in offering evidence in this case that might be used in the criminal investigation."   *Id.* at PageID.1100; *id.* at PageID.1103 ("Quality Collision has reasonable concerns that GM can take information it obtains in discovery…and share it with the Government, putting Quality Collision and its people in undue peril.").   But critically, nowhere in its motion does Quality Collision even remotely identify ***what*** information, discovery, or questions, would give rise to these vague, undefined "concerns."

Courts have made clear that the right against self-incrimination under the Fifth Amendment applies only when there is a real identifiable risk of self-incrimination—not just a vague or speculative possibility. *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983).  A witness cannot, for example, make a blanket claim of privilege; it must be asserted in response to specific questions. *See Hoffman v. United States*, 341 U.S. 479, 486–88 (1951). And as courts have repeatedly held, having a privilege does not mean depositions can be shut down. *See Scovill Mfg. Co. v. Sunbeam Corp.*, 61 F.R.D. 598, 603 (D. Del. 1973) ("[t]he circumstances are rare which justify an order that a deposition not be taken at all, and the existence of privilege is not one of those circumstances").

6

The standard approach is to allow depositions to proceed so parties can create a record and provide context for any Fifth Amendment privilege claims. *See In re Flint Water Cases*, Case No. 16-cv-1044, 2019 WL 5802706, at *3 (E.D. Mich. Nov. 7, 2019) (where the court denied a motion to stay depositions and required the party to answer questions and assert fifth amendment privilege on a question by question basis); *see also Pritchard v. County of Erie*, No. 04CV534C, 2006 WL 2927852, at *3 (W.D.N.Y. Oct. 12, 2006) ("[T]he normal practice is to allow the deposition to go forward and for the deponent to assert privilege in response to particular questions, thereby allowing the court to rule upon a concrete record.").

In *Flagg v. City of Detroit*, the court rejected a third party's attempt to avoid depositions by citing a vague concern about privilege, emphasizing that such arguments were purely speculative. No. 05-74253, 2010 WL 3070104, at *1 (E.D. Mich. Aug. 4, 2010). Instead, the court made clear that the party should respond to specific questions and assert privilege only when necessary. *Id.*

Here, Quality Collision made no attempt to identify particular subjects or lines of questioning that might trigger Fifth Amendment concerns. It simply seeks to shut down all depositions of all of its witnesses entirely at the threshold, an approach courts have consistently rejected.  This Court should reject it also.

The reason Quality Collision only points to vague, speculative "concerns" about the Fifth Amendment is because it knows full well that GM seeks to depose

7

its witnesses on its affirmative patent infringement claims, which presents almost no overlap with issues in the government's criminal case against Quality Collision.  At the very least, GM seeks discovery into the manufacture, procurement, importation, distribution, inventory, and sale of Quality Collision's accused aftermarket vehicle replacement parts.  GM also seeks discovery into the substantial similarity of those parts as compared to GM's asserted patents.  GM also seeks discovery into Quality Collision's knowledge of the asserted patents, and Quality Collision's decision to sell the accused products despite such knowledge.  None of these issues implicate any Fifth Amendment concern and Quality Collision has identified none.

Nevertheless, in the unlikely event that a particular question gives rise to a legitimate Fifth Amendment "concern," Quality Collision's witness could invoke the Fifth Amendment, and GM could decide to challenge that decision on a fully developed "concrete record."  Quality Collision gives no reason why such a procedure would not work here.  There is none.

### 3.    The Stay Factors Overwhelmingly Favor Denial Of A Stay

Quality Collision further suggests that the mere pendency of a parallel criminal investigation is justification for a stay, but that is incorrect too.  As the Sixth Circuit has made clear: "Nothing in the Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment, . . . and there is no requirement that a civil proceeding be stayed pending the outcome of criminal

proceedings." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014) (citations omitted).

The burden is on the party seeking a stay to demonstrate a compelling need for delay while also showing that neither the opposing party nor the public will suffer harm from the requested order. *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977).  Courts evaluate stay requests based on six factors: 1) The extent to which the issues in the criminal case overlap with those in the civil case; 2) The status of the case, including whether the defendants have been indicted; 3) The private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice caused by delay; 4) The private interests of and burden on the defendants; 5) The interests of the courts; and 6) The public interest. *In re Flint Water Cases*, No. 5:16-CV-10444, 2019 WL 5802706, at *2 (E.D. Mich. Nov. 7, 2019).

Quality Collision's motion does not even address these factors, let alone establish that they favor a stay.  None of them do.

As to the first two factors: overlap between the criminal and civil issues and the status of the case, courts overwhelmingly disfavor stays where no indictment has been issued. As the Sixth Circuit has noted, "courts generally do not stay proceedings in the absence of an indictment," and such stays are considered "an extraordinary remedy." *E.M.A. Nationwide¸* 767 F.3d at 627–28.

As to the third factor, prejudice to GM and the need for expedited resolution, Quality Collision's conduct has already prejudiced the plaintiffs. It participated in this litigation for over two years but abruptly canceled depositions at the last minute. Additionally, because Quality Collision has not provided a date certain when depositions will occur, and in practical terms is seeking an effectively *indefinite* stay, Quality Collision's request will necessitate an entirely new scheduling order, and a significant delay in trial. Also, Quality Collision continues to sell infringing parts, thus continuing to harm GM.  As GM intends to establish later in this case, this continued infringement is irreparably harming GM.

As to the fourth factor, the burden on Quality Collision is minimal. Quality has substantiated no burden it would face if the depositions proceed. It has provided only vague assertions rather than specific evidence of harm.

As to the fifth factor, the interest of the Court, this factor also weighs heavily against a stay. The Court has already expended significant resources managing this case, and an unnecessary delay would only waste judicial resources. Courts have a strong interest in resolving disputes efficiently rather than allowing indefinite delays. *See Chao v. Fleming*, 498 F. Supp. 2d 1034, 1040 (W.D. Mich. 2007) (noting that the court's docket management considerations weighed against a stay).

Finally, the public interest strongly favors moving forward. Courts recognize that "the public interest is furthered when individuals' injuries are remedied in a

timely manner." *E.M.A. Nationwide*, 767 F.3d at 629. Here, public interest is directly implicated because Quality's sale of imitation products threatens consumer trust and product safety. A stay would only delay the resolution of these concerns, allowing potentially misleading products to remain on the market without oversight. Consumers deserve clarity and protection from deceptive practices, and this litigation is essential to ensuring those protections.

Quality Collision references three cases (*Bates, McAllister,* and *Petty*) which it contends supports a stay. ECF No. 51, PageID.1104. Both *Bates* and *McAllister*, dealt with individuals who had been indicted and who were likely going to testify on issues that directly affected their indictments. *See U.S. v. Bates*, 552 F.3d 472 (6th Cir. 2009); *see also U.S. v. McAllister*, 693 F.3d 572 (6th Cir. 2012). Quality Collision has not been indicted, and Quality Collision has not identified testimony that would bear on its criminal investigation. Thus, these cases do not apply. In *Petty v. Livonia Pub. Schools, et al.,* Case No. 21-11328, 2023 WL 2392113 (E.D. Mich. Mar. 7, 2023), the Court **denied a Motion to Stay** the case as it "would be harmful to Plaintiffs' exceptionally strong interests in proceeding expeditiously." Like *Petty*, this Court should deny this Motion to Stay because there are "exceptionally strong interests," as detailed above.

Simply put, none of the six factors support a stay and Quality Collision's caselaw does not support this request, either.

11

**B.     Quality Collision's Request To Modify The Protective Order Should Be Denied**

Quality Collision also asks this Court to modify the protective order to prevent the Government from obtaining documents from this case marked "Attorneys' Eyes Only" without providing notice to Quality Collision.  The request is an unusual one, as there is no indication that the government is seeking information from GM about Quality Collision that GM obtained during discovery in this case.  It is unclear what, if anything, Quality Collision believes the government would obtain from GM that it could not obtain directly from Quality Collision.

In any event, no modification is necessary because Section 6 of the Protective Order (ECF No. 37) already prohibits disclosure of documents designated "Attorneys Eyes Only" to third-parties without "written consent of the producing party or upon order of the Court."  ECF No. 37 at PageID.653-654.

**III.   CONCLUSION**

For the reasons above, the Court should deny the motion.

Dated: April 8, 2025                          Respectfully Submitted,

                                              HONIGMAN LLP


                                              By: */s/ Dennis J. Abdelnour*

                                              Dennis J. Abdelnour
                                              David J. Roulo
                                              321 N. Clark St. Suite 500
                                              Chicago, IL 60654
                                              (312) 701-9348
                                              dabdelnour@honigman.com
                                              droulo@honigman.com

                                              J. Michael Huget (P39150)
                                              Scott D. Barnett (P82673)
                                              Latifa H. Dabaja (P84461)
                                              2290 First National Building
                                              660 Woodward Ave.
                                              Detroit, MI 48226
                                              (313) 465-7000
                                              mhuget@honigman.com
                                              sbarnett@honigman.com
                                              ldabaja@honigman.com

                                              *Attorneys for GM Global Technology*
                                              *Operations, LLC, General Motors, LLC*
                                              *and General Motors Company, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on April 8, 2025.

/s/ Dennis J. Abdelnour

*Attorney for GM Global Technology
Operations, LLC, General Motors, LLC
and General Motors Company, Inc.*