UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GM GLOBAL TECHNOLOGY
OPERATIONS, LLC,

           Plaintiff/Counter-
           Defendant,

v.

QUALITY COLLISION PARTS,
INC.,

           Defendant/Counter-
           Plaintiff,

v.

GENERAL MOTORS
COMPANY, INC. and GENERAL
MOTORS, LLC.

           Counter-Defendants
_____/

Case No. 23-13026

Denise Page Hood
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## **ORDER ON PENDING MOTIONS (ECF Nos. 42, 45, 52, 53, 54, 57, 62)**

## I.    PROCEDURAL HISTORY

Plaintiff GM Global Technology Operations, LLC filed this action against

Defendant Quality Collision Parts, Inc. for design patent infringement on

November 29, 2023.  (ECF No. 1).  Defendant filed its Answer with Counterclaims

on February 1, 2024.  (ECF No. 19).  Defendant brought its Counterclaims against

Plaintiff as well as General Motors Company, Inc. and General Motors, LLC.  (*Id.*

at PageID.361).  For the sake of simplicity, the Court will refer to Plaintiff and the

other GM entities as "Counter-Defendants."  Since discovery opened in October

2024, the parties have engaged in a flurry of motion practice.  (ECF Nos. 42, 45,

50, 51, 52, 53, 54, 57, 62, 80, 81, 86, 89, 90, 91, 92, 95, 100, 102, 107).  The Court

referred all pretrial matters except for dispositive motions to the undersigned.

(ECF No. 43).  Here, the Court resolves ECF Nos. 42, 45, 52, 53, 54, 57, and 62.

## II.    BACKGROUND

Plaintiff is a wholly-owned subsidiary of General Motors Holdings LLC

which, in turn, is a wholly-owned subsidiary of General Motors Company, Inc.

(ECF No. 1, PageID.4, ¶ 8; ECF No. 19, PageID.361, ¶ 1).  General Motors LLC is

also a wholly-owned subsidiary of General Motors Holdings LLC and is the

operating unit of General Motors Company, Inc. here in the United States.  (ECF

No. 1, PageID.4, ¶ 8; ECF No. 19, PageID.361, ¶ 1).

A.    The Complaint

Plaintiff "invests heavily in the protection of the unique and innovative

features embodied in its vehicles and the component parts of those vehicles."

(ECF No. 1, PageID.4-5, ¶ 12).  As such, Plaintiff has applied for and received

over a thousand U.S. Design Patents.  (*Id.*).  Defendant sells aftermarket

replacement parts for automotive vehicles.  (*Id.* at PageID.5, ¶ 13).  According to

Plaintiff, Defendant's entire business is predicated on offering carbon copy parts

that "perfectly match the ornamental appearance of OEM [original equipment

manufacturer] components, including those of GM." (*Id.*). Plaintiff alleges that Defendants infringe on its design patent thereby causing significant harm to GM since Defendant merely copies the designs without investing the time and resources needed to produce those designs. (*Id.* at PageID.6, ¶ 15). In other words, Defendant can charge less for its aftermarket replacement parts and deprive GM of that potential revenue.

Defendant purportedly became aware of the asserted GM patents through a federal investigation and regulatory action in July 2022. (*Id.* at ¶ 18). At that time, Customs and Border Protection ("CBP") seized parts from Defendant's facilities in Warren and Richmond, Michigan for suspected infringement of certain trademarks and design patents. (*Id.* at ¶ 19). In December 2022, personnel from GM inspected the seized parts at CBP's request and identified parts that allegedly infringed upon GM's design patents. (*Id.* at ¶ 20). GM provided evidence to CBP of its determination of design patent infringement via affidavits. (*Id.*).

GM's counsel formally notified Defendant, in writing, of the design patents it was infringing (the "Asserted GM patents") around June 13, 2023. (*Id.* at PageID.8, ¶ 23). On August 7, 2023, counsel for Quality Collision acknowledged it had the affidavits GM had provided to CBP. (*Id.*).

Plaintiff also claims that Defendant did not have a license or any other form of authorization to "practice the designs of the Asserted GM Patents." (*Id.* at ¶ 24).

3

Plaintiff ultimately brought ten counts of design patent infringement against Defendant for various parts of several GM vehicles. (*Id.* at PageID.8-24).

B.    The Counterclaims

Defendant claims that it is one of Counter-Defendants' direct competitors in the automotive collision repair industry. (ECF No. 19, PageID.362, ¶ 5). While Counter-Defendants sells replacement OEM parts, Defendant sells aftermarket products "designed to replace damaged or worn original parts to return an automobile to its original condition." (*Id.* at ¶¶ 6-7). "To stifle aftermarket competition," Defendant alleges, "[Counter-Defendants] take[ ] aggressive, and sometimes unlawful actions against aftermarket companies." (*Id.* at PageID.363, ¶ 10). Defendant contends that Counter-Defendants did this by "improperly influenc[ing]" the federal government ("the Government") to conduct the July raids on Defendant's Warren and Richmond facilities. (*Id.* at ¶ 11).

Defendant's theory of its case is that Counter-Defendants provided "false or misleading allegations" of Defendant's wrongdoing to the Government. (*Id.* at ¶ 12). Defendant alleges that Andrea Ankawi submitted these allegations assisted by Raphy Raad Yaldo; both Ankawi and Raphy Yaldo are GM employees. (*Id.* at ¶ 13). Raphy Yaldo is the brother of Ramy Yaldo, an owner of Special Way Auto Parts, Inc, which is one of Defendant's competitors. (*Id.* at PageID.364, ¶ 14). Counter-Defendants' actions allegedly resulted in the "search and seizure order"

4

that yielded the July 2022 raids.  (*Id.* at ¶ 16).  Shortly before the raids, Ramy Yaldo apparently called Defendant and told it that it "was about to have a problem."  (*Id.* at ¶ 17).

Defendant claims that the Government's raids damaged Defendant's facilities.  (*Id.* at PageID.364-65, ¶ 20).  Defendant further claims that Counter-Defendants had personnel present at Defendant's facilities during the raids; those employees allegedly "direct[ed] the taking of Quality Collision's servers, business records and inventory, which caused disruption to Quality Collision's business."  (*Id.* at PageID.365, ¶ 21).  The raids also damaged Defendant's inventory, "rendering it valueless and causing Quality Collision to scrap destroyed non-counterfeit, non-infringing automotive parts."  (*Id.* at PageID.366, ¶ 22).

Defendant reports that the raids did not result in the seizure of any GM counterfeit parts.  (*Id.* at PageID.368, ¶ 25).  Even so, Defendant alleges that Counter-Defendants' involvement in the July raids gave Plaintiff an "unfair advantage" in its design patent infringement case since the raids resulted in the seizure of parts central to Plaintiff's own claims.  (*Id.* at ¶ 26).

In light of these allegations, Defendant raised three Counterclaims, but only two survived Counter-Defendants' motion to dismiss.  (*Id.* at PageID.369-74; ECF No. 32).  The remaining Counterclaims are state-law claims for tortious

interference with business expectancy and abuse of process.  (ECF No. 19, PageID.369-71, PageID.373-74).

## III.   ANALYSIS

A.   <u>Counter-Defendants' Motion for Sanctions and Related Motions
(ECF Nos. 52, 53, 54, 57, 62)</u>

Counter-Defendants filed their motion for sanctions and a related motion to seal on March 26, 2025.  (ECF Nos. 52, 53).  On the same day, movants also filed a sealed copy of its motion as well as sealed exhibits related to the motion.  (ECF Nos. 54, 55, 56).  Defendant filed its response brief on April 9, 2025.  (ECF No. 65).  Defendant also moved to seal its response brief and the related exhibit.  (ECF No. 68).  On April 16, 2025, Counter-Defendants filed their reply brief—this also came with its own motion to seal.  (ECF Nos. 72, 73).  The Court granted the motions to seal Defendant's response brief and Counter-Defendants' reply brief. (ECF Nos. 70, 78).  The Court now resolves the motion to seal Plaintiff's motion for sanctions and the sanctions motion itself.  The Court also addresses Counter-Defendants' motion to remove Defendant's confidentiality designation on the documents subject to the motion to seal, (ECF No. 62), as well as Counter-Defendants' motion for a protective order to stay discovery concerning Defendant's Counterclaims, (ECF No. 57).

1.   <u>Motion to Seal (ECF No. 53)</u>

Counter-Defendants filed a motion to seal, (ECF No. 53), an unredacted version of its motion to sanction Defendant and defense counsel under 28 U.S.C. § 1927 and the Court's inherent authority, (ECF Nos. 54), the email on which that motion to sanction relies upon, (ECF No. 55), and a redacted portion of a document excerpting information from that email, (ECF No. 56).  (ECF No. 53, PageID.1236-37).  Counter-Defendants do not, however, believe that these documents should be filed under seal.  (*Id.* at PageID.1237-40).  Rather, they only filed the motion because the third-party that produced the email designated it as "Confidential Subject to Protective Order Attorneys Eyes Only" pursuant to the parties' stipulated protective order.[1]  (*Id.* at PageID.1237).  Since Defendant refused to de-designate the email, Counter-Defendants needed to file the motion to seal or risk violating the protective order.  (*Id.* at PageID.1238).  That said, they maintain that there is no compelling interest that warrants sealing the unredacted motion for sanctions and the two accompanying exhibits.

Defendant disagrees and argues that the documents contain sensitive material that should be filed only under seal.  (ECF No. 59, PageID.1312).  Defendant avers that the material in question falls within the scope of the stipulated

---

[1] The email was "produced by third-party Taft Stettinius & Hollister ("Taft"), the lawyers for Defendant/Counterclaim-Plaintiff Quality Collision Parts, Inc. ("QC") in its criminal proceedings."  (ECF No. 53, PageID.1236-37).

protective order (specifically ¶ 4) and Federal Rule of Civil Procedure 26(c).[2]  (*Id.* at PageID.1313).  Focusing on the paragraph of the email from U.S. Attorney Timothy Wyse (the "Wyse Email") that begins "Perhaps most importantly," Defendant posits that the full paragraph contains "confidential business or personal information" and "sensitive commercial information that is not publicly available." (*Id.* at PageID.1313-14).  Defendant explains that "[t]he disclosure of this information would hurt Quality Collision's business and cause it 'embarrassment' within the meaning of Rule 26(c), so it should be protected."  (*Id.* at PageID.1314).

According to Defendant, such harm would be particularly unjust because Counter-Defendants have already caused customers and vendors to turn away from Defendant.  (*Id.* at PageID.1314).  Publishing the Wyse Email would allegedly compound harms to Defendant's business and reputation because (1) Defendant has a pending federal tort claim against the Government and that Mr. Wyse participated in the Government's conduct, so his statements are biased; (2) My Wyse is biased as the U.S. Attorney in Defendant's criminal case; and (3) Mr. Wyse bases his "unproven allegations" on hearsay evidence.  (*Id.* at PageID.1314-15).

---

[2] Pursuant to the protective order, an "Attorneys Eyes Only" designation is only permitted upon a "good faith determination that the documents contain information protected from disclosure by statute or rule or information that should be protected from disclosure as trade secrets or other highly sensitive business or personal information" which would likely "cause significant harm to an individual or to the business or competitive position of the designating party" if disclosed.  (ECF No. 37, PageID.651, ¶ 4).

In reply, Counter-Defendants contend that Defendant's concern for harm to its reputation is not enough to satisfy Defendant's burden as the actual proponent of filing the documents under seal.  (ECF No. 61, PageID.1338-39).

Though the Court agrees with Counter-Defendants, the strange posture of the motion to seal means that it is **DENIED**.  The Sixth Circuit has long recognized a "strong presumption in favor of openness" in court records.  *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)).  The "heavy" burden of overcoming that presumption rests with the party seeking to seal the records.  *Shane Grp., Inc. v, Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016).  The proponent for sealing must show that it will suffer a "clearly defined and serious injury" if the judicial records are not sealed.  *Id.* at 307.  This burden must be met even if no party objects to the seal, and it requires a "document-by-document, line-by-line" demonstration that the information in the document meets the "demanding" requirements for the seal. *Id.* at 308.

The Sixth Circuit reaffirmed this mandate just this year in *Grae v. Corrs. Corp. of Am.*, 134 F.4th 927 (6th Cir. 2025).  The *Grae* Court reminded district courts that "[o]nly the most compelling reasons can justify non-disclosure of court records."  *Id.* at 930 (citation omitted).  "[E]ven when 'a party can show a

9

compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason.'"  *Id.* (internal quotation omitted).  *See also Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019) (citing *Shane Grp.*, 825 F.3d at 305) ("[T]he [proponent] must show three things: (1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored.").

To begin, Defendant—as the proponent of filing under seal—did not perform the sort of "document-by-document, line-by-line" review that is required. Rather, Defendant focused only on one paragraph from the Wyse Email; it did not address the rest of the email, Plaintiff's motion for sanctions, or the other document that contains an excerpt of Mr. Wyse's email.  (ECF No. 59, PageID.1313).  But this may simply result from Counter-Defendants' emphasis on that one specific paragraph in their own briefing.

Defendant also argued that the paragraph at issue contains "confidential business or personal information" and "sensitive commercial information that is not publicly available," so publishing the Wyse Email would harm Defendant's business and cause embarrassment.  But the part of the email Defendant focuses on relates to the Government's criminal investigation into Defendant—specifically the investigation's origins; it does not refer to identifiable business, personal, or

10

commercial information of any kind.  That the Government began to investigate

Defendant is known to the public—the Government even unsealed the affidavits

submitted in support of its search warrant application.  (ECF No. 62, PageID.1342;

ECF No. 65, PageID.1413).  A routine Google search about the Government's

investigation also produces a number of articles that even detail the foundations of

the Government's investigation based on the unsealed search warrants.  *See, e.g.*,

Robert Snell, *Spies, Lies, Chevy Bowties: Undercover Auto Officials at Center of*

*Counterfeit Parts Probe*, Detroit News (Feb. 22, 2024), https://perma.cc/F48A-

3LZT (last visited June 13, 2025).  As the public is aware of the Government's

investigation into Defendant and Defendant has supposedly already suffered some

harm as a result of that investigation, it follows that there is not a compelling

interest to seal information that covers the same ground.  *See Witucki v. Couture*,

No. 01-10276, 2002 WL 31748841, at *2 (E.D. Mich. Oct. 8, 2002) (finding the

risk of embarrassment insufficient since the records the parties sought to seal

contained information that was already publicly available so "any potential harm of

public disclosure could have already occurred").

    And Plaintiff is correct that harms to one's business or reputation are not

compelling interests that warrant filing under seal.  *See Rudd Equip. Co.*, 834 F.3d

at 591 ("Simply showing that the information would harm the company's

reputation does not outweigh the public's interest in access to court records");

*Kiwewa v. Postmaster Gen. of U.S.*, No. 18-3807, 2019 WL 4122013, at *2 (6th Cir. Mar. 26, 2019) ("Harm to reputation is insufficient to overcome the strong presumption in favor of public access . . . ."); *Proctor & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 255 (6th Cir. 1996) ("The private litigants' interest in protecting their vanity or their commercial self-interest simply does not qualify as grounds for imposing a prior restraint.  It is not even grounds for keeping information under seal . . . .").  And Defendant has not cited case law that would suggest the sort of alleged business and reputational harms implicated here require the documents to be sealed.  So even assuming that Mr. Wyse is biased and his email relied on hearsay statements, the supposed harm that would result from publication is not itself sufficient to overcome the "strong presumption in favor of openness" in court records.  *Rudd Equip. Co.*, 834 F.3d at 593.

As Defendant did not satisfy its burden and show that filing the documents in question under seal is warranted, the motion to seal is **DENIED**.

2.   Motion Challenging Confidentiality Designation (ECF No. 62)

On April 7, 2025, Counter-Defendants moved to remove the confidentiality designation on the Wyse Email.  (ECF No. 62).  Essentially, Counter-Defendants want to remove any limitations on those who may view the Wyse Email.  Since the Court has denied the motion to seal, the Wyse Email is now publicly available on the Court's docket.  So the relief movants seek has already been provided.  The

motion to remove the confidentiality designation is therefore **DENIED AS MOOT**.

    3.    <u>Motion for Sanctions (ECF No. 52, 54)</u>[3]

    a.    <u>Parties' Positions</u>

Counter-Defendants moved to sanction Defendant and its counsel pursuant to 28 U.S.C. § 1927 and this Court's inherent authority.[4]  (ECF No. 54, PageID.1255).  Counter-Defendants request both an award of the fees and costs it incurred in defending against Defendant's Counterclaims *and* judgment against Defendant on the Counterclaims.  (*Id.*).

The motion is based on the now unsealed email from Timothy Wyse, an AUSA for the Eastern District of Michigan, to Defendant's counsel in the criminal investigation against Defendant.  (ECF No. 54, PageID.1254; ECF No. 55, PageID.1281-82; ECF No. 65, PageID.1405).  Counsel here, Mr. Gerald E. McGlynn III of Howard & Howard, was copied on the email.  (ECF No. 55,

---

[3] The District Judge referred all pretrial proceedings except dispositive motions to the undersigned.  (ECF No. 43).  In that Order, the Court referred to the definition of "dispositive motions" under E.D. Mich. LR 7.1(e)(1).  (*Id.*).  But that Local Rule refers only to the standard briefing schedule.  The Order likely meant to refer to E.D. Mich. LR 7.1(e)(2) which refers to the briefing schedule for motions that are dispositive, such as motions for injunctive relief, summary judgment, or to dismiss under Federal Rule of Civil Procedure 12(b).  A motion for sanctions is not included in this list.  The undersigned therefore has the authority under the referral order to address the motion for sanctions even though Counter-Defendants seek, in part, dispositive relief.

[4] Since the Court has denied the motion to seal Counter-Defendants' motion for sanctions, the Court cites the unredacted, now-unsealed version of the motion.  (ECF No. 54).

PageID.1281-82; ECF No. 65, PageID.1405).  In pertinent part, Mr. Wyse

conveyed the following:

> Perhaps most importantly, I need you—and your client—to
> understand that GM did not initiate this investigation.  As I've
> explained to every counsel to represent your client, the investigation
> stemmed from repeated import violations identified by CBP.  It was
> referred to our office by HIS, opened by a predecessor of mine, and
> then overseen by me (later joined by CCIPS).  GM—as did other
> OEMs—provided information upon the government's request and
> helped identify infringing parts.  But neither GM nor any other OEM
> made any relevant decisions concerning the course of the
> investigation.

(ECF No. 54, PageID.1258; ECF No. 55, PageID.1282).  Mr. Wyse sent this email

on February 7, 2024—six days after Defendant filed its Counterclaims on February

1.  (ECF No. 19; ECF No. 52, PageID.1177; ECF No. 54, PageID.1257; ECF No.

55, PageID.1281-82).

Though Counter-Defendants focus on the causation element of Defendant's

Counterclaim for tortious interference, they contend that the Wyse Email is fatal to

both Counterclaims.  (ECF No. 54, PageID.1254, PageID.1256).  Counter-

Defendants' position is that they must have been the but-for cause of the

Government's search at Defendant's facilities for Defendant to prevail on its claim

for tortious interference.  (*Id.*).  Since the Wyse Email obliterates any notion that

Counter-Defendants were the but-for cause of the Government's entire

investigation, Counter-Defendants reason, the Counterclaim for tortious

interference is meritless.  (*Id.*).  And because Mr. Wyse sent his email on February

14

7, 2024, they assert that Defendant and defense counsel knew that this Counterclaim was meritless on February 7 at the latest.  (ECF No. 54, PageID.1258).  Considering that Mr. Wyse conveyed that he had stated that GM did not initiate the criminal investigation to Defendant's other attorneys, Counter-Defendants argue that perhaps Defendant and its lawyers knew of such information at an even earlier date.  (*Id.*).

Since Defendant and defense counsel were purportedly aware that the tortious interference Counterclaim was meritless, Counter-Defendants take issue with their continued prosecution of it.  For instance, Counter-Defendants posit that Defendant and defense counsel knowingly made false statements to the Court in the arguments opposing Counter-Defendants' motion to dismiss the Counterclaims.  (ECF No. 54, PageID.1258-60).  To make matters worse, Counter-Defendants assert that Defendant and defense counsel willfully withheld the Wyse Email despite discovery requests targeting such communications.  (ECF No. 54, pageID.1261-63).  Indeed, Plaintiff only obtained the Wyse Email via third-party discovery.  (ECF No. 54, PageID.1261 (referencing the subpoena served on Defendant's lawyers in the ongoing criminal investigation)).  Counter-Defendants maintain that Defendant's "aggressive" pursuit of "its knowingly baseless counterclaims" has resulted in significant costs in the effort to defend themselves against the Counterclaims.  (ECF No. 54, PageID.1263-64).

While Defendant opposes the motion for several reasons, the Court focuses on the most salient arguments. First, Defendant argues that it produced the Wyse Email twice during discovery because the third-party sources were Defendant's own law firms in other civil and criminal cases involving Counter-Defendants. (ECF No. 65, PageID.1404-05). And though Mr. McGlynn was copied on the email, he was "stepping back" from this civil case. (ECF No. 65, PageID.1405). To that end, Defendant proclaims that none of its personnel or anyone at Howard & Howard were "involved in or aware of" the Wyse Email. (*Id.*). Second, Defendant conveys that neither it nor defense counsel had motive to hide the email because its "overall thrust" supports Defendant's Counterclaims. (ECF No. 65, PageID.1412).

Defendant also states that Counter-Defendants mischaracterize the Counterclaims and ignore allegations that Counter-Defendants were involved in a wrongful seizure and directed the seizure and destruction of Defendant's property. (ECF No. 65, PageID.1408-10). Defendant also argues that the Wyse Email does not refute other evidence that supports the Counterclaims. (ECF No. 65, PageID.1408-11). Here, Defendant refers to (1) a redacted email showing that the Counter-Defendants offered to assist the Government in the investigation that revealed Defendant's involvement in alleged counterfeiting, (ECF No. 65, PageID.1409; ECF No. 66, PageID.1439; ECF No. 72, PageID.1492); and (2) the

16

unsealed affidavits supporting the Government's search warrant application

revealing that Counter-Defendants' allegations significantly exceeded the number

of those from Ford and Dodge.  (ECF No. 65, PageID.1413).  And Defendant says,

the Wyse Email is not dispositive on key issues pertaining to Plaintiff's

infringement claims or Defendant's Counterclaims.  (ECF No. 65, PageID.1410-

11).  Since the Wyse Email does not render the Counterclaims meritless,

Defendant concludes that defense counsel did not make any false statements in

prosecuting its Counterclaims.[5]  (ECF No. 65, PageID.1411-14).

      2.    <u>Discussion</u>

To narrow the scope of Counter-Defendants' motion, it is worth mentioning

that their arguments affect only one of Defendant's two Counterclaims.  The crux

of Counter-Defendants' argument is that the Wyse Email completely refutes the

possibility that Counter-Defendants were the but-for cause of the Government's

search.  While causation is an element of Defendant's Counterclaim for tortious

interference, it is not an element of the abuse of process Counterclaim.  (ECF No.

32, PageID.603, PageID.607).  Counter-Defendants even refer to the issue of but-

for causation as a "necessary predicate" for "tortious interference" but do not

---

[5] Defendant concludes its brief in opposition with a suggestion that "GM should be sanctioned in the amount of Quality Collision's attorney's fees for responding to this motion." (ECF No. 65, PageID.1416).  Local Rules do not permit a motion to be combined with a response brief.  E.D. Mich. LR 7.1(i).  To the extent that Defendant moves for sanctions against Counter-Defendants here, that motion is denied.

elaborate on how that issue relates to the abuse of process issue.  (ECF No. 52, PageID.1176; ECF No. 54, PageID.1256).  To the extent that they can obtain any sanctions, those sanctions would only derive from conduct related to Defendant's Counterclaim for tortious interference—not the alleged abuse of process.

Turn now to the legal bases under which Counter-Defendants move for sanctions: 28 U.S.C. § 1927 and this Court's inherent authority.

### *28 U.S.C. § 1927*

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  The text of the statute therefore makes clear that Counter-Defendants can only receive an award of costs and fees here—the Court cannot dismiss the Counterclaims under § 1927.  "The purpose of sanctions under § 1927 is 'to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy.'"  *Followell v. Mills*, 317 F. App'x 501, 512 (6th Cir. 2009) (quoting *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006)).  The Court may impose sanctions under § 1927 "when a lawyer objectively falls short of the obligations owed by a member of the bar to the court."  *Carter v. Hickory Healthcare, Inc.*, 905 F.3d 963, 968 (6th Cir. 2018) (internal quotations omitted).  To warrant sanctions here, counsel must have

acted with "something more than negligence or incompetence." *Red Carpet*, 465 F.3d at 646.  An attorney "unreasonably and vexatiously" multiplies proceedings when he or she "knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of non-frivolous claims." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986).  *See also Elfelt v. United States*, 149 F. App'x 402, 410 (6th Cir. 2002); *Parrott v. Corley*, 266 F. App'x 412, 414 (6th Cir. 2008).

Counter-Defendants contend that Defendant "unreasonably and vexatiously" multiplied proceedings when, in light of the Wyse Email, (1) Defendant continued to prosecute its Counterclaim for tortious interference when it knew it was frivolous and baseless; (2) Defendant made false statements to the Court in opposing Counter-Defendants' motion to dismiss; and (3) Defendant knowingly withheld the Wyse Email during discovery.  (ECF No. 54, PageID.1266).  Counter-Defendants also argue that if these grounds do not amount to sanctionable conduct independently of one another, then the combination of the three certainly does. (*Id.*).  The Court is not persuaded that sanctions are warranted on any of these grounds.

The Wyse Email does not render the tortious interference Counterclaim meritless.  Consider Defendant's allegations.  Defendant alleged that Counter-Defendants provided false or misleading factual allegations to the Government

19

which resulted in the raids and searches that damaged Defendant's property and products.  (ECF No. 19, PageID.363-67, ¶¶ 11-16, 20, 22-23).  More specifically, Defendant alleged that "GM caused interference by preparing and submitting allegations that caused the United States Department of Homeland Security to raid Quality Collision's facilities."  (*Id.* at PageID.369, ¶ 33).  So to prove tortious interference, Defendant has to show that the interference resulted from false or misleading allegations provided to the Government which, in turn, allowed the Government to raid Defendant's facilities.  Defendant need not show that Counter-Defendants were the sole cause of the Government's entire investigation.

The Wyse Email says that Counter-Defendants did not initiate the Government's investigation.  It does not, however, say that the Government could have obtained its search warrant without Counter-Defendants' assistance.  Since the Wyse Email does not allude to the Government's ability to raid Defendant's facilities without assistance from Counter-Defendants, the Wyse Email does not preclude Defendant's ability to establish causation.  Thus, Defendant's theory of liability on the tortious interference Counterclaim was not "frivolous or baseless," so neither was Defendant's pursuit of that claim "frivolous or baseless."

Neither did Defendant and defense counsel make false statements in opposing Counter-Defendants' motion to dismiss.  Counter-Defendants hang this

argument on some "of the most egregious statements" from Defendant and defense

counsel, such as

> "***GM conducted a years-long campaign*** against Quality
> Collision . . . ."  (ECF No. 26, PageID.432).

> "***GM was a party*** to the government action and ***instrumental in
> bringing about the search and seizure of Quality Collision's
> facilities*** . . . ."  (*Id.* at PageID.449).

> "GM . . . ***did a lot more than cooperate.  They drove the
> investigation.  The government wouldn't have done this without the
> urging of brand owners like GM.***"  (ECF No. 31, 15:3-6).

> "***GM sought the warrant***, they got the warrant, they had the seizure."
> (*Id.* at 20:1-2).

(ECF No. 54, PageID.1272).  Yet nothing in the Wyse Email refers to any sort of

"years-long campaign," so it cannot make that statement false.  The identified

statements refer to Counter-Defendants as "instrumental" to getting the search

warrant and the driving force of the investigation.  But that is precisely what

Defendant alleged.  Defendant claimed that Counter-Defendants supplied false or

misleading allegations that ultimately caused the raid.  If the raid could not have

happened without Counter-Defendants' allegations, then it follows that Counter-

Defendants were instrumental to and an impetus behind the effort to obtain a

search warrant.  So these statements are not falsehoods and are consistent with

Defendant's theory of their case.  And if Counter-Defendants sometimes take

unlawful actions to stifle aftermarket competition, as Defendant alleged, (ECF No.

19, PageID.363, ¶ 10), then it makes sense that Counter-Defendants supported—or "sought"—the Government's search warrant application.  Accordingly, the Court will not award sanctions under § 1927 on this basis.

The Court also does not agree that § 1927 sanctions are warranted because Defendant "knowingly" withheld the Wyse Email during discovery.  Defendant argues that even though Mr. McGlynn was copied on the email, no one at Quality Collision or Howard & Howard were aware of the email.  Counter-Defendants also point out that "there is no evidence of Mr. McGlynn's knowledge of the email." (ECF No. 72, PageID.1490).  If there is no evidence that Mr. McGlynn knew of the Wyse Email, then there is no basis to conclude that Defendant or defense counsel "knowingly" concealed the Wyse Email.[6]  Yes, the Wyse Email was in Mr. McGlynn's inbox.  And if the Wyse Email was discoverable, then it should have been produced in response to an appropriate discovery request (absent a viable objection).  But without evidence related to Mr. McGlynn's awareness of the Wyse Email, the failure to produce the Wyse Email amounts to negligence at best or incompetence at worse.  Section 1927, however, does not permit sanctions for negligent or incompetent conduct.  *See Red Carpet*, 465 F.3d at 646.

---

[6] The Court is not convinced that the lack of a denial from Mr. McGlynn of his awareness or recognition of the Wyse Email means that he willfully concealed it.  (ECF No. 72, PageID.1489-90).

Since none of the individual conduct warrants sanctions under 28 U.S.C. § 1927, neither does the combination thereof amount to sanctionable conduct.  In all, the Wyse Email did not render the tortious interference Counterclaim baseless or make Defendant and defense counsel's statements in opposition to Counter-Defendants' motion to dismiss false.  And since there is no evidence of Mr. McGlynn's or Defendant's awareness of the Wyse Email, any such withholding stemmed from negligence or incompetence—such conduct is not sanctionable under § 1927.

### *Inherent Authority*

"A district court has the inherent power to sanction a party when that party exhibits bad faith." *Bradley J. Delp Revocable Tr. v. MSJMR 2008 Irrevocable Tr.*, 665 F. App'x 514, 520 (6th Cir. 2016) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-50 (1991)).  Inherent authority sanctions "derive[ ] from [a district court's] power to impose respect in its presence, control the litigants before it, and guarantee the integrity of the courts." *Id.*  "Due to 'their very potency, inherent powers must be exercised with restraint and discretion.'" *Id.* (quoting *Chambers*, 501 U.S. at 44-45).

The Court may award attorneys' fees and costs under its inherent powers "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" or "when the conduct is tantamount to bad faith." *Metz v. Unizan Bank*,

655 F.3d 485, 488 (6th Cir. 2011) (internal quotations and citations omitted).  Bad-faith conduct, in turn, refers to conduct that is intentional or reckless—negligence is not enough.  *Webasto Thermo & Comfort N. Am., Inc. v. Bestop, Inc.*, 323 F. Supp. 3d 935, 939 (E.D. Mich. 2018).  An award of fees and costs "requires the district court to find '[1] that the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment.'"  *Id.* (quoting *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 751 (6th Cir. 2010)).  *See also Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997).  A meritless claim in-and-of-itself, however, is not enough—rather, something more is required.  *See BDT Prods., Inc.*, 602 F.3d at 753.  "Something more" includes prosecuting a meritless claim "for purposes of harassment or delay," *Big Yank Corp.*, 125 F.3d at 314, filing "a meritless lawsuit and [withholding] material evidence in support of a claim," *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 523 n.18 (6th Cir. 2002), or "delaying or disrupting the litigation," *Chambers*, 501 U.S. at 46.

For Counter-Defendants to receive an award of fees and costs under this Court's inherent authority, Defendant must have advanced a meritless claim. Counter-Defendants assert that the Wyse Email vitiates Defendant's ability to prove the causation element of its tortious interference Counterclaim.  As

explained above, the Wyse Email does not forestall Defendant's ability to prove that Counter-Defendants' false or misleading allegations resulted in the Government's raid that damaged Defendant's property and products.  Without a meritless claim, Plaintiff cannot receive an award of fees and costs as a sanction under the Court's inherent authority.

Claims or an entire lawsuit can be dismissed as an inherent authority sanction as well.  *See Link v. Wabassh R.R. Co.*, 370 U.S. 626 (1962).  Whether dismissal is warranted depends on the following four-factored test:

> (1) whether the party's [conduct] [was] due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Flarmacy Recs. v. Nassar*, 379 F. App'x 522, 523-24 (6th Cir. 2010) (alterations in original) (citing *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)). Though no one factor is outcome determinative, dismissal is proper where there is a clear record of delay or contumacious conduct.  *See Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999).  Additionally, a judicial warning that dismissal may be warranted, e.g., the third factor, is a "key consideration."  *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008).  The Sixth Circuit "has repeatedly reversed" a district court's dismissal of claims as an inherent authority

sanction "when the district court[ ] did not put the derelict parties on notice that further noncompliance would result in dismissal." *Wu*, 420 F.3d at 644.

Counter-Defendants argue that Defendant's supposed bad-faith conduct warrants dismissal. The Court does not agree. Counter-Defendants posit that Defendant prosecuted a meritless claim to impose undue costs, harass, and exact retribution. But as discussed, the Wyse Email did not undermine the viability of the tortious interference Counterclaim. The Court therefore does not view Defendant's prosecution of that Counterclaim as illegitimate. Plaintiff also argues that Defendant and defense counsel's "active[ ] conceal[ment]" of the Wyse Email and knowingly false statements to the Court also evince "egregious, bad faith misconduct." (ECF No. 54, PageID.1276). Again, the Court does not agree that Defendant and defense counsel made false statements when opposing Counter-Defendants' motion to dismiss; instead, they made representations that aligned with their theory of the case. And considering the lack of evidence related to Mr. McGlynn's awareness of the Wyse Email (which Counter-Defendants recognize), the Court finds that any "concealment" resulted from negligence at most. Negligent conduct does not constitute bad-faith conduct. Counter-Defendants therefore cannot satisfy the first factor for dismissal of Defendant's Counterclaims.

As for the second factor, the Court does not doubt that Counter-Defendants have incurred costs associated with defending against the Counterclaims, but those

costs relate to Defendant's prosecution of a plausible claim.  Thus, the Court does not agree that Counter-Defendants have been prejudiced.  Nor is there any judicial warning that dismissal may be warranted in the record.  Counter-Defendants say that this factor is neutral at best.  (ECF No. 54, PageID.1276-77).  For this proposition, they cite *Flarmacy Recs.*, 379 App'x at 527.  (*Id.*).  There the Sixth Circuit found formal notice to be unnecessary because such warning was not needed "to know that spoliation of evidence and misrepresentations may lead to dismissal." *Flarmacy Recs.*, 379 F. App'x at 527.  But here, there was no spoliation of evidence, and the Court does not find that Defendant and defense counsel have made misrepresentations to the Court.  So the third factor favors Defendant.  As for the fourth factor, Counter-Defendants have asked for the lesser sanction of costs and fees for defending against the Counterclaims—but Counter-Defendants have not satisfied the respective tests for those lesser sanctions.

At bottom, each of the four factors point to decision in Defendant's favor. Thus, the Court will not dismiss the tortious interference Counterclaim as an inherent authority sanction.

Since Counter-Defendants have not satisfied the respective tests for sanctions under 28 U.S.C. § 1927 or the Court's inherent authority, their motion for sanctions, (ECF Nos. 52, 54), is **DENIED**.

      4.     <u>Motion for Protective Order to Stay Discovery Concerning Quality Collision's Counterclaims (ECF No. 57)</u>

Along with their motion for sanctions, Counter-Defendants filed a motion for a protective order.  (ECF No. 57).  They ask that the Court stay their discovery obligations related to Defendant's Counterclaims.  (*Id.* at PageID.1289).  Counter-Defendants argue first that any effort expended on discovery relative to the Counterclaims would be unnecessary after the Court grants their motion for sanctions.  (*Id.* at PageID.1296).  They also contend that any discovery into the Counterclaims is for an improper purpose since Defendant knows its Counterclaims are baseless.  (*Id.*).  In short, Counter-Defendants ask the Court to stay discovery for the same reasons set forth in their motion for sanctions.  Since the Court has now denied Counter-Defendants' motion for sanctions and disagrees with the notion that Defendant's prosecution of its Counterclaims has been improper, the motion to stay discovery is **DENIED AS MOOT**.

B.    Counter-Defendants' Motion to Compel (ECF No. 42)

On October 8, 2024, Counter-Defendants served their first set of Requests for Production (RFPs) and Interrogatories on Defendant.  (ECF No. 42, PageID.689).  Defendant served its responses on November 14, 2024.  (ECF No. 42-1, PageID.794, PageID.812).  Finding Defendant's responses to be inadequate and incomplete, Counter-Defendants filed a motion to compel on February 4, 2025.  (ECF No. 42).

1.    Governing Standards

28

Parties may obtain discovery related to any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26. Information within this scope of discovery need not be admissible in evidence to be discoverable.  *Id.*  "Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive."  *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).  A party seeking discovery may move for an order compelling an answer, designation, production, or inspection.  Fed. R. Civ. P. 37.

   2.   Discussion

      a.   Documents Related to the Accused Products By a Date Certain
           (RFP Nos. 2, 8-11, 13-27)

Counter-Defendants requested "standard documents exchanged in every patent case, including, for example, documents concerning the use, operation, manufacture, purchase, sales, and marketing of the Accused Products."  (ECF No.

42, PageID.690).  Counter-Defendants state that Defendants have provided a single spreadsheet and "thousands of pages of invoices" regarding products other than the Accused Products.  (*Id.* at PageID.691; ECF No. 46, PageID.971).  They complain that these documents are incomplete and unresponsive to the discovery requests. (ECF No. 42, PageID.691-92).  They also assert that this incomplete production and Defendant's inability to commit to full production by a certain date violates the thirty-day deadline for responding to requests for production.  (*Id.* at PageID.692). Though they do not challenge any of Defendant's objections, Counter-Defendants request an order compelling Defendant to provide the supplemental material Defendant committed to produce.

Take Defendant's responses in turn.  First, Defendant contends that Counter-Defendants' motion is premature since it committed to produce additional responsive documents.  (ECF No. 44, PageID.823).  For all of the discovery requests at issue here—except RFP No. 24, to which Defendant stated it did not have responsive materials—Defendant initially responded that it would "produce any relevant, non-privileged documents in its possession."  (*See, e.g.*, ECF No. 42-1, PageID.749-93).

The Court does not find this argument persuasive.  Defendant cites *Dobronski v. Selectquote Ins. Services*, No. 2:23-cv-12598, 2024 WL 3390612, at *2 (E.D. Mich. Feb. 13, 2024), for the proposition that a motion to compel is

improper when the responding party "has agreed to produce requested documents or information."  (ECF No. 44, PageID.823).  But there the Court found the motion to compel to be premature because the responding party had actually supplemented its discovery responses—not just committed to doing so.  *Dobronski*, 2024 WL 3390612, at *2.  Here, Defendant has not supplemented its responses and only committed to doing so without specifying a date outside the close of discovery.  So *Dobronski* is inapt.

Under Rule 34(b)(2)(A), Defendant had thirty-days to respond to Counter-Defendants' RFPs.  If more time was required, Defendant should have either sought a stipulation or court order affording it additional time to respond, *see* Fed. R. Civ. P. 34(b)(2)(A); at the very least, Defendant should have "propose[d] another reasonable time for production in the response to the request."  Charles Alan Wright & Arthur R. Miller, 8B Federal Practice & Procedure § 2213 (3d ed. Apr. 2025 Update).  Though Defendant indicated that the parties "have been engaged in a rolling production of responsive documents," apparently no supplemental documents had been provided on the discovery at issue by the time Defendant filed its response brief in February 2025—three months after Defendant's initial discovery responses.  (ECF No. 44, PageID.821).  Rather, Defendant insists that more documents are forthcoming.  But the only timeline

31

implicated in Defendant's briefing for supplemental production is at some point before the close of discovery.  (*Id.*).

If the thirty-day deadline for responses to discovery requests under Rule 34 is to have any meaning, then Defendant cannot promise to produce responsive documents but punt on that promise until some undisclosed point prior to the close of discovery.  Though Defendant has an ongoing obligation to supplement discovery under Rule 26(e), that obligation must be honored "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A).  This requirement for *prompt* supplemental production is "'effectively frustrated' when a party makes supplemental disclosures on a timeline that causes the [other] party to be 'denied the opportunity to conduct discovery on supplemental responses.'"  *Jones v. Prudential Sec., Inc.*, No. 18-11960, 2021 WL 1108579, at *4 (E.D. Mich. 23, 2021) (quoting *Thomas v. McDowell*, No. 2:10-cv-152, 2014 WL 5305501, at *1 (S.D. Ohio Oct. 15, 2014)). As Defendant has not committed to a date certain for supplemental production, it has "effectively frustrated" Counter-Defendants ability to conduct follow-up discovery on that supplemental material.  (ECF No. 42, PageID.692).  Defendant must therefore serve its supplemental production **within twenty-one days of this Order**.

Defendant's second argument is that it does not have documents responsive to RFP No. 2—that is, it asserts it does not have documents on the "use and

operation" of the Accused Products.  (ECF No. 44, PageID.823).  Since Defendant sells its products "almost exclusively to collision shops," Defendant does not have installation manuals as the collision shops already know how to do so.  Though this makes a degree of sense, this argument is not bulletproof.  For starters, Defendant stated it would produce relevant, non-privileged documents in response to RFP No. 2—Defendant cannot now renege and say it doesn't have responsive documents.  If that was the case, then Defendant should have said so with its initial responses. Moreover, Counter-Defendants did not limit RFP No. 2 to installation manuals.  It also sought communications on the "use and operation" of the Accused Products. The Court understands this to mean something akin to an email from a customer reaching out to Defendant with questions about the Accused Product after experiencing issues with installation.  Defendant has not offered any argument on the "communications" requested in RFP No. 2.  Thus, Defendant should supplement its responses to include relevant, non-privileged communications in its possession that are responsive to RFP No. 2 and subject to Defendant's unchallenged objections.

Defendant's third argument is that it does not have documents related to its financials regarding the Accused Products or documents comparing the Accused Parts to Counter-Defendants' products because such documents do not exist (without specifying the respective RFPs).  Outside of RFP No. 24 where Defendant

initially responded that it did not have responsive documents, the Court finds this argument dubious.  Again, Defendant stated it would produce relevant, non-privileged documents, not that they did not exist.  Consider RFP No. 20 which targeted "documents concerning profit and loss related to the Accused Products, including at least balance sheets, income statements, cash flows, and P&L statements." (ECF No 42-1, PageID.761).  Defendant objected in part to Counter-Defendants' assumption that Defendant maintained such documents—notably, Defendant did not say such documents did not exist and committed to supplemental production.  (*Id.* at PageID.761-62).  Moreover, it beggars belief that a company presumably aiming to make a profit does not have such basic accounting tools.  Perhaps Defendant simply has never sold any of the Accused Products and that is why responsive material is non-existent.  If that's the case, then Defendant can specify that in its supplemental production.

The Court also finds it hard to believe that Defendant does not have documents or communications comparing the Accused Products to Counter-Defendants' products.  Defendant's own website invites customers to get an estimate on GM parts from a dealership or collision shop and contact Defendant to get a lower price.  (ECF No. 1-22, PageID.130).  Such a communication would fall within RFP No. 23's request for communications comparing "the price of the Accused Products to the price of GM products."  (ECF No. 42-1, PageID.763).  In

the event that Defendant truly does not have such documents or communications, then it can say so in a supplemental response after searching for such materials.

Defendant has committed to producing relevant, non-privileged documents in its possession to RFP Nos. 2, 8-11, 13-23, and 25-27 (subject to uncontested objections).  Counter-Defendants' motion is therefore **GRANTED IN PART AND DENIED IN PART**.  To the extent that Defendant has not already done so, Defendant is **ORDERED** to produce the promised supplemental discovery to the RFP Nos. 2, 8-11, 13-23, and 25-27 **within twenty-one days of this Order**.  Since Defendant has always maintained that it does not have documents responsive to RFP No. 24, the Court will not order Defendant to produce documents it does not have.  *See Weidman v. Ford Motor Co.*, No. 19-12719, 2021 WL 2349400, at *4 (E.D. Mich. June 9, 2021) ("[A]bsent credible evidence, the responding party's representation that there are no additional documents is sufficient to defeat a motion to compel.") (internal quotations and citation omitted).

> b. <u>Documents Related to GM and its Intellectual Property By a Date Certain (RFP Nos. 29-31, 33-37)</u>

Counter-Defendants moved to compel documents and communications regarding Counter-Defendants and their intellectual property, including references to Counter-Defendants' patents, trademarks, and Defendant's knowledge thereof. (ECF No. 42, PageID.692-93).  They argue that these materials are relevant to their claims of willful design patent infringement as well as Defendant's Counterclaims.

(*Id.*).  Counter-Defendants state that Defendant has only produced files from the Government's criminal investigation and not any responsive documents.  Subject to its uncontested objections, Defendant committed to produce relevant, non-privileged documents in its possession that are responsive to the RFPs at issue.  (ECF No. 42-1, PageID.768-74).  Counter-Defendants urge the Court to compel Defendant to produce the promised supplemental production.

In response, Defendant offers the same uncompelling argument that the supplemental documents would be forthcoming.  In this instance, Defendant suggested that the documents would be produced at some time before late-March.  (ECF No. 44, PageID.824).  But the Court is unaware whether Defendant actually did so.  And without any commitment to produce the documents by a date certain, Defendant did not adhere its obligation for prompt supplemental production.

Defendant's other argument is just as unavailing.  It argues that discovery into documents and communications regarding Plaintiff's willful infringement claims is of minor relevance because willful infringement is hard to prove.  (ECF No. 44, PageID.824-25).  Rule 26 does not exclude documents from discovery because they are only of minor relevance.  If the documents and communications are relevant—minor or not—to the issue of willfulness, then such materials fall within the scope of discovery on Plaintiff's willful infringement claims.

Counter-Defendants' motion to compel Defendant's promised supplemental production is **GRANTED**.  To the extent that it has not done so, Defendant is **ORDERED** to produce the documents, subject to the uncontested objections, **within twenty-one days of this Order**.

> ### c.  Documents Related to the U.S. Government's Investigation by a Date Certain (RFP Nos. 38, 42-50)

Counter-Defendants' motion to compel also seeks a court order requiring supplemental production to RFP Nos. 38 and 42-50.  This includes communications between Defendant's employees about the investigation or communications between Defendant (or its agents) and the Government about the investigation.  (ECF No. 42, PageID.694).  While Defendant produced the file of the Government's investigation (e.g., documents the Government seized during its raid (ECF No. 44, PageID.826)), it has not produced internal communications about the investigation or Defendant's communications with the Government. (ECF No. 42, PageID.694).  Though Defendant committed to producing supplemental documents (subject to uncontested objections), it did not commit to a date when it would do so.  (ECF No. 42, PageID.694; ECF No. 42-1, PageID.774, PageID.777-84).

In response Defendant states that Counter-Defendants "fail to appreciate that the government took all of Quality Collision's records concerning GM and GM's claims of patent infringement when the government executed to its GM-influenced

seizure." (ECF No. 44, PageID.826).  To that end, Defendant says, it has produced the relevant documents that the Government has returned to Defendant.  (*Id.*).

Once more, Defendant has committed to produce documents without any indication when that may happen.  For the reasons related to this issue stated above, Defendant must produce the promised supplemental documents to the extent that it has already not done so.  Moreover, Defendant's argument about why it has not produced the requested communications misses the mark.  As the Court understands it, Defendant contends that responsive documents—including communications about the investigation—were seized in the Government's investigation.  This makes little sense if any.  Defendant has not suggested that the communications do not exist or that they are all subject to some privilege. Defendant's supplemental responses should include the relevant, non-privileged communications that are in its possession and responsive to the RFPs at issue.

Counter-Defendants' motion to compel Defendant's promised supplemental production (subject to the uncontested objections) is **GRANTED**.  Defendant's supplemental production is due **within twenty-one days of this Order**.

> d.  <u>Physical Samples of the Accused Products (RFP No. 1)</u>

In their motion to compel, Counter-Defendants also sought physical samples of the Accused Products.  (ECF No. 42, PageID.695-96).  Defendant objected to this request because it actually targeted physical samples of "each Accused Product

Category" and that term was vague and broader than how Counter-Defendants had defined the term "Accused Product." (ECF No. 42-1, PageID.716-17 (regarding definitions used in the discovery requests); ECF No. 42-1, PageID.749 (regarding Defendant's objection)). But the parties seemingly resolved these objections through the meet-and-confer process as they "agree[d] that [Defendant] need only produce a single product for each patent to the extent that product is representative of the category." (ECF No. 42, PageID.695). According to Counter-Defendants, Defendant's only argument for not providing physical samples is that Counter-Defendants should have to bear the cost by purchasing the samples on the open market. (*Id.*). Counter-Defendants maintain that this would be unfair since they paid for and provided physical samples to Defendant. (*Id.* at PageID.695-96).

Defendant provides a lengthy response in its briefing. Notably, Defendant does not argue that its initial objections are valid—rather, it argues that Counter-Defendants "do[ ] not deserve access to these accused infringing parts because [they] failed to perform the required prefiling investigation." (ECF No. 44, PageID.826). Defendant later asserts that Counter-Defendants should already have the accused products if they conducted a proper pre-filing investigation under Rule 11. (*Id.* at PageID.826-27). Defendant posits that it should not be forced to bear the cost of providing physical samples or even developing its non-infringement and invalidity contentions until Plaintiff can make a plausible showing of patent

39

infringement.  (*Id.* at PageID.827-29 ("[Defendant] should not be put to this expense unless and until [Counter-Defendants] can demonstrate a plausible case for infringement for each patent and each accused product.")).  And Defendant argues that the motion should be denied because this case "brings further shame and embarrassment resulting from media coverage."  (*Id.* at PageID.829).

None of Defendant's arguments are compelling.  As an initial matter, Defendant does not argue that physical samples fall outside the scope of discovery or that its objections defeat Counter-Defendants' motion to compel.  In the same vein, Defendant did not object in its initial responses based on this Rule 11 argument, so that objection is waived here.  *See Wahlstrom v. Monk*, No. 15-14113, 2016 U.S. Dist. LEXIS 84892, at *2 (E.D. Mich. June 30, 2016) (quoting *Jagielo v. Van Dyke Pub. Schs.*, No. 09-11565, 2010 WL 259053, at *2 (E.D. Mich. Jan. 20, 2010)) ("Plaintiff has waived any claim of privilege as the result of her failure to timely assert a privilege-based objection to the Defendants' document request."); *Firneno v. Nationwide Mktg. Servs., Inc.*, No. 14-cv-10104, 2015 WL 13805453, at *3 (E.D. Mich. Dec. 10, 2015) (granting motion to compel production where objections were untimely).

Defendant also argues that because Counter-Defendants did not conduct an adequate pre-filing investigation, Plaintiff has not made a plausible showing of patent infringement.  If that is Defendant's position, the Court finds it odd that

Defendant did not move to dismiss the claims against it or file a motion under Rule 11. This argument is also problematic because, in essence, Defendant says it should not have to bear the cost of developing defenses to a meritless case. Not only does this fail to explain why physical samples are not discoverable, the issue at the heart of any Rule 37 motion to compel, but it attacks the merits of Plaintiff's infringement claims. Though such merits arguments may be assessed at a later date, they have no bearing on Counter-Defendants' motion to compel. *See Robert Bosch LLC v. Snap-On Inc.*, No. 12-11503, 2013 WL 673718, at *3 (E.D. Mich. Feb. 25, 2013) (quoting *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08cv144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009)) ("Infringement contentions are not intended to require a party to set forth a *prima facie* case of infringement and evidence in support thereof."). And though this case has brought shame and embarrassment on Defendant, there is no argument on why shame and embarrassment forces physical samples of the Accused Products outside the scope of discoverable evidence.

Counter-Defendants on the other hand have cited favorable case law from this Court. They cite *Everlight Electronics Co., Ltd. v. Nichia Corp.* where the Court pointed out that courts generally "recognize the essential nature of accused product samples in patent infringement cases." No. 12-cv-11758, 2013 WL 6713789, at *2 (E.D. Mich. Dec. 20, 2013). And just as in *Bosch*, the parties have

41

not contested the relevance of physical samples here—Defendant's Rule 11 argument implicates the relevancy of such samples since Counter-Defendants should apparently already have the samples. So neither party really contests the discoverability of physical samples. Accordingly, the physical samples should be produced in the manner agreed to during the parties' meet-and-confers. (ECF No. 42, PageID.695).

The remaining issue then is who should bear the cost of producing the samples. Counter-Defendants argue that Defendant should bear the cost since they offered Defendant the same courtesy when they produced their own physical samples. While this may be equitable, it is by no means legally required.

In *Everlight*, the Court ordered Everlight to produce 1,000 samples of the Accused Products—this was because the Court deemed Everlight's representations in opposition to the related motion to compel as "disingenuous due to Everlight's sloppy production of its samples and documents associated with its products." 2013 WL 6713789, at *2. Nor did Everlight explain why all 1,000 samples must be purchased. *Id.* The *Everlight* Court also relied in part on *P & G v. Be Well Mktg.*, No. 12-MC-392, 2013 WL 152801, at *4 (M.D. Pa. Jan. 15, 2013) (internal quotation omitted) which, in turn, referred to the general principle that the producing party is typically responsible for the costs of discovery unless doing so would be unduly burdensome. *See Everlight*, 2013 WL 6713789, at *2.

42

But other courts have shifted the burden of the cost of this production to the requesting party. *See Caliper Techs. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 558 (N.D. Cal. 2003) ("Normally, the producing party bears the cost of production but this situation is different from production of documents which have no value to anyone other than the parties."); *Invensas Corp. v. Renesas Electronics Corp.*, 287 F.R.D. 273, 287 (D. Del. 2012) (ordering producing party to provide the Court with the market price and cost to produce each physical sample requested to determine how to apportion the cost of production).

Neither party has really developed an argument on why the other should bear the cost of production here. Defendant has not argued that producing physical samples would be an undue burden (apart from its argument that litigating a meritless case is an undue burden), nor has Defendant explained why all the physical samples should be purchased on the open market. Counter-Defendants have not presented legal arguments in support of their position and have only gestured towards equitable treatment. The Court is not inclined to force Defendant to bear the cost of production based on the arguments made here. The Court could order the parties to meet-and-confer on a reasonable price for physical samples; but considering how contentious the litigation has been to this point, the Court suspects that a meet-and-confer would be unproductive and only produce additional motion practice. To that end, the Court finds that physical samples are discoverable and

43

should be produced, but Counter-Defendants must pay the market price for those samples.

In short, Counter-Defendants' motion to compel production of physical samples is **GRANTED IN PART AND DENIED IN PART**. Defendant is **ORDERED** to produce "one single product for each patent to the extent that product is representative of the category," (ECF No. 42, PageID.695), in response to RFP No.1. Defendant must produce the sample **within twenty-one days of this Order**. Upon doing so, Defendant must provide Counter-Defendants the market price for the physical samples. Counter-Defendants are **ORDERED** to reimburse Defendant the market price for the physical samples within **twenty-one days of receiving the samples**.

e.     Interrogatory Nos. 1-3

Counter-Defendants also moved to compel Defendant's response to their first three interrogatories. (ECF No. 42, PageID.696). In doing so, however, Counter-Defendants have not argued that Defendant's objections to those interrogatories are improper. Defendant states in response that it served supplemental responses to Counter-Defendants' interrogatories before they filed this motion to compel, so the motion should be denied. (ECF No. 44, PageID.830). Counter-Defendants maintain in their reply brief that the supplemental response was still deficient. (ECF No. 46, PageID.975).

Counter-Defendants argue that Defendant's updated spreadsheet is missing cost, profit, and revenue information for part number FZ1109. (ECF No. 46, PageID.975). Plaintiff identified part number FZ1109 as an infringing product in the complaint. (*Id.*; ECF No. 1, PageID.16, ¶¶ 75-76). If Defendant provided cost, profit, and revenue information for the other part numbers identified in the complaint, then Defendant must provide the same information for part number FZ1109.

Plaintiff also argues that the spreadsheet did not include any dates associated with the sale of products included therein. Counter-Defendants originally asked Defendant to provide the information requested in Interrogatory No. 2, including the total number of units sold, to be provided on a quarterly basis. (ECF No. 42-1, PageID.802). Defendant objected to this request since it sought (1) information beyond the six-year limitations period for patent infringement claims, and (2) expert opinion testimony. (*Id.*). That said, Defendant committed to provide the requested information for the six years preceding the complaint and subject to the unchallenged objections. (*Id.* at PageID.802-03).

Notably, Counter-Defendants did not request that information be provided by date or contend that limiting discovery to the six-year limitations period is improper. Had they done so, then Defendant would have had to provide the exact day, month, and year based on the definition of the term "date" in Counter-

Defendants' interrogatories.  (ECF No. 42-1, PageID.719, ¶ 17 (defining "date" for the RFPs), PageID.737, ¶ 1 (incorporating the definitions from the RFPs to the Interrogatories)).  Even so, Defendant did not object to providing the information quarterly as requested.  Accordingly, Defendant must provide the quarter which corresponds with the sales information provided to Counter-Defendants.

Lastly, Counter-Defendants complain that the updated spreadsheet includes the undefined terms "COST" and "ADD'L COST."  (ECF No. 42, PageID.697; ECF No. 46, PageID.975).  Interrogatory No. 2 requested cost information for "each part number and assembly part number associated with each Accused Product."  (ECF No. 42-1, PageID.802).  Since Defendant has apparently provided cost information, then the uncontested objections do not cover such information.  Defendant cannot obfuscate its cost information by including an unexplained "ADD'L COST" term.  Defendant must therefore explain what it means by "COST," "ADD'L COST," and the difference between the two terms.

In sum, to the extent that Defendant has not already done so, Defendant must (1) provide the cost, profit, and revenue information for part number FZ1109; (2) provide the requested sales information on a quarterly basis as requested for the six years prior to Plaintiff's complaint; and (3) explain what "COST" and "ADD'L COST" means and the difference between the two terms.  Counter-Defendants'

motion is therefore **GRANTED IN PART AND DENIED IN PART**. Defendant

must serve supplemental responses **within twenty-one days of this Order**.

> f. Defendant's Invalidity and Non-Infringement Contentions
> (Interrogatory Nos. 9-10)

The final set of discovery requested in Counter-Defendants' motion relate to

Defendant's invalidity and non-infringement contentions sought through

Interrogatory Nos. 9-10. (ECF No. 42, PageID.698-700). They argue that such

contentions are typically produced at the outset of discovery and should therefore

be compelled. (*Id.* at PageID.698-99). Defendant opposes production here based

on the same Rule 11 argument it made earlier regarding the physical samples.

(ECF No. 44, PageID.830 ("It is unfair, wasteful, and against common practice to

make Quality Collision produce its rebuttal contentions before GM first provides

its contentions on issues for which GM has the burden of proof.")).

As an initial matter, this argument suffers from the same defects as

mentioned earlier. Defendant cannot skirt around its discovery obligations by

arguing it shouldn't have to litigate a meritless case. If that were true, then every

motion to compel discovery would fail on that basis. But that is why courts do not

consider the merits of underlying claims while assessing discovery issues. *See*

*Robert Bosch LLC*, 2013 WL 673718, at *3; *Decker v. Chubb Nat'l Ins. Co.*, (S.D.

Ohio Oct. 14, 2015) (quoting *Stafford v. Jewelers Mut. Ins. Co.*, No. 3:12-cv-050,

2012 WL 6568325, at *3 (S.D. Ohio Dec. 17, 2012)) ("Defendants' request for a

merits-based assessment is premature because '[a] court does not consider the underlying merits of a [party's] claims in evaluating a motion to compel' and arguments directed at the merits of the plaintiffs' claims or the viability of affirmative defenses should be addressed by way of a dispositive motion or at trial and not during a discovery dispute.").

As far as more specific arguments, consider the invalidity contentions first. Even if Defendant's merits-based argument was proper, it would be waived considering Defendant did not object on that basis in response to Interrogatory No. 9. (ECF No. 42-1, PageID.809).  Instead, Defendant only objected on the basis that it was too soon for developed invalidity contentions.  (*Id.*).  While that may have been true in November 2024 when it initially responded to Interrogatory No. 9, the Court is not convinced that invalidity contentions would be too soon now, nearly nine months after discovery opened.  To that end, Defendant's objection to Interrogatory No. 9 is overruled.  Moreover, Counter-Defendants are correct to point out that Defendant's argument in its response brief misses the mark.  Defendant asserted that it should not have to provide rebuttal contentions where Plaintiff has not satisfied its burden of proof.  (ECF No. 44, PageID.830). But Defendant bears the burden of establishing invalidity by clear and convincing evidence. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1364 (Fed. Cir. 2018) (citing 35 U.S.C. § 282).  And it is the alleged infringer who

has "the initial burden of going forward with evidence to support its invalidity allegation." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). Defendant therefore must produce its invalidity contentions if it has not already done so.

Turn now to the non-infringement contentions. Here, Defendant raised the same timeliness argument and also included its merit-based argument in its initial discovery response to Interrogatory No. 10. (ECF No. 42-1, PageID.809-10 ("[I]t is GM's burden to prove infringement, and so far it has not done this."). The timeliness argument fails here as well—Defendant cannot reasonably contend that non-infringement contentions would be premature now, more than a year and a half since Plaintiff filed its complaint. And though Defendant's merits-based argument is not waived here, it is still improper because it is merits-based.

If Defendant truly believes that Plaintiff has not pleaded sufficient factual allegations to state plausible claims of patent infringement, then it should make those arguments in a dispositive motion. The Court will not entertain them here during a discovery dispute. Rather, Defendant should have argued that invalidity and non-infringement contentions fall outside the scope of discovery. But considering Defendant raised invalidity and non-infringement as affirmative defenses, contentions on those issues are plainly discoverable. (ECF No. 19, PageID.360-61). Counter-Defendants' motion to compel Defendant's invalidity

and non-infringement contentions is therefore **GRANTED**.  Defendant must
produce these contentions **within twenty-one days of this Order** if it has not done
so already.

        g.    <u>Sanctions</u>

If a motion to compel under Rule 37 is granted in part and denied in part, the
Court "may, after giving an opportunity to be heard, apportion the reasonable
expenses for the motion."  Fed. R. Civ. 37(a)(5)(C).  An award of attorney's fees
and costs under this Rule is therefore discretionary.  *See Waskul v. Washtenaw
Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 639 (E.D. Mich. 2021) (internal
citation omitted).  Counter-Defendants moved to compel responses to six classes of
discovery.  Though they prevailed on three of these classes of discovery, Counter-
Defendants did not secure the full degree of relief requested on the other three
classes of discovery.  While Defendant's positions were not substantially justified
for the most part, Counter-Defendants' arguments also had their faults.
Accordingly, the Court elects not to award fees on Counter-Defendants' motion to
compel.

C.    <u>Defendant's Motion to Compel (ECF No. 45)</u>

Defendant filed its motion to compel discovery on February 18, 2025.  (ECF
No. 45).  Defendant served its first set of discovery requests on October 2, 2024,
and Counter-Defendants served their responses and objections on November 8,

2024.  (*Id.* at PageID.850).  Defendant argues Counter-Defendants either refused to answer or provided inadequate answers to several RFPs and Interrogatories.[7]  (*Id.*).

      1.    <u>Proper Infringement Contentions (Interrogatory No. 3)</u>

Defendant moved to compel proper infringement contentions as requested under Interrogatory No. 3.  (ECF No. 45, PageID.860-61).  In their initial response, Counter-Defendants did not object, reserved the right to supplement its response after receiving discovery from Defendant, and referred Defendant to the infringement claim charts included with Plaintiff's complaint.  (*Id.* at PageID.861).  Though Defendant offers some new arguments here, some of its positions are familiar albeit in a different posture (e.g., as the movant).

The first argument the Court will address is that regarding the sufficiency of Plaintiff's infringement contentions.  Defendant's contention here fails, in part, for reasons already stated.  Defendant repeats its position that Plaintiff's infringement contentions are legally deficient since "GM cannot prove infringement of a design patent unless and until GM compares each figure in a patent with a comparable view of an accused infringing design."  (ECF No. 45, PageID.861-862).  To reiterate, this is essentially an argument on the merits of the case and improper in a discovery dispute.  Defendant even stated in its brief that "[a] party is not required to prove its case before seeking discovery on it."  (ECF No. 45, PageID.860).  It

---

[7] The same standard of review applies here as well.  *See supra* Subsection III.B.1.

follows that Plaintiff was not required to prove its patent infringement claims at the pleadings stage.  Indeed, this is consistent with this Court's observation that infringement contentions are not "intended to require a party to set forth a *prima facie* case of infringement and evidence in support thereof." *Bosch*, 2013 WL 673718, at *3.  *See also id.* at *2 ("[I]nfringement contentions are not meant to provide a forum for litigation of the substantive issues.") (internal quotations omitted).

The proper question is not whether Plaintiff's infringement contentions are sufficient to prove its claims.  After all, "[t]he purpose of infringement contentions 'is to provide defendant[ ] with notice of infringement beyond the claim language itself.'"  *Id.* at *2 (quoting *Shurtape Techs., LLC v. 3M Co.*, No. 5:11-CV-17, 2011 WL 4750586, at *2 (W.D.N.C. Oct. 7, 2011)).  So the proper issue is whether Plaintiff's infringement contentions are sufficient to place Defendant on notice of Plaintiff's theory of the case.  *See id.* (quoting *Realtime Date, LLC v. Packeteer, Inc.*, No. 6:08cv144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009)).  If not, then Plaintiff must provide more detailed infringement contentions.

On the sufficiency issue, Defendant argues that Plaintiff's contentions must include each patent drawing and a corresponding image of the Accused Product that matches each respective patent drawing.  (ECF No. 45, PageID.863).  Defendant refers to Patent D670,840 as an example.  This patent contains four

patent drawings from different angles; Plaintiff included next to these four patent drawings one image of three separate Accused Products.  (ECF No. 1-3, PageID.34).  Defendant's argument is that there should be four images of each Accused Product alleged to be infringing the D'840 Patent for a total of twelve images.  Without this all-angles approach to infringement contentions, Defendant states that Plaintiff has failed to "show how it is reading or comparing its figures onto the accused parts."  (ECF No. 45, PageID.863).

Counter-Defendants, however, point to persuasive authority finding that an all-angles approach is not required under the law.  (ECF No. 48, PageID.992-93).  In *simplehuman LLC v. iTouchless Housewares and Products, Inc.*, the defendant made a similar all-angles argument.  *See* No. 19-cv-02701, 2019 WL 5963245, at *3 (N.D. Cal. Nov. 13, 2019).  But the court there "found no cases requiring a specific number of views."  *Id.*  Instead, the court noted that "numerous cases have denied motions to dismiss or granted summary judgment while citing only a few possible views."  *Id.* (collecting cases).  That said, the plaintiff in *simplehuman* showed "side-by-side comparisons for each view found in the Asserted Design Patents."[8]  *Id.*  Since there was no case law requiring an all-angles approach to infringement contentions and simplehuman had included each view found in the

---

[8] The moving party complained that simplehuman did not provide corresponding images for the mirror images referenced in the Asserted Design Patents.  *See simplehuman*, 2019 WL 5963245, at *3.

Asserted Design Patent, the court concluded that the complaint contained sufficient facts to allege patent infringement.  *Id.*

As far as the Court can tell, there are no cases since *simplehuman* that have held that infringement contentions must show a certain number of views at the pleadings stage.  Though *simplehuman* itself contained all angles, it is crucial to note that the issue there was whether the complaint contained sufficient factual allegations to state plausible patent infringement claims.  *Id.*  So while all angles are plainly sufficient to state a plausible claim, it does not appear to be necessary to do so.  *Id.*  And if all-angles are not required on the plausibility issue, then it follows that all-angles are not required for infringement contentions to provide notice of Plaintiff's theory of the case.

If it were otherwise, then one might reasonably expect Defendant to have citations to case law that reflect its position.  Instead, Defendant cites only to two cases in its motion on the issue of sufficient infringement contentions.  It cites first to *Contessa Food Products v. Conagra, Inc.*, 228 F.3d 1370, 1378 (Fed. Cir. 2002).  While this pincite refers to the ordinary observer test and what is needed to prevail on a claim of design patent infringement, it does not deal with what is required for infringement contentions to provide sufficient notice of the plaintiff's theory of the case.  Defendant's second citation is to *Judin v. United States*, 110 F.3d 780, 783-84 (Fed. Cir. 1997), for the prospect that an adequate Rule 11 pre-

filing investigation requires the plaintiff to first obtain the Accused Products and present images from all angles with its infringement contentions. (ECF No. 45, PageID.863). *Judin* involved a patented method of micro-imaging, and the plaintiff only viewed the accused product at a distance and observed that it focused light into a pinpoint through a rounded tip. *Judin*, 110 F.3d at 781, 784. Because the plaintiff and his counsel performed no other investigation into whether the accused devices satisfied the two key limitations in the asserted patent, the Federal Circuit concluded that Rule 11 sanctions were warranted. *Id.* at 784. Even so, *Judin* does not discuss what is required to render infringement contentions sufficient to provide notice of the plaintiff's theory of the case.

While Defendant does not offer any argument on *simplehuman*, it does attempt to appropriate other cases Counter-Defendants cited. (ECF No. 49, PageID.1041-42). But the Court finds the attempted spin unpersuasive. Defendant points out that many of the cases in Counter-Defendants' briefing required more specific infringement contentions. This observation is accurate. In *Bosch*, the Court required "a chart identifying specifically where each limitation of each asserted patent claim is found in each accused product." *Robert Bosch LLC*, 2013 WL 673718, at *2. And other cases came from courts with local patent rules that required greater specificity. *See P&F Brother Indus. Corp. v. Home Depot, Inc.*, No. 2:23-CV-00312, at *7-8 (E.D. Tex. July 24, 2024); *Seven Networks, LLC v.*

*Motorola Mobility LLC*, No. 3:21-CV-01036, 2022 WL 3448642, at *1 (N.D. Tex. Aug. 16, 2022); *Shurtape Techs., LLC v. 3M Co.*, No. 5:11-CV-17. 2011 WL 4750586, at *1 (W.D.N.C. Oct. 7, 2011).  Importantly, this Court does not have local patent rules nor did the Court enter a *Bosch*-like order regarding specific infringement contentions.  So while more specific infringement contentions may have been required in those cases, such specificity is not required here.

All that said, the issue remains whether Plaintiff's infringement contentions provided sufficient notice to Defendant about Plaintiff's theory of the case. Plaintiff alleged that Defendant sells replacement parts that "are intended and designed to be substitutable with GM branded parts, and intended and designed to be, and indeed are, near-identical (if not completely identical) carbon copies in terms of ornamental appearance to the GM parts that they are meant to replace." (ECF No. 1, PageID.5, ¶ 13).  To that end, Plaintiff identified the Accused Products using specific part numbers.  Plaintiff then compiled infringement claim charts that depict the design patent drawings alongside an image of each Accused Product with the corresponding part number.  Plaintiff's theory of the case is therefore clear—the identified Accused Product parts are virtually identical to the design patents and therefore infringe on those patents.  In other words, the design of the Accused Products mirrors the patented designs.  Since Defendant possesses the Accused Products and has the design patents themselves via the charts (as well

as physical samples of GM's products (ECF No. 42, PageID.695-96)), Defendant

has notice of Plaintiff's theory of the case for nearly all of the patent infringement

claims included in the complaint.

There is an issue, however, regarding Count IX of the complaint and the

alleged infringement of Patent D867,939.  The complaint identifies the Accused

Product as Part No. ASYA36CV.  (ECF No. 1, PageID.23, ¶ 119).  Yet the

corresponding chart provides an image of Part No. ASYA35.  (ECF No, 1-19,

PageID.115).  The Court cannot conclude that Defendant had sufficient notice of

Plaintiff's case regarding the D'939 Patent since Plaintiff has provided two

different part numbers.  Accordingly, Plaintiff will have to supplement its

infringement contentions related to the D'939 Patent.

That said, Plaintiff indicated that it would supplement its infringement

contentions after receiving discovery from Defendant.  (ECF No. 48, PageID.993).

And the Court has now ordered Defendant to produce physical samples in a

manner consistent with what the parties agreed to during their meet-and-confers.

To ensure Defendant provides a proper physical sample of the Accused Product for

the D'939 Patent, Plaintiff must first resolve the discrepancy as to which product

number is proper.  The Court will not require Defendant to provide a sample for

either part number until Plaintiff identifies the proper part number.  Plaintiff is

therefore **ORDERED** to correct the discrepancy regarding the D'939 Patent and

then meet-and-confer with Defendant to ensure that Defendant provides a representative physical sample. Plaintiff must conduct this meet-and-confer **within seven days of this Order** so that Defendant has enough time to provide a proper physical sample and tailor its non-infringement contentions as needed.

The Court understands that Defendant disagrees with the notion that Plaintiff can amend its infringement contentions. (ECF No. 49, PageID.1042 ("GM is mistaken in suggesting contentions can be breezy, preliminary and incomplete; and that they can be amended later if and when GM decides to.")). Defendant itself undercuts this argument though, considering it cites to local patent rules in other jurisdictions that permit amendments to infringement contentions for good cause. (*Id.* at PageID.1041-42). Of course, this Court does not have such rules. And even if it did, the Court finds good cause here since it is unclear whether the discrepancy is an error in the chart or a mistake in the pleadings. The Court will not summarily dismiss this claim without first providing an opportunity to correct the defect.

Defendant also disagrees that Plaintiff can amend its infringement contentions after receiving the physical samples. (ECF No. 49, PageID.1043). Defendant repeats here its Rule 11 argument that Plaintiff must have first obtained the Accused Products to perform the requisite pre-filing investigation. (ECF No. 45, PageID.863 (citing *Judin*. 110 F.3d at 783-84)). Again, Defendant reads too much into the *Judin* decision. The *Judin* Court took issue with the lack of the

Case 2:23-cv-13026-DPH-CI ECF No. 113, PageID.3557 Filed 07/08/25 Page 59 of 78

plaintiff's pre-filing investigation since neither he nor his attorney asked for a device to examine, attempted to obtain a device, or tried to get a technical description of the accused product. *See Judin*, 110 F.3d at 782-83. To that end, the Court found there was no evidence that the plaintiff or his attorney compared the accused devices with the patent claims prior to filing the complaint. *Id.* at 784. But the Federal Circuit there did not hold that all prospective plaintiffs have an affirmative duty to first obtain the accused product before filing a lawsuit for patent infringement. Rather, it held that the plaintiff and his counsel did not make a reasonable effort to compare the accused product to the respective patent claims. *Id.* So to satisfy Rule 11—which itself requires only "an inquiry reasonable under the circumstances"—Plaintiff need only make a reasonable effort to compare the Accused Products to the patent claims themselves. *See Checkpoint Sys. v. Hangzhou Century Co.*, (N.D. Ohio June 13, 2012) (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)) ("Rule 11 requires that an attorney 'at a bare minimum, apply the claims of each and every patent that is being brought in the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted.'").

The only claim where *Judin* may apply is Count IX regarding the D'939 Patent and the corresponding claim chart which refer to two different part numbers.

Even so, the Court is ordering Plaintiff to correct this discrepancy before Defendant provides the physical samples.  This way Plaintiff can cure the defect, meet-and-confer with Defendant to explain the correction and ensure Defendant provides a proper physical sample, and then supplement its infringement contentions.  If, however, Plaintiff does not correct this discrepancy—that is, it maintains that there is no discrepancy at all—then the Court does not see how Plaintiff can maintain a claim for patent infringement where it alleges that one product infringes the patent but then compares that patent to a completely different product.

This leaves three of Defendant's remaining arguments in support of its motion to compel.  Defendant argues that the Accused Products are functional and that valid design patents cannot cover such functionalities; thus, Plaintiff must provide contention charts that exclude any functional aspects of the Accused Products.  (ECF No. 49, PageID.1042-43).  This functionality argument is an affirmative defense, strikes at the merits of Plaintiff's claims, and is therefore not well-taken in a discovery motion.

Defendant also takes issue with Plaintiff claiming patent infringement for parts to vehicles that span more than one model year without tailoring its claims to each model year.  (ECF No. 45, PageID.862-63).  Counter-Defendants state that "there is not a material difference between the design of those components over

those model years." (ECF No. 48, PageID.994-95). The Court agrees with Counter-Defendants—"[a]bsent some indication that the differences between [model years] are relevant, the Court sees no reason to compel [them] to produce essentially duplicative charts." *Seven Networks, LLC*, 2022 WL 3448642, at *2. *See also Renesas Tech, Corp. v. Nanya Tech. Corp.*, No. C03-05709, 2004 WL 260046, at *2-5 (N.D. Cal. Nov. 10, 2004) (holding that separate charts were not required where the infringement contentions are identical for each accused product). Since no evidence has been provided illustrating any material difference over the model years at issue, the Court does not have enough information to make a reasoned decision on whether charts for each year are needed.

Lastly, Defendant asserts that Counter-Defendants erred by referring Defendant back to the pleadings in the initial response to Interrogatory No. 3. (ECF No. 45, PageID.862; ECF No. 49, PageID.1040). Defendant cites Rule 33(d) in support of this argument, claiming that Counter-Defendants' response would only be proper when referring to business records. (ECF No. 45, PageID.861). Since Plaintiff's pleadings are not business records, Defendant says, Counter-Defendants' initial response was improper. (*Id.*). There is some authority that supports this position. *See* 8B Wright & Miller's Federal Practice & Procedure § 2177 (3d ed. 1998, May 2025 Update) ("Simply referring to the pleadings or other discovery is frequently found insufficient."); *Williams v. Johann*, 235 F.R.D. 116,

123 (D.D.C. 2006) (referring to the original and amended complaint was an inadequate response to interrogatories). But "frequently" does not mean "always." And in *Williams* the issue was that the amended complaint contained only two paragraphs on the subject-matter at issue. *Id.* Here, Counter-Defendants referred to the infringement contention charts included with the complaint. Defendant therefore did not have to sift through all the pleadings since Counter-Defendants identified the responsive materials. To compel production of the same charts on this basis would unnecessarily elevate form over function.

In summary, Defendant's motion to compel is **GRANTED IN PART AND DENIED IN PART**. The infringement contention charts are sufficient to provide notice to Defendant on the theory of Plaintiff's case for all claims except Count IX regarding the D'939 Patent. Thus, a supplemental infringement chart for the D'939 Patent is needed. Plaintiff is therefore **ORDERED** to correct the discrepancy between the complaint and the corresponding claim chart; Plaintiff is further **ORDERED** to conduct a meet-and-confer with Defendant **within seven days of this Order** to explain the correction and ensure Defendant provides a proper physical sample for Plaintiff's patent infringement claim for the D'939 Patent. Plaintiff must provide any supplemental infringement contentions **within fourteen days** of receiving physical samples from Defendant. In the event that Plaintiff states there is not a discrepancy regarding the D'939 Patent, then Plaintiff

should consider withdrawing Count IX or Defendant should file the appropriate dispositive motion.

### 2. Interrogatory No. 7

Defendant also moved for a proper response to Interrogatory No. 7. (ECF No. 45, PageID.864-66). Counter-Defendants indicated that they provided a supplemental response after Defendant filed its motion to compel. (ECF No. 48, PageID.1004). Defendant did not contest the sufficiency of the supplemental response in its reply brief. As the supplemental response seemingly resolved this discovery dispute, Defendant's motion to compel is **DENIED AS MOOT**.

### 3. Interrogatory No. 6

Defendant's motion also seeks a proper response to Interrogatory No. 6. There Defendant asked Counter-Defendants to "[i]dentify all steps taken to collect documents and ESI [electronically stored information] in this action." (ECF No. 45, PageID.866-67). This Interrogatory contained subparts as well. Counter-Defendants provided sufficient supplemental responses to the first two subparts, and Defendant did not argue otherwise in its reply brief. (ECF No. 48, PageID.1000-02; ECF No. 49, PageID.1046). Thus, the Court understands that the remaining issues pertain to the last two subparts which sought the "steps [ ] taken to preserve documents and ESI including any searches conducted" and "a description of GM's retention practices." (ECF No. 45, PageID.867-68).

Counter-Defendants initially objected, asserting that Interrogatory No. 6 was premature, sought privileged information, and overly broad and unduly burdensome because it asked for "all steps taken." (ECF No. 45, PageID.867). They also objected to the extent that the discovery request was inconsistent with the stipulated ESI order. (*Id.*). In their response brief, Counter-Defendants asserted that they "stand on its objections for the remaining two parts . . . that seek GM's document and ESI-retention policies, internal 'steps' taken to segregate and preserve ESI, as well as custodians' obligations to preserve such ESI." (ECF No. 48, PageID.1000). Contrary to what one may expect, Counter-Defendants did not argue that its initial objections defeated the motion to compel; instead, they claimed that the information sought was irrelevant "discovery about discovery." (*Id.*). That is, since the record here does not indicate "that there is a reason to distrust the responding party's diligence," such evidence is irrelevant. (*Id.* at PageID.1000-01 (citing *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 125 (E.D. Mich. 2019)).

Counter-Defendants' argument on relevance is compelling. But as Defendant correctly points out, Counter-Defendants did not object to Interrogatory No.6's relevance, so that argument is waived. (ECF No. 49, PageID.1046). Defendant also cites persuasive authority from this Court finding that "a party's search protocol" is not privileged. *See Lyman v. Ford Motor Co.*, 344 F.R.D. 228,

230-31 (E.D. Mich. 2023) (collecting cases).  Counter-Defendants did not offer a

rebuttal on this point, so the Court overrules their privilege objection.

This leaves Counter-Defendants' objections based on timeliness,

overbreadth and undue burden, and the stipulated ESI order.  Neither party offered

arguments on these objections.  And by only arguing relevance, it is unclear

whether Counter-Defendants abandoned their other objections.  In any event, the

remaining objections are overruled.  While document collection efforts may have

been in their infancy in November 2024, they certainly are not now.  The

remaining objections are also boilerplate.  This Court has observed that "the mere

statement by a party that the [request] was overly broad, burdensome, oppressive,

and irrelevant is not adequate to voice a successful objection to [a request.]"  *Ryan*

*v. City of Detroit*, No. 11-CV-10900, 2013 WL 6730051, at *7 n.5 (E.D. Mich.

Dec. 19, 2013) (internal quotations omitted).  "Boilerplate or generalized

objections are tantamount to no objection at all and will not be considered by the

Court."  *Strategic Mktg. & Rsch Team, Inc. v. Auto Data Sols., Inc.*, No. 2:15-cv-

12695, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017) (internal quotations

omitted).  Though Counter-Defendants took issue with the phrase "all steps taken,"

they have not explained how that phrase renders Interrogatory No. 6 overbroad and

unduly burdensome.  Additionally, Counter-Defendants did not identify how

Interrogatory No. 6 is inconsistent with the stipulated ESI order.

Defendant's motion to compel a proper response to Interrogatory No. 6 is

**GRANTED**.  Counter-Defendants must provide a supplemental response **within**

**twenty-one days of this Order**.

    4.    <u>Interrogatory No. 5</u>

The motion to compel also targets a proper response to Interrogatory No. 5

which sought all evidence supporting Counter-Defendants' claim to the

Government that Defendant's parts are or appear to be counterfeit.  (ECF No. 45,

PageID.869-73).  Despite the arguments made on this interrogatory, the Court

believes there is a simpler solution to this issue.  In their response brief, Counter-

Defendants state that they "already produced its communications with the

government to Quality Collision."  (ECF No. 48, PageID.999-1000).  The Court

agrees that Defendant should first have to review these communications as

pertinent information may already be in Defendant's possession.  Perhaps the

provided communications include statements about the alleged counterfeiting—if

so, then Defendant can seek supplemental discovery on those communications

thereby alleviating any concerns regarding vagueness.  Defendant did not rebut this

contention in its reply brief, so the Court does not know whether Defendant has

reviewed the provided communications.

The motion to compel is therefore **DENIED WITHOUT PREJUDICE**.  If the provided communications are a dead-end, then Defendant can refile its motion to compel a response to Interrogatory No. 5.

5.      Interrogatory No. 10

Defendant moved to compel a proper response to Interrogatory No. 10 as well.  (ECF No. 45, PageID.873-75).  This discovery request asked Counter-Defendants to "[i]dentify all GM employees or contractors who were involved in responding to the interrogatories."  (*Id.* at PageID.873).  Counter-Defendants lodged initial objections, citing the attorney-client and work-product privileges as well as the compounding nature of the interrogatory.  (*Id.* at PageID.873).  That said, they later identified the individual who assisted in the response to Interrogatory Nos. 1 and 2, subject to Counter-Defendants' initial objections.  (*Id.* at PageID.875).  In their brief in opposition to Defendant's motion, Counter-Defendants focus largely on the issue of work-product privilege while also pointing out that Defendant can obtain the desired information through other means.  (ECF No. 48, PageID.1002-03).  They also assert that their supplemental response did not waive their privilege objections.  (*Id.* at PageID.1004).  Defendant opposes such contentions since the information sought is not subject to any privilege and the interrogatory does not compound multiple interrogatories.  (ECF No. 45, PageID.874).  Defendant also contends that the case law cited in Counter-

67

Defendants' briefing is inapt but does not provide its own cases in support of its position.  (ECF No. 49, PageID.1043-44).  At bottom, Defendant says it is only seeking the identity of people who have knowledge of the facts of the case so that it can determine whom to depose.  (ECF No. 45, PageID.874; ECF No. 49, PageID.1044).

Though Defendant dismisses Counter-Defendants' work-product objection as baseless, the objection has some merit.  It is well-established that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  To that end, "'tangible and intangible' evidence of how an attorney 'sift[s] what he considered to be the relevant from irrelevant facts' f[a]ll into the privileged category of work product." *Bose v. Rhodes Coll.*, No. 16-cv-02308, 2017 WL 4479258, at *9 (W.D. Tenn. Oct. 6, 2017) (quoting *Hickman*, 329 U.S. at 511-12) (second alteration added).

The work-product privilege comes in two forms: "fact" work product and "opinion" work product. *See Arch Ins. Co. v. Commercial Steel Treating Corp.*, No. 11-15535, 2012 WL 12930397, at *1 (E.D. Mich. Sept. 11, 2012) (internal citations omitted).  The former "consists of the information received by an attorney," whereas the latter "consists of the mental impressions, judgments, conclusions, and legal analyses of the attorney." *Id.  See also In re Columbia/HCA*

*Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002).

While opinion work product cannot be produced absent waiver, "[a]ttorneys may

obtain discovery of another party's fact work product 'upon a showing of

substantial need and inability to otherwise obtain [the evidence] without material

hardship.'"  *Bose*, 2017 WL 4479258, at *9 (quoting *Columbia/HCA Healthcare*

*Corp.*, 293 F.3d at 294).

      Since Defendant did not argue waiver, substantial need, or material hardship,

the only issue is whether the information sought through Interrogatory No. 10

constitutes privileged fact work product.  *See Tracy v. NVR, Inc.*, 250 F.R.D. 130,

132 (W.D.N.Y. 2008) (limiting the issue to whether the desired information was

privileged since movants did not attempt to show that their need for the

information overcame the protection of the privilege).  Whether an interrogatory

seeking the identity of those who helped respond to interrogatories touches upon

privileged information is not a novel issue.  This Court and others have pointed out

that the key distinction is whether the interrogatory asks for "'the identity of

persons with knowledge, which is clearly permissible'" or asks for "'the identity of

persons contacted and/or interviewed during an investigation, which is not.'"

*Carson-Merenda v. Detroit Med. Ctr.*, 2008 WL 659647, at *4 (E.D. Mich. Mar. 7,

2008) (quoting *Com. of Mass. V. First Nat'l Supermarkets, Inc.*, 112 F.R.D. 149,

152-53 (D. Mass. 1986) and collecting cases).  *See also Tracy*, 250 F.R.D. at 132-

33 (distinguishing between the identity "of persons with knowledge about the claims or defenses" and the identity "of persons who have been contacted or interviewed by counsel concerning the case"); *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 232 (E.D.N.Y. May 25, 2007) (denying motion to compel because the interrogatory at issue "s[ought] information regarding individuals who assisted plaintiffs' counsel with the preparation of their interrogatory responses" and such information was "protected work product").

Counter-Defendants cited *Bose v. Rhodes College* in support of their work product argument. There, the interrogatory at issue asked for the following: "Interrogatory No. 1: State the name, address, and telephone number of each individual who provided information to respond to these Interrogatories and/or assisted in the preparation of your responses to these Interrogatories, and identify which Interrogatories each individual provided information in response to and/or assisted in answering." *Bose*, 2017 WL 4479258, at *4. The court concluded that this interrogatory asked for protected work product—that is, "the identification of the persons whom a party interviewed"—and denied the motion to compel. *Id.* at *9.

Defendant says that *Bose* has no precedential value and is not on point with the issue here. Because Defendant seeks only the identity of people with knowledge of the facts in this case, the argument goes, *Bose* is inapplicable. But

Defendant does not seriously grapple with the *Bose* decision.  Interrogatory No. 10 asks for the same kind of information as the interrogatory in *Bose*—each seek the identity of people that were involved in responding to the interrogatories.  Though Defendant says it only seeks the identity of persons with knowledge, the text of the interrogatory goes further than that.  In *Strauss v. Credit Lyonnais, S.A.*, the interrogatory at issue asked the responding party to "identify all persons who assisted in preparing responses to these Interrogatories."  242 F.R.D. at 231.  The court there held that the discovery request sought more than the identity of persons with knowledge since it actually targeted the "identities of those who actually participated in plaintiffs' case preparation, including the preparation of responses to the Interrogatories."  *Id.* at 232.  Interrogatory No. 10 targets similar information—the identities of those "GM employees or contractors who were involved in responding to the interrogatories."  (ECF No. 45, PageID.873).  And while *Bose* may not have precedential value, it and the other cases cited here have value as persuasive authority.

Defendant did not cite any contrary authority to rebut Counter-Defendants' work product arguments.  The Court is therefore persuaded that the work-product privilege covers the information sought in Interrogatory No. 10.  The motion to compel is therefore **DENIED**.  That said, Defendant can still serve an interrogatory seeking the identity of those GM employees or contractors who have knowledge of

71

the claims and defenses in this case since such phrasing would not touch upon privileged information under the work-product doctrine. *See Tracy*, 250 F.R.D. at 131; *First Nat'l*, 112 F.R.D. at 153-54. *See also Morgan v. City of New York*, No. 00 Civ. 9172, 2002 WL 1808233, at *3 (S.D.N.Y. Aug. 6, 2002).

      6.    <u>RFP Nos. 7, 9, 11, 13, 15, 17, 19, 21, 23, and 25</u>

Lastly, Defendant moved the Court to compel Counter-Defendants to produce documents responsive to the above-listed RFPs. These discovery requests seek "the design files for the GM products immediately preceding those GM products that GM asserts are represented by the Asserted GM patents." (ECF No. 45, PageID.875). In other words, Defendant wants the design files for things like the 2010-2012 Chevrolet Malibu headlights since Plaintiff claims infringement of the patented design for Chevy Malibu headlights for the model years beginning in 2013 to the present. (*Id.* at PageID.876). Defendant argues that the design files are "relevant to the state of the art of the Asserted GM Patents and may provide additional, invalidating prior art or lead to the discovery of it." (*Id.* at PageID.880-81). Though Counter-Defendants initially objected, stating that the RFPs were overly broad, unduly burdensome, disproportional to the needs of the case, irrelevant, and sought privileged information, Defendant says those objections are meritless. (*Id.*).

Counter-Defendants maintain their relevance and proportionality arguments in their response brief.  (ECF No. 48, PageID.995-98).  The main thrust of their argument is that the design files are confidential and therefore cannot be used as prior art to evince invalidity of the Asserted Patents.  (*Id.* at PageID.995-96).  Thus, the argument goes, the design files are irrelevant.  Moreover, Counter-Defendants state that the irrelevance of the design files renders the RFPs at issue disproportional to the needs of the case, especially considering the extensive amount of information and documents those RFPs targeted.  (*Id.* at PageID.997).  Additionally, Counter-Defendants referred Defendant to their "public-facing, virtual marking database that identifies GM's design patents and correlates them to its products by application, model year, and specific part number."  (*Id.* at PageID.996).  So the "patents and their prosecution histories are by-definition public, and thus, Quality Collision has all it needs if it wants to contend that any prior GM products bear on the validity of the Asserted Patents."  (*Id.*).

Counter-Defendants' arguments are more persuasive on this issue.  As to confidentiality, Counter-Defendants rely on *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997).  There, the Federal Circuit pointed out that "the patent laws have not generally recognized as prior art that which is not

accessible to the public."[9]  *OddzOn*, 122 F.3d at 1402.  This general principle

comports with the current definition of prior art under federal law.  *See* 35 U.S.C. §

102(a)(1) (defining "prior art" as something "patented, described in a printed

publication, or in public use, on sale, or otherwise available to the public before the

effective filing date of the claimed invention").  Subsequent cases have confirmed

that public art is what is publicly accessible.  *See Vulcan Eng'g Co. v. FATA*

*Aluminium, Inc.*, 278 F.3d 1366, 1372 (Fed. Cir. 2002) (reiterating that a system

that was "secret" and "not on sale or publicly known or used" was not prior art);

*Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp.*, No. CV 13-13-

2072, 2017 WL 1045912, at *9 (D. Del. Feb. 22, 2017) (holding that the "complete

lack of actual [publicly] accessible use or disclosure" of the server at issue meant

the server did not qualify as prior art); *Kimberly-Clark Worldwide, Inc. v. First*

*Quality Baby Products*, No. 09-C-00916, 2011 WL 1343166, at *1 (E.D. Wisc.

Apr. 7, 2011) (holding that consumers tests "subject to confidentiality" are not

prior art and thus "not discoverable on th[at] basis).[10]

---

[9] Ultimately, the Federal Circuit held that the district court did not err when it considered
two confidential designs to be prior art under a statutory provision that is no longer in effect.  *See*
*OddzOn*, 122 F.3d at 1401-04 (regarding 35 U.S.C. § 102(f) note, Act of Nov. 14, 1975, Pub. L.
94-131, § 5, 89 Stat. 691); Leahy-Smith America Invents Act, Pub. L. 112-29, § 3(b)(1), 125
Stat. 285 (amending to remove, in part, subsection (f)).

[10] Counter-Defendants cited this *Kimberly-Clark Worldwide* case in support of the
proposition that confidential matters cannot comprise prior art and are thus not discoverable.
Defendant did not offer any rebuttal on this case.  And though this case does not involve
confidential consumer tests, it still involves confidential documents.

Crucially, Defendant did not contest the confidential nature of the design files at issue. Nor did Defendant argue that the general principle identified in *OddzOn*—that is, prior art cannot consist of confidential materials—has been overturned or otherwise invalidated.

Since the confidential nature of the design files is uncontested, the design files cannot qualify as prior art under the law. Because the design files cannot serve as prior art in support of Defendant's invalidity arguments, the Court agrees that the design files are not relevant.[11] The Court is not going to compel Counter-Defendants to produce confidential documents that cannot serve as prior art and, as a result, cannot be used to develop invalidity arguments based on prior art. *See Kimberly-Clark Worldwide, Inc.*, 2011 WL 1343166, at *1. Though Defendant suggests this understanding is mistaken, (ECF No. 49, PageID.1044 ("GM argues that *if* they are confidential, *then* they cannot be relevant to invalidity, but this is wrong."), it cited no authority in support of its position.

Moreover, Counter-Defendants directed Defendant to publicly available information that identifies their design patents which, in turn, can lead Defendant to the prosecution history for those patents. (ECF No. 48, PageID.996). Defendant has not contested Counter-Defendants assertion that it can use this

---

[11] As the Court concludes that the design files are irrelevant, the Court does not address the proportionality arguments raised in the briefing.

publicly available information to determine whether prior GM products have any bearing on the validity of the Asserted Patents.  And "'[i]t is well settled that discovery need not be required of documents of public record which are equally accessible to all parties.'"  *Nurse Notes, Inc. v. Allstate Ins. Co.*, No. 10-CV-14481, 2011 WL 2015348, at *2 (E.D. Mich. May 24, 2011) (quoting *Securities & Exchange Comm'n v. Sloan & Co.*, 369 F. Supp. 994, 995 (S.D.N.Y. 1973)).  So even if the designs for prior model years include the same or similar designs as the Asserted Patents, those designs would be reflected in the publicly available design patents.

Perhaps Defendant recognized the pitfalls of its prior art argument considering it adds in its reply brief that the design files for parts related to older model vehicles are also relevant on other issues like Counter-Defendants' prayer for lost profits.  (ECF No. 49, PageID.1044).  But the Court does not see the connection between profits lost because of Defendant's alleged infringement of the Asserted Patents for the model years listed in the complaint and design files for older versions of Counter-Defendants' products that are not at issue here.  If Plaintiff lost profits as alleged, (ECF No. 1, PageID.7-8, ¶ 17), then that is because a prospective customer purchased one of the Accused Products from Defendant instead of directly from Counter-Defendants, not because that customer purchased an older version of a car part that is not named in the complaint.

The motion to compel is therefore **DENIED**.

    7.   <u>Sanctions</u>

Just like with Counter-Defendants' motion to compel, Defendant's own motion is granted in part and denied in part. Defendant moved to compel production on six classes of discovery requests and prevailed on two of them. Just as with Counter-Defendants' motion, the Court exercises its discretion and declines to award fees related to this motion.

## IV.   CONCLUSION

For the above-stated reasons:

- Counter-Defendants' motion to seal, (ECF No. 53), is **DENIED**;

- Counter-Defendants' motion challenging the confidentiality designation, (ECF No. 62), is **DENIED AS MOOT**;

- Counter-Defendants' motion for sanctions, (ECF Nos. 52, 54) is **DENIED**;

- Counter-Defendants' motion for protective order and to stay discovery, (ECF No. 57), is **DENIED AS MOOT**;

- Counter-Defendants' motion to compel, (ECF No. 42), is **GRANTED IN PART AND DENIED IN PART**. Defendant must produce supplemental discovery responses **within twenty-one days of this Order**. Counter-Defendants must reimburse Defendant the market price for the physical samples **within twenty-one days of receiving the physical samples**;

- Defendant's motion to compel is **GRANTED IN PART AND DENIED IN PART**. Plaintiff is **ORDERED** to address the discrepancy regarding the D'939 Patent and conduct a meet-and-confer on the matter with Defendant **within seven days of this Order**. Plaintiff must produce supplemental infringement contentions **fourteen days** after receiving Defendant's supplemental discovery responses. Counter-Defendants' supplemental

discovery responses to Defendant's Interrogatory No. 6 must be produced within **twenty-one days of this Order**.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as error any defect in this Order to which timely objection was not made.  Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich. Local Rule 72.2.

Date: July 8, 2025                          s/Curtis Ivy, Jr.
                                            Curtis Ivy, Jr.
                                            United States Magistrate Judge