UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GM GLOBAL TECHNOLOGY
OPERATIONS, LLC,

     Plaintiff/Counter-
     Defendant,

v.

QUALITY COLLISION PARTS, INC.,

     Defendant/Counter-
     Plaintiff,

v.

GENERAL MOTORS COMPANY, INC.
and GENERAL MOTORS, LLC.,

     Counter-Defendants.
_____/

Case No. 23-13026

Denise Page Hood
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## ORDER GRANTING PLAINTIFF'S MOTION TO AMEND AND DENYING DEFENDANT'S MOTION TO SEAL (ECF Nos.95, 107)

## I. PROCEDURAL HISTORY

On June 6, 2025, Plaintiff GM Global Technology Operations ("GM") filed its *Motion for Leave to File Its First Amended Complaint and Join Parties* (ECF No. 95). The motion is fully briefed. (ECF Nos. 104, 109). The Court also held a motion hearing on the matter on January 20, 2026, after Defendant Quality Collision Parts, Inc.'s ("QC") counsel withdrew from this action and substitute defense counsel entered an appearance. (ECF Nos. 132, 135, 138, 139, 140).

Related to this motion is Defendant's pending motion to seal exhibits included with its brief in opposition.  (ECF No. 107).

For the following reasons, Defendant's *Motion for Leave to File Under Seal Exhibits to its Response to GM's Motion for Leave to File Its First Amended Complaint and Join Parties* (ECF No. 107) is **DENIED**, and Plaintiff's *Motion for Leave to File Its First Amended Complaint and Join Parties* (ECF No. 95) is **GRANTED**.

## II.    BACKGROUND

As the Court described the facts underlying Plaintiff's original complaint in a prior Order, (ECF No. 113), the focus here will be the allegations in Plaintiff's proposed pleadings and the facts that gave rise to the motion to amend.

In May 2025, one of Plaintiff's attorneys inadvertently added an "s" to the end of Defendant's website address (www.qualityautomotivepart.com).  (ECF No. 95, PageID.2347).  This mistake brought counsel to the website for a company called Power Auto Parts ("PAP") (whose website address is www.qualityautomotiveparts.com).  (*Id.*; ECF No. 95-2, PageID.2417, ¶ 241).  Counsel noted that this website contained many similarities to Defendant's: it listed the same telephone number, the same physical address, and the same business model—that is, selling aftermarket replacement parts for OEM vehicles, including GM vehicles.  (ECF No. 95, PageID.2347–79; ECF No. 95-2,

PageID.2416–17, ¶¶ 238–41).  After further investigation, Plaintiff discovered that PAP filed its Articles of Incorporation in December 2023, less than a month after Plaintiff initiated this action.  (ECF No. 95, PageID.2348; ECF No. 95-2, PageID.2371, ¶ 5).  PAP's Articles of Incorporation show that there are 60,000 authorized shares issued (but not who owns those shares) and that Alden Hermez is the registered agent as well as the President, Treasurer, Secretary, and Director for PAP.  (ECF No. 95, PageID.2348).  Notably, Alden Hermez, according to Plaintiff, is an employee or officer of Defendant QC and the son of Kanaan (Ken) Hermez, who is a co-owner of Defendant.  (*Id.*).  Alden Hermez is also the nephew of Defendant's other co-owner, Nathir Hermez (Kanaan's brother).  (*Id.*).

Despite the connections between Defendant QC and PAP, the latter's existence was not disclosed at any point prior to Plaintiff's serendipitous typographical error.  Ultimately, Plaintiff conferred with Defendant's then-counsel on May 16, 2025, at which point several troubling developments were disclosed to Plaintiff.  In pertinent part, Defendant's then-counsel informed Plaintiff that Defendant "has or is in the process of 'going out of business'"; Defendant had transferred all of its assets to PAP, including parts accused of infringement in this case; and that PAP had sold the allegedly infringing products.  (*Id.* at

3

PageID.2350).[1]  Even more concerning was that Defendant's then-counsel only learned about PAP's existence after Plaintiff requested a conference about PAP.

Defense counsel argued during the hearing that PAP exists so that Defendant's business could continue without the stigma that the original pleadings supposedly caused Defendant.  (ECF No. 151, PageID.4476) (referring to the allegedly negative effects this case has had on Defendant QC's business and stating that PAP "is a separate company, owned by Alden Hermez, that is attempting to operate without the stigma improperly created by GM").  Notably, however, defense counsel referred to an article in the Detroit News which detailed the basis for the federal government's criminal investigation.  But PAP was incorporated in December 2023, and the referenced article was published on February 22, 2024.  (ECF No. 113, PageID.3509) (referring to the Detroit News article entitled "*Spies, Lies, Chevy Bowties: Undercover Auto Officials at Center of Counterfeit Parts Probe*").

---

[1] In an email included as an exhibit to its motion to amend, Plaintiff's counsel asked Defendant's then-counsel to confirm that this synopsis of their conference was accurate.  (ECF No. 95-9).  In response, then-counsel did not object to any of the bullet points and only took issue with what was omitted from the synopsis, e.g., that Defendant's decline and rationale for selling its assets was because Plaintiff and the other Counter-Defendants allegedly prompted the federal government's criminal investigation and raids (in other words, the basis for Defendant's counterclaims).  At the motion hearing, defense counsel confirmed that Defendant is "essentially" out of business.

As a result of these developments, Plaintiff seeks leave to amend its complaint to add claims and parties.  Plaintiff also moves to amend to add new theories of liability.

First, Plaintiff seeks to add PAP as a defendant, alleging that it is a successor entity to Defendant that has continued the alleged infringing activity raised in the original pleadings.  In turn, Plaintiff wants to join PAP to each of the ten design patent infringement claims alleged in the original complaint.[2]  Second, Plaintiff wants to add Alden Hermez, Nathir Hermez, Kanaan Hermez, and Tom Hermez (collectively, "Individual Proposed Defendants") to this suit as well.  Plaintiff alleges in its proposed complaint that Kanaan and Nathir are Defendant's co-owners, Alden Hermez is PAP's owner, and Tom Hermez was Defendant's manager prior to being employed in the same position at PAP.  (ECF No. 95-2, PageID.2372, ¶¶ 9–12).  It also claims that Nathir, Kanaan, and Tom are all a principal and/or officer of both Defendant QC and PAP.  (*Id.* at PageID.2383, ¶¶ 54–57).  Plaintiff also asserts that alter ego liability is warranted here because of the Individual Proposed Defendants' involvement in Defendant's and PAP's

---

[2] Defense counsel also asserted at the motion hearing that PAP does not sell or has not sold the accused infringing products.  But counsel for Plaintiff indicated that he had purchased one of the accused infringing products from PAP and referred to a screenshot from PAP's website that states that it has "every part for Chevrolet cars and trucks from every year, make, and model."  (ECF No. 95-5, PageID.2543).  Likewise, Defendant QC stated on its website that it "carries every part for all Chevrolet years, makes and models, cars, and trucks."  (ECF No. 1-22, PageID.139).

alleged infringing activity.  Plaintiff therefore wants to join the Individual

Proposed Defendants to its claims for patent infringement.  And third, Plaintiff

wishes to lodge an additional state-law fraudulent transfer claim against Defendant,

PAP, and the Individual Proposed Defendants.

Defendant, for its part, contests many of the factual assertions in Plaintiff's

motion and briefing.  First, Defendant says that Defendant and PAP are separate

entities and that the Individual Defendants, apart from Alden Hermez, have

nothing to do with PAP.  (ECF No. 104, PageID.2866–67).  Second, though

Defendant acknowledges that it transferred assets, including inventory, to PAP, it

avers that PAP paid valuable consideration for those assets.  (*Id.* at PageID.2867).

Third, Defendant argues that Plaintiff's allegation "on information and belief" that

Nathir and Kanaan Hermez are principals and/or officers of PAP is false given that

Alden Hermez is listed as PAP's registered agent, President, Treasurer, Secretary,

and Director according to publicly available information.  (*Id.* at PageID.2867).

Fourth, Defendant reiterates that it received "millions of dollars in payments from

[PAP]" in return for transferring *some* of its assets to PAP.  (*Id.* at PageID.2687–

88).  And fifth, it once again asserts that there is no common ownership or overlap

in principals between Defendant and PAP.  (*Id.* at PageID.2868).

To that end, Defendant argues—as it has elsewhere—that Plaintiff has failed

to conduct a sufficient pre-filing investigation.  It also asserts that this motion does

6

not reflect "a sincere effort to enforce" patents rights and instead evinces "a mean-spirited litigation tactic."  (*Id.* at PageID.2870).

## III.   ANALYSIS

Since a motion to seal accompanied Defendant's response brief the Court will address that motion first prior to addressing the merits of Plaintiff's motion to amend.

### A.   Defendant's Motion to Seal (ECF No. 107)

As an initial matter, the motion is procedurally defective.  At the outset, Defendant states that it "did not seek concurrence from GM" because "GM's concurrence is not relevant."  (ECF No. 107, PageID.3215).  But this Court's Local Rules do not permit a movant to not seek concurrence simply because it does not deem the nonmovant's concurrence relevant.  In fact, the Local Rules articulate the reasons a movant may proceed without first obtaining concurrence, and a "lack of relevance" is not included among the listed reasons.  *See* E.D. Mich. LR 7.1(a)(2). This alone is sufficient to deny Defendant's motion.  *See* E.D. Mich. LR 7.1(a)(3).

The motion also does not satisfy the substantive standard for filing under seal.  As explained in a prior Order, the Sixth Circuit has long recognized a "strong presumption in favor of openness" in court records.  *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (citing *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983)).  The

"heavy" burden of overcoming that presumption rests with the party seeking to seal the records. *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016). The proponent for sealing must show that it will suffer a "clearly defined and serious injury" if the records are not sealed. This burden must be met even if no party objects to the seal, and it requires a "document-by-document, line-by-line" demonstration that the information in the document meets the "demanding" requirements for the seal. *Id.* at 308.

The Sixth Circuit reaffirmed this mandate just last year in *Grae v. Corr. Corp. of Am.*, 134 F.4th 927 (6th Cir. 2025). The *Grae* Court reminded district courts that "[o]nly the most compelling reasons can justify non-disclosure of court records." *Id.* at 930 (citation omitted). To that end, "[p]latitudes about 'competitively-sensitive' information are not enough; the proponents of secrecy must show that 'disclosure will work a clearly defined and serious injury.'" *Id.* at 932 (quoting *Shane Grp., Inc.*, 825 F.3d at 307). And, with respect to "civil litigation," the Sixth Circuit has remarked that "only trade secrets, information covered by a recognized privilege (such as attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault),' is typically enough to overcome the presumption of access." *Shane Grp., Inc.*, 825 F.3d at 308 (citation omitted).

8

And "even when 'a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason.'" *Grae*, 134 F.4th at 932 (internal quotation omitted); *see also Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019) (citing *Shane Grp., Inc.*, 825 F.3d at 305) ("[T]he [movant] must show three things: (1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored.").

Defendant did not satisfy its burden here.  In its motion, Defendant contends that the documents it seeks to seal are designated as "Attorneys Eyes Only" ("AEO") pursuant to the parties' Stipulated Protective Order.  (ECF No. 107, PageID.3218).  Accordingly, it later asserts that the documents contain "highly sensitive business or personal information" that would likely "cause significant harm to an individual or to the business or competitive position of the designating party" if disclosed.  (*Id.*).  In that vein, Defendant argues that the documents should be filed under seal "to respect the privacy rights of the parties." (*Id.* at PageID.3219) (citing *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179).

Though the documents Defendant wants to seal are designated AEO and Plaintiff has not contested that characterization, this does not automatically stand for the proposition that the documents may be filed under seal.  *See United States*

*v. EES Coke Battery, LLC*, No. 22-11191, 2025 WL 1172449, at *2 (E.D. Mich. Apr. 22, 2025) (rejecting contention that a protective order permits the parties to file documents under seal without seeking leave to do so); *Ohio Citizen Action v. City of Englewood*, Case No. 3:05-cv-263, 2008 U.S. Dist. LEXIS 144814, at *2–3 (S.D. Ohio Aug. 22, 2008) (citing *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219 (6th Cir. 1996)) (explaining that "no document," including one subject to a protective order, "may be filed with the Court under seal without permission as to each such filing, upon motion and for good cause shown, including the legal basis for filing under seal").

That said, Defendant has not identified a "clearly defined and serious injury" that disclosure would cause.  It only refers generally to undefined "privacy rights" and vague, speculative harms that would affect "the business or competitive position of the designating party."  Such amorphous, undefined injuries are not enough to satisfy Defendant's "heavy" burden to overcome the presumption of public access.  *See Grae*, 134 F.4th at 932 (holding that platitudes about "competitively-sensitive" information are insufficient to warrant filing under seal); *Rudd Equip. Co., Inc.*, 834 F.3d at 591 (citing *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179) ("Simply showing that the information would harm the company's reputation does not outweigh the public's interest in access to court records.") (citation modified); *Procter & Gamble Co.*, 78 F.3d at 255 ("The private

litigants' interest in protecting their vanity or their commercial self-interest simply does not qualify as grounds for imposing a prior restraint.  It is not even grounds for keeping information under seal . . . ."); *Kaki v. Tenet Healthcare Corp.*, No. 20-10004, 2021 WL 323249, at *5 (E.D. Mich. Feb. 1, 2021) (citing *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)) (concluding that a reference to "privacy rights" without detailing how disclosure will result in a "clearly defined and serious injury" does not warrant filing under seal), *vacated on other grounds and remanded*, No. 21-1100, 2022 WL 3452380 (6th Cir. June 29, 2022).

Defendant also did not perform the sort of "document-by-document, line-by-line" required to show that the motion to seal is narrowly tailored.  Instead, it just asserts that its motion seeks "to file no more than is necessary and germane to the resolution of its motion" without explaining how that is so.  (ECF No. 107, PageID.3219).

As Defendant did not satisfy its burden and show that filing the documents at issue under seal is warranted, the motion to seal is denied.

### B.   Plaintiff's Motion to Amend (ECF No. 95)

To prevail on its motion to amend, Plaintiff must satisfy the requirements for an amendment under Federal Rule of Civil Procedure 15 as well as the requirements for joinder of parties under Rule 20.  The parties also briefed whether Plaintiff's motion must also satisfy the test for modifying the Court's Scheduling

Order under Rule 16.  The Court addresses the parties' respective arguments under each rule in kind.

### 1.    Rule 15

Plaintiff moves to amend his pleadings pursuant to Rule 15(a)(2).  Leave to amend the complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But this does not suggest that all motions to amend are automatically granted.  Courts consider several factors when assessing a motion to amend, specifically "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failures to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001).  Defendant argues that the Court should deny Plaintiff's motion because it is prejudicial, futile, and brought in bad faith.

### a.    Prejudice

Defendant argues that amending the pleadings now would be prejudicial to both itself and the prospective defendants.  With respect to prejudice Defendant will suffer, it contends that this lawsuit as now pleaded has already "devastated [its] business with its improper support of criminal raids and investigations."  (ECF No. 104, PageID.2872).  On top of that, Defendant says that "the mere allegations of wrongdoing and GM-induced bad publicity have caused customers and

suppliers to stop doing business with" it.  (*Id.*).  Defendant adds that an amendment

will only continue to make the "situation more complex and more perilous" for the

Individual Proposed Defendants since they have already been embroiled in the

ongoing criminal investigation into Defendant.  (*Id.*).  In that vein, it contends that

an amendment will make matters worse and more costly for Defendant if Plaintiff

digs more deeply into the finances for itself and the Individual Proposed

Defendants.  (*Id.*).  And Defendant takes issue with Plaintiff's delay in trying to

add the Individual Proposed Defendants to its patent infringement claims when it

could have done so years ago when it filed this action.  (*Id.* at PageID.2873–74).

To add them now, Defendant says, would cause unnecessary cost and hassle to the

prospective Defendants, especially considering the limited monetary recovery

Plaintiff will receive if it prevails on its claims.  (*Id.*).

Plaintiff contends that Defendant will not suffer any *undue* prejudice as a

result of Plaintiff's amendment.  (ECF No. 95, PageID.2356; ECF No. 109,

PageID.3408–09).  First, it says the Court should ignore Defendant's contention

that the motion to amend is untimely.  On that issue, Plaintiff posits that it filed this

motion as soon as it could after it discovered PAP's existence and conferred with

Defendant's then-counsel.  (ECF No. 95, PageID.2353–55).  To that end, Plaintiff

maintains that it had no basis to name the Individual Proposed Defendants until it

learned about the allegedly fraudulent transfer of assets to PAP, an alleged

successor entity engaged in the same allegedly infringing conduct.  (ECF No. 109, PageID.3410).  Plaintiff also says any delay is Defendant's own fault since it did not disclose PAP's existence during discovery.  (ECF No. 95, PageID.2355–57).

Though Plaintiff acknowledges that the amendment will require additional discovery, it also points out that several discovery motions remain pending and that it has sought discovery concerning PAP from Defendant and PAP itself, but both entities refused to provide it.  (*Id.* at PageID.2356).  Plaintiff also asserts that an amendment would limit any prejudice Defendant QC may face since it would permit the parties and the Court to resolve the claims and counterclaims in a single action.  (*Id.* at 2356–57).

Finally, Plaintiff points out that the only prejudice that matters under Rule 15 is *undue* prejudice on the party opposing the motion to amend—not any prejudice a prospective defendant may face.  (ECF No. 109, PageID.3408–09).

"Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that *the opposing party will be prejudiced* if the movant is permitted to alter a pleading."  6 Wright & Miller's Federal Practice & Procedure § 1487 (3d ed. Sept. 2025 Update) (emphasis added and footnote omitted).  Though prejudice may result from delay, "[d]elay itself it not sufficient reason to deny a motion to amend.  Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be

granted." *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994) (citation modified).

Additionally, when evaluating a motion to amend, the court should assess whether

amendment will require the nonmovant "to expend significant additional resources

to conduct discovery and prepare for trial" or whether it will "significantly delay

the resolution of the dispute." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir.

1994); *see also Minor v. Northville Pub. Schs.*, 605 F. Supp. 1185, 1201 (E.D.

Mich. 1985) (referring to any additional delay or expense amendment may cause as

well as whether an amendment introduces new issues into the case).

In the Court's estimation, amending the pleadings now will not cause

Defendant any undue prejudice.  As an initial matter, Plaintiff is correct—the only

prejudice that matters under Rule 15 is prejudice to Defendant, the party opposing

the motion to amend.[3]  Thus, any prejudice that may befall PAP or the Individual

Proposed Defendants is irrelevant here.  More to the point, the Court agrees that

Plaintiff brought this motion as soon as practicable regarding PAP and the

Individual Proposed Defendants.  With respect to the former, Defendant "concedes

that [Plaintiff] acted relatively promptly."  (ECF No. 104, PageID.2882–83).  As to

the latter, Plaintiff had no reason to add the Individual Proposed Defendants until

after it learned about the allegedly fraudulent transfer of assets to PAP, a

---

[3] Though PAP opposed the motion to amend, the Court struck its filing from the record since PAP did not have standing to oppose the motion as it did not seek leave of the Court to do so.  (ECF No. 130).

purportedly sham entity devised so that the alleged infringing activity could

continue through a new corporate entity with allegedly common ownership.

Though Defendant disputes the accuracy of this characterization, defense counsel

did state on the record that PAP was created so that Defendant QC's business

could continue without the taint of Plaintiff's original allegations.  More

importantly, Plaintiff did not become aware of such developments until May 2025.

Considering it filed its motion just a few weeks later, it is difficult to conclude that

Plaintiff could have moved with any more diligence.

The Court also is not persuaded that Defendant will be unduly prejudiced as

a result of additional time or resources this amendment may require.  There remain

a number of ongoing discovery disputes—disputes that will likely produce

materials relevant to the claims Plaintiff wishes to bring against PAP and the

Individual Proposed Defendants.  Apart from the patent infringement claims that

Plaintiff initially brought against Defendant, the only additional claim against

Defendant is the fraudulent transfer claim—an issue that may very well be

informed by existing discovery disputes.  *See United Wholesale Mortg., LLC v.*

*Am.'s Moneyline, Inc.*, No. 22-10228, 2025 WL 502743, at *12 (E.D. Mich. Feb.

14, 2025) (concluding that the nonmovant could not show undue prejudice because

"substantial motion practice [was] largely the reason for th[e] case's protracted

timeline").

The only authority Defendant cited with respect to prejudice that remains relevant is the *Minor* case.  But there, the plaintiff sought leave to amend four to five years after the facts that gave rise to the proposed amendments.  605 F. Supp. at 1200.  Even worse, the plaintiff in *Minor* wanted to add three new counts and offered "no reason for her failure to include the present allegations in her original complaint or her first amended complaint."  *Id.* at 1201.  Though Plaintiff moves to add claims and parties here, it did so as soon as it was practicable to do so after learning about the facts that prompted this motion and provided its rationale for doing so.

Finally, it serves the interests of judicial economy to resolve these issues in this action rather than require Plaintiff to bring a separate lawsuit that raises the same issues raised in the proposed amendment.  As defense counsel stated during the motion hearing, PAP exists so that Defendant's business can continue without the stigma now purportedly associated with Defendant as a result of this litigation.  If Plaintiff is able to prove that Defendant QC infringed on the asserted patents and that PAP sold the same accused infringing parts, then Plaintiff will show that QC also committed patent infringement.  There would be no need for a separate action to litigate the same claims on essentially the same facts.  And since PAP received

the accused infringing parts, at least in part,[4] from Defendant, it would be more efficient to litigate the fraudulent transfer claim and other theories of liability in a single action.

Defendant's other arguments are not persuasive.  Its contention that Plaintiff is responsible for the devastation of Defendant's business is the gravamen of its counterclaims which remain to be proven.  And Defendant cited no authority to buttress its position that the consequences of bad publicity support a finding of prejudice.  Moreover, if Defendant relies on the aforementioned Detroit News article for this position, the Court wonders how an article published in February 2024 can create bad publicity that required the creation of PAP in December 2023. The Court also views this latter position with some skepticism since Defendant essentially suggests that any amendment is prejudicial if the original pleading caused the defendant to suffer an adverse action, a possibility that exists in any case brought before the Court.

In all, the Court does not find that the proposed amendment will unduly prejudice Defendant.

---

[4] Plaintiff's counsel asserted that PAP imports products from the same Chinese manufacturer that Defendant used.

>    b.    *Futility*

Amendment of a complaint is futile when the proposed amendment "'cannot withstand a Rule 12(b)(6) motion to dismiss." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010)).  When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels or conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Defendant asserts that each of Plaintiff's claims and proposed theories of liability are futile.  The Court is not convinced.

*Counts I–X*.  Just as in Plaintiff's original pleading, the first ten counts of the proposed pleading are for design patent infringement of the same ten design patents Plaintiff initially identified.  As Plaintiff's proposed amended complaint does not include new infringement contention charts, it stands to reason that Plaintiff relies on the same charts for its proposed amendment.  Plaintiff's counsel confirmed as much during the motion hearing.

Defendant argues that Plaintiff's infringement claims are futile because its infringement contention charts are insufficient and show that Plaintiff did not complete an adequate Rule 11 pre-filing investigation.  (ECF No. 104, PageID.2874–75).  This argument is a familiar one since Defendant raised the same points in prior motions.  (*Id.* at PageID.2875) (citing its prior briefs).  This contention fails for the same reasons as it did before.  (ECF No. 113, PageID.3549–61).

Defendant's position is that Plaintiff fails to state plausible infringement claims because its infringement contention charts do not contain images of the accused infringing products that correspond to every angle of each respective patent drawing.  But as the Court explained previously, infringement contentions are not "intended to require a party to set forth a *prima facie* case of infringement

and evidence in support thereof." *Robert Bosch LLC v. Snap-On Inc.*, No. 12-11503, 2013 WL 673718, at *3 (E.D. Mich. Feb. 25, 2013); *see also id.* at *2 ("[I]nfringement contentions are not meant to provide a forum for litigation of the substantive issues.").  Indeed, the parties seemed to recognize this as they both represented that the claim charts are immaterial to the motion to amend during the November status conference.  Nor did Defendant identify any authority that requires infringement contention charts to contain images from all angles; indeed, Plaintiff previously cited persuasive authority that concluded there are "no cases requiring a specific number of views." *simplehuman LLC v. iTouchless Housewares & Prods., Inc.*, No. 19-cv-02701-HSG, 2019 WL 5963245, at *3 (N.D. Cal. Nov. 13, 2019).  Rather, "numerous cases have denied motions to dismiss or granted summary judgment while citing only a few possible views." *Id.* (collecting cases).

And to go one step further, Defendant did not cite authority that held that a sufficient pre-filing investigation under Rule 11 required an all-angles approach to infringement contentions.  In fact, the Court identified authority from this Circuit that suggested the opposite conclusion. *See Checkpoint Sys., Inc. v. Hangzhou Century Co.*, No. 5:11CV1199, 2012 WL 2159257, at *7 (N.D. Ohio June 13, 2012) (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)) ("'[I]n the context of patent infringement actions,' Rule 11

requires that an attorney 'at a bare minimum, apply the claims of each and every patent that is being brought in the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted.'").

More to the point, Defendant has not articulated the standard for design patent infringement claims—the ordinary observer test—let alone applied it to the allegations in Plaintiff's proposed pleadings. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (quoting *Gorham Co. White*, 81 U.S. 511, 528 (1871)) ("[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."). As the party asserting futility, Defendant bears the burden on this issue—the Court will not do Defendant's work for it. If Defendant wishes to develop its plausibility argument, then it can do so in the appropriate dispositive motion. But Defendant's effort is not sufficient to prevail here.

Separately, Defendant also argues that Plaintiff's first patent infringement claim is doomed to fail because the patent itself is invalid. (ECF No. 104, PageID.2875) (referring to Defendant's expert's report). This may very well be true, but the Court cannot consider materials outside the proposed pleadings. *See*

22

*Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 42021 (6th Cir. 2000) (rejecting district court's use of materials outside the proposed pleadings in its futility analysis and remanding for further proceedings).[5]  So this contention does not affect the Court's futility analysis.

In short, the Court does not agree that Plaintiff's design infringement contention claims are futile based on the arguments presented here.

***Count XI***.  In Count XI of its proposed amended complaint, Plaintiff raises its successor theory of liability against PAP for all of the Asserted GM Patents. (ECF No. 95-2, PageID.2416–18, ¶ 233–46).  Defendant argues that Plaintiff did not adequately plead that PAP is Defendant's successor.  (ECF No. 104, PageID.2879–80).  The Court disagrees.

"Michigan has adopted the traditional rule of successor liability, under which the successor in a merger ordinarily assumes all of its predecessor's liabilities, but a purchaser of assets for cash does not."  *Phillips 66 Co. v. Karbowski Tr.*, No. 15-CV-12164, 2015 WL 7075855, at *3 (E.D. Mich. Nov. 13, 2015) (citing *Foster v. Cone-Blanchard Mach. Co.*, 597 N.W.2d 506, 509 (Mich.

---

[5] Of course, on a Rule 12(b)(6) posture, the Court may refer to "exhibits attached [to the proposed pleadings], public records, [and] items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they refer are referred to in the [proposed] Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  Defendant's expert report does not fit within these criteria.

1999)).  And under Michigan law there are traditionally five exceptions in which a

cash-purchaser assumes its predecessor's liabilities:

> "(1) where there is an express or implied assumption of liability; (2)
> where the transaction amounts to a consolidation or merger; (3) where
> the transaction was fraudulent; (4) where some of the elements of a
> purchase in good faith were lacking, or where the transfer was without
> consideration and the creditors of the transferor were not provided for;
> or (5) where the transferee corporation was a mere continuation or
> reincarnation of the old corporation."

*Foster*, 597 N.W.2d at 509–10 (citing, in part, *Turner v. Bituminous Cas. Co.*, 244

N.W.2d 873, 878 n.3 (Mich. 1976)).  Michigan law also recognizes a sixth

exception, known as the continuity-of-the-enterprise exception, which is "a spinoff

of the traditional de-facto merger exception that applies *only* in the products-

liability context."  *Dabrowski v. Tubular Metal Sys., LLC*, 722 F. Supp. 3d 766,

770 (E.D. Mich. 2024) (citing *C.T. Charlton & Assocs., Inc. v. Thule, Inc.*, 541 F.

App'x 549, 552 (6th Cir. 2013) and *Commonwealth Land Title Ins. Co. v. Metro

Title Corp.*, 890 N.W.2d 395, 400–01 (Mich. Ct. App. 2016)).  "Importantly, the

continuity-of-the-enterprise exception is *not* the mere-continuation [or

reincarnation] exception," though Michigan courts have at times conflated the

requirements for these two exceptions.  *Id.* (citing *C.T. Charlton & Assocs., Inc.*,

541 F. App'x at 522).

Defendant, for its part, argues that it is unclear which exception to successor

liability Plaintiff promotes in its proposed amended complaint.  So Defendant

asserts that Plaintiff cannot prevail on either the continuity-of-enterprise exception nor the de facto merger exception.  Plaintiff argues that it asserts the mere continuation or reincarnation theory of successor liability.  (ECF No. 95-2, PageID.2416, ¶ 238 ("[PAP] is a mere continuation of [Defendant]"); ECF No. 109, PageID.3414).  To that end, Plaintiff rightly points out that Defendant erroneously relies on the continuity-of-enterprise exception as set forth in *Foster*, a products-liability case.  (*Id.*) (citing *Dabrowski*, 722 F. Supp. 3d at 770).

To satisfy the mere-continuation or reincarnation exception, the Court must assess "the totality of the circumstances, but only if the 'indispensable' requirements of common ownership and a transfer of substantially all assets are met first."  *C.T. Charlton & Assocs., Inc.*, 541 F. App'x at 554 (quoting *Stramaglia v. United States*, 377 F. App'x 472, 475 (6th Cir. 2010)).  Other relevant considerations include a continuity of employees, officers, location, and the type of business performed.  *See Dabrowski*, 722 F. Supp. 3d at 770 (quoting *In re Clements Mfg. Liquidation Co., LLC*, 521 B.R. 231, 258 (Bankr. E.D. Mich. 2014)).

In its proposed amended complaint, Plaintiff essentially alleges Defendant transferred its assets to Alden Hermez (the owner of PAP as well as the son and nephew of Defendant's co-owners), assets which included the accused infringing products.  Plaintiff also alleges that Tom Hermez was a manager at Defendant

before working as a manager for PAP.  Plaintiff further claims that Defendant's

"principals and/or officers . . . including the Individual Defendants, are also

principals and/or owners of [PAP], and also have an ownership stake in [PAP]."

(ECF No. 95-2, PageID.245, ¶ 245).[6]

Plaintiff also asserts that Defendant is or is now going out of business, a

development that required Plaintiff to transfer its assets to PAP (a transfer which

Defendant's then-counsel confirmed (ECF No. 95-9, PageID.2605)) so that PAP

could take over Defendant's business operations.  Defense counsel also confirmed

that Defendant is "essentially" out of business.[7]  PAP—which only came into

being one month *after* this litigation commenced—operates the same sort of

business as Defendant and even uses the same location and telephone number for

its operations; PAP's website is also only one letter different than Defendant's and

touts similar "price undercutting" as Defendant.  (*Id.* at PageID.2382, ¶ 49).  And

as mentioned, defense counsel stated on the record that PAP exists so that

---

[6] Though not alleged in Plaintiff's proposed pleadings, it did observe in its motion that PAP's publicly available Articles of Incorporation show that PAP issued 60,000 shares of stock. But the Articles filed with the State of Michigan do not identify who owns those shares.  While Defendant proffers a sworn statement from Alden Hermez saying that he is the sole shareholder, the Court cannot consider that sworn statement as it is outside the pleadings and not referred to in the proposed amended complaint.  *See supra* note 5.  Since the Articles of Incorporation are publicly available, the Court can consider that document in its futility analysis.

[7] During the motion hearing, defense counsel asserted that Defendant QC had not transferred all of its assets to PAP even though counsel also stated that Defendant is "essentially out of business and is no longer selling aftermarket parts."  (ECF No. 151, PageID.4475, 4479). But in any event, the test for successor liability requires the transfer of "substantially all" the assets, not the transfer of every asset.

Defendant's business may continue without the stigma that has supposedly plagued Defendant's operations following the initiation of this action.

Though Defendant contests many of these assertions, the Court must accept the factual allegations in Plaintiff's proposed amended complaint as true, especially in its futility analysis. Moreover, to the extent that Defendant disputes who is a principal or officer of Defendant and PAP, it is worth noting that those four individuals have not sat for depositions (depositions which the Court ordered to go forward last month). Thus, Plaintiff has been unable to verify with deposition testimony that issue. Accepting Plaintiff's proposed allegations as true, the Court concludes that Plaintiff has plausibly alleged common ownership and a transfer of substantially all assets such that its successor theory of liability is not futile based on the totality of the circumstances.

**Count XII**.[8]  Plaintiff seeks to add a fraudulent transfer claim under the Michigan Uniform Voidable Transactions Act ("MUVTA"), Mich. Comp. Laws § 566.31 *et seq*. Plaintiff specifically claims that Defendant "fraudulently transferred assets to [PAP] with the intent to hinder, delay, or defraud" Plaintiff. (*Id.* at PageID.2418, ¶ 248). Plaintiff therefore raises an "actual intent" fraudulent transfer claim under the MUVTA. Mich. Comp. Laws § 566.34(1)(a).

---

[8] Plaintiff labeled both its successor theory of liability and the fraudulent transfer claim as Count XI. (ECF No. 95-2, PageID.2416–20). To avoid any confusion, the Court will refer to the fraudulent transfer claim as Count XII.

Defendant raises two grounds in support of its argument that Plaintiff's fraudulent transfer claim is futile.  First, it asserts that Plaintiff did not plead fraud with sufficiency as required under Federal Rule of Civil Procedure 9(b).  (ECF No. 104, PageID.2877–78).  Second, Defendant argues that Plaintiff lacks standing to raise such a claim under the MUVTA.  (*Id.* at PageID.2880).  These positions, however, are not persuasive.

Start with Plaintiff's standing under the MUVTA.  Only a creditor can bring a fraudulent transfer claim under the MUVTA.  *See* Mich. Comp. Laws § 566.34(1) ("[A] transfer made or obligation incurred by a debtor is voidable *as to a creditor*, . . . .") (emphasis added).  The MUVTA defines a "creditor" as "a person that has a claim."  Mich. Comp. Laws § 566.31(d).  In turn, a "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  Mich. Comp. Laws § 566.31(c).

Defendant claims that "[a] right to payment arises when a party has the right to a fixed sum, such as a default under a loan or lease agreement, a security interest, or a judgment."  (ECF No. 104, PageID.2880).  To that end, Defendant relies heavily on cases in which there was an enforceable judgment at the time the plaintiff raised the fraudulent transfer claim.  (*Id.*).  Defendant also suggests that

Plaintiff's MUVTA claim is premature since there is still a dispute over the right to payment.  (*Id.*) (citing *IBX Jets, LLC v. Paradigm Jet Mgmt.*, Case No. 1:16-cv-00229-RJJ, 2017 U.S. Dist. LEXIS 164159, at \*20–21, 2017 WL 3168930, at \*6 (W.D. Mich. June 9, 2017).

Defendant's position overlooks the definition of the term "claim" in the MUVTA.  As indicated, a right to payment exists "whether or not the right is reduced to judgment"; likewise, a right to payment can be "disputed" or "undisputed."  Mich. Comp. Laws § 566.31(c).  Here, the right to payment is currently disputed—that is, Defendant disputes its liability and, in turn, the damages for any supposed liability.  This does not translate to Plaintiff does not have a claim; after all, should Plaintiff prevail on its patent infringement claims, it will have a right to payment on those grounds.

Defendant's own cited authority supports this outcome.  In *IBX Jets, LLC*, the court did not dismiss the fraudulent transfer claim as premature as Defendant suggests in its brief; instead, the court characterized the defendants' claim that way because it had not yet proven it.  *See* 2017 WL 3168930, at \*6 (remarking that the defendants' fraudulent transfer claim was "premature" because they "presumed that [they] had a right to payment," but that "remain[ed] to be seen.").  The court thus denied—without prejudice—the defendants' motion for summary judgment on those claims.

Plaintiff therefore has standing to bring a fraudulent transfer claim under the MUVTA.

Now consider the heightened pleading standards under Rule 9(b).  Under that provision, a plaintiff "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This Court has recognized that Rule 9(b) applies to fraudulent transfer claims pursuant to Michigan law under certain circumstances.  *See In re NM Holdings Co., LLC*, 407 B.R. 232, 260 (Bankr. E.D. Mich. 2009) (regarding the MUVTA's predecessor, the Michigan Uniform Fraudulent Transfer Act ("MUFTA")); *Alter Domus, LLC v. Winget*, No. 23-10458, 2024 WL 1287612, at *5–6 (E.D. Mich. Mar. 26, 2024) (addressing the applicability of Rule 9(b) under the MUVTA).  But "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally" under the typical pleading standard articulated in Rule 8(a).  Fed. R. Civ. P. 9(b); *see also In re NM Holdings Co., LLC*, 407 B.R. at 261.  Moreover, "fraud is only one possible state of mind that can trigger MUVTA liability—an intent to hinder or delay a creditor are also sufficient[.]"  *Alter Domus, LLC*, 2024 WL 1287612, at *6 (indicating that the heightened pleading requirement did not apply to claims involving an actual intent to hinder or delay); *In re NM Holdings Co., LLC*, 407 B.R. at 261 ("When a plaintiff alleges that a debtor transferred property with actual intent to hinder or delay a creditor, but does not allege an actual intent 'to defraud'

a creditor, the claim is not one of actual fraud.  In this situation, Rule 9(b) does not apply[.]").

All that said, if the plaintiff alleges an actual intent "to defraud" his creditors, then he must "state with particularity the circumstances" surrounding the purportedly fraudulent transfer.  *In re NM Holdings Co., LLC*, 407 B.R. at 261.  To satisfy this heightened pleading requirement, the plaintiff must plead with particularity "the date of the transfer"; "the amount of the transfer (or if the transfer was of property other than money, the property that was transferred and its value)"; "the name of the transferor"; "the name of the initial transferee"; and "the consideration paid, if any, for the transfer."  *Id.* (citation omitted).

Yet there is an exception to Rule 9(b)'s particularity requirement.  As one district court in the Sixth Circuit has explained:

> "an exception to the Rule 9(b) particularity requirement exists when the relevant facts 'lie exclusively within the knowledge and control of the opposing party.'"  *Caboodles Cosm[s.,] Ltd. P'ship v. Caboodles, LLC*, 412 F. Supp. 2d 872, 878 (W.D. Tenn. 2006) (quoting *Wilkins ex rel. United Sates v. State of Ohio*, 885 F. Supp. 1055, 1061 (S.D. Ohio 1995)).  "In such a case, pleading upon information and belief is permissible," but the plaintiff "must still plead a statement of facts upon which the belief is based."  *Id.* (citing *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990)).  Moreover, "[a] court should hesitate to dismiss an action when the facts underlying the claim are within the defendant's control, especially when no discovery has been conducted."  *Id.* (citing *Michaels Bldg. Co. [v. Ameritrust Co., N.A.]*, 848 F.2d [674], 680 [(6th Cir. 1988)].

31

*Lindsey v. Collier*, No. 2:20-CV-00062, 2021 WL 3666906, at *6 (M.D. Tenn. Aug. 18, 2021); *see also First Fin. Bank v. Fox Cap. Grp., Inc.*, 692 F. Supp. 3d 762, 771 (S.D. Ohio 2023).

Defendant argues that Plaintiff has not alleged the circumstances surrounding the allegedly fraudulent transfer with particularity.  But Plaintiff's MUVTA claim alleges that Defendant acted with intent "to hinder, delay, or defraud" Plaintiff.  So while Plaintiff needed to allege with particularity the circumstances surrounding the transfer on its claim of actual intent to defraud Plaintiff, it was not required to do so with respect to its claim that Defendant acted with actual intent to hinder or delay.  *See Alter Domus, LLC*, 2024 WL 1287612, at *6.  Thus, the entirety of Plaintiff's proposed fraudulent transfer claim is not futile for failure to satisfy Rule 9(b) heightened pleading requirement.

Plaintiff is also correct that the exception to Rule 9(b) applies here.  That is, the circumstances surrounding the transfer of assets are only known to Defendant and PAP, and neither had produced the asset purchase agreement in discovery when Plaintiff filed this motion.[9]  So the fact that Plaintiff did not allege with particularity when the transfer occurred, what was transferred, and the amount paid

---

[9] As the asset purchase agreement is outside the proposed pleadings and does not fit within the criteria articulated in *Bassett*, the Court cannot consider it here.  *See supra* note 5.

for that transfer does not render the proposed MUVTA claim futile.  *See Lindsey*, 2021 WL 3666906, at *6; *First Fin. Bank*, 692 F. Supp. 3d at 771.

To go one step further, courts often rely on the "badges of fraud" outlined in the statute to infer the transferor's fraudulent intent from the circumstances surrounding the transfer.  *See Sumpter v. United States*, 302 F. Supp. 2d 707, 723 (E.D. Mich. 2004) ("Actual intent to hinder, delay, or defraud may be difficult to prove by direct evidence . . . .  Consequently, courts generally rely on traditional 'badges of fraud' to establish fraudulent intent.").[10]  The MUVTA lists a non-exclusive list of eleven badges of fraud.  Mich. Comp. Laws § 566.34(2)(a)–(k).  And "'[a] concurrence of several badges of fraud will always make out a strong case.'"  *United States v. Porath*, 764 F. Supp. 2d 883, 900 (E.D. Mich. 2011) (citation omitted), *aff'd*, 490 F. App'x 789 (6th Cir. 2012).

Conspicuously missing from Defendant's brief is an argument pertaining to the applicability of the MUVTA's badges of fraud.  Yet Defendant has the burden of establishing futility.  *See White v. Emergency Medicing Billing & Coding Co.*,

---

[10] The *Sumpter* Court assessed the version of the Michigan fraudulent transfer statute that was superseded by the Michigan Uniform Fraudulent Transfer Act.  302 F. Supp. 2d at 723.  But the changes in the statute's definitions were "largely immaterial."  Since then, Michigan has adopted the Michigan Uniform Voidable Transactions Act.  The MUVTA did not substantially change the criteria for actual or constructive fraud under Michigan law.  *See RPAD, LLC v. Dinoto*, No. 338280, 2018 WL 6252492, at *3–4 (Mich. Ct. App. Nov. 29, 2018) (acknowledging the amendments to the UFTA, Michigan's adoption of the UVTRA, and suggesting that both statutes use the same criteria to define the "the species of fraudulent transfers" identified therein).

No. 11-14207, 2013 WL 4551919, at *4 (E.D. Mich. Aug. 28, 2013) (collecting cases). The onus was therefore on Defendant to explain how Plaintiff did not adequately allege facts from which the Court could infer the MUVTA's badges of fraud. To reiterate, the Court will not make the argument for Defendant.

In all, Plaintiff does have standing to bring a MUVTA claim. Rule 9(b)'s heightened pleading standard does not apply to Plaintiff's claim that Defendant intended to hinder or delay Plaintiff, and where the particularity requirement does apply, so too does the exception for information that is solely in Defendant's possession. And Defendant failed to satisfy its burden on showing futility because it did not address the applicability of the MUVTA's badges of fraud to Plaintiff's proposed pleadings. Plaintiff's MUVTA claim is not futile.

*Alter Ego Liability*. Though not a separate count, Plaintiff also wishes to add an alter ego theory of liability to its case so that it may pierce the corporate veil and hold the Individual Proposed Defendants liable for perpetuating fraud. (ECF No. 95, PageID.2345–46). Specifically, Plaintiff alleges in its proposed complaint that Defendant and PAP are alter egos for the Individual Proposed Defendants. (ECF No. 109, PageID.3412 n.2).

Defendant argues that Plaintiff has made no allegations sufficient to pierce the corporate veil. First, it asserts that "piercing the corporate veil is a remedy rather than a pre-judgment cause of action." (ECF No. 104, PageID.2876–77).

34

Defendant therefore reasons that Plaintiff cannot pursue its proposed alter ego theory of liability until it has secured a judgment in its favor.  Second, Defendant states that Plaintiff has only lodged conclusory allegations that merely recite the elements for an alter ego theory of liability.  (*Id.* at PageID.2875–76).  The Court addresses each contention in turn.

Plaintiff does not dispute that its alter ego theory of liability is an equitable remedy and not an independent cause of action.  (ECF No. 109, PageID.3412).  But it does contest Defendant's belief that Plaintiff cannot raise this theory of liability without first obtaining a judgment against Defendant.  On this issue, the Court agrees with Plaintiff.  As an initial matter, Defendant relies heavily on a Michigan Court of Appeals case, *Gallagher v. Persha*, 891 N.W.2d 505 (Mich. Ct. App. 2016).  This case, however, dealt with whether a judgment-plaintiff could file a separate action seeking to pierce the corporate veil "to enforce the outstanding judgment against responsible shareholders . . . even if no separate cause of action ha[d] been pleaded[.]"  *Gallagher*, 891 N.W.2d at 509.  The *Gallagher* Court did not preclude a plaintiff from raising an alter ego theory of liability in the first case—e.g., the case in which the plaintiff first secured a judgment.

More importantly, courts have addressed an alter ego theory of liability where a judgment has not yet been secured.  *See Lyngaas v. Curaden AG*, No. 17-CV-10910, 2019 WL 2231217, at *5–10 (E.D. Mich. May 23, 2019) (addressing

alter ego liability after determining that one of the defendants was not entitled to summary judgment on the one substantive cause of action against it); *Dissolved Air Floatation Corp. v. Kothari*, Case No. 14-C-1223, 2016 WL 5376192, at *4 (E.D. Wis. Sept. 26, 2016) ("Alter ego claims are often litigated within the context of the underlying litigation, meaning that plaintiffs need not wait to obtain a judgment against the corporation before they try to prove that the individual owner is personally liable.") (collecting cases). Here, Plaintiff seeks judgment on its patent infringement claims and fraudulent transfer claims; accordingly, its pursuit of an alter ego theory of liability against the Individual Proposed Defendants is not premature.

Turn now to the merits of Plaintiff's alter ego theory of liability. "Michigan law respects the corporate form." *Gallagher*, 891 N.W.2d at 509. Even so, in the patent infringement context, "[c]orporate officers can be personally liable for their own acts of infringement, even if those acts were committed in their corporate capacity." *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1358 (Fed. Cir. 2021). Though "the 'corporate veil' shields a company's officers from personal liability for direct infringement that the officers commit in the name of the corporation," a plaintiff may pierce that corporate veil if "the corporation is the officers' 'alter ego.'" *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010); *see also Glob. Traffic Techs. LLC v. Morgan*, 620 F. App'x 895,

36

908 n.6 (Fed. Cir. 2015) (referring to "the traditional rule that a person is personally liable for his own tortious actions, even if committed as a corporate officer").

To determine whether Plaintiff plausibly alleged an alter ego theory of liability, the Federal Circuit has instructed district courts to use the law of the regional circuit.  *See Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007) ("Since the alter ego issue is not unique to patent law, we apply the law of the regional circuit."); *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1380 (Fed. Cir.  2004) (applying Fifth Circuit law to determine whether a party was an alter ego for purposes of infringement liability "[b]ecause the alter ego issue is not unique to patent law"); *Wordtech Sys., Inc.*, 609 F.3d at 1314 ("We have held that the doctrine of piercing the corporate veil involves 'general principles.'").  In the Sixth Circuit, veil piercing depends on state law. *See In re DuMouchelle*, 667 B.R. 122, 132–33 (Bankr. E.D. Mich. 2023) (citing *In re Howland*, 674 F. App'x 482, 485 (6th Cir. 2017)), *report and recommendation adopted*, 663 B.R. 349 (E.D. Mich. 2024).

"'Michigan courts will not pierce the corporate veil [to find alter ego liability] unless (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss.'"  *Prime All. Bank, Inc. v. Great Lakes*

*Tissue Co.*, No. 23-10564, 2024 WL 2607277, at *7 (E.D. Mich. May 24, 2024)

(quoting *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783,

798 (6th Cir. 2008)) (citations omitted).  That said, "there is no mechanical test for

determining when the existence of a separate entity must be disregarded," and

"whether to disregard the separate existence of an entity depends on the totality of

the circumstances."  *Green v. Ziegelman*, 873 N.W.2d 794, 807 (Mich. Ct. App.

2015).  Thus, "the court should examine the totality of the evidence surrounding

the owner's use of an artificial entity and, in particular, the manner in which the

entity was employed in the matter at issue to determine whether the owner

operated the entity as his alter ego—that is, as a sham or mere agent or

instrumentality of his or her will."  *United Wholesale Mortg., LLC*, 2025 WL

502743, at *14 (quoting *Franklin Cap. Funding, LLC v. Austin Bus. Fin., LLC*, 676

F. Supp. 3d 515, 526–27 (E.D. Mich. 2023)) (citation modified).

On the "mere instrumentality" requirement, courts consider various factors.

For instance, the Sixth Circuit previously determined that the transfer of assets

essential to running the business, including employees and customers, supported a

finding that the corporate entity was a mere instrumentality of another entity.

Courts also consider: "(1) whether the corporation is undercapitalized, (2) whether

separate books are kept, (3) whether there are separate finances for the corporation,

(4) whether the corporation is used for fraud or illegality, (5) whether corporate

38

formalities have been followed, and (6) whether the corporation is a sham."

*Lyngaas*, 2019 WL 2231217, at *9 (quoting *Lim v. Miller Parking Co.*, B.R. 688,

706 (Bankr. E.D. Mich. 2016)) (citation omitted); *see also Glenn v. TPI Petroleum,*

*Inc.*, 854 N.W.2d 509, 520 (Mich. 2014).[11]

Here, Plaintiff has plausibly alleged that Defendant and PAP are "mere

instrumentalities" of the Individual Defendants.  Plaintiff alleges that Nathir

Hermez, Kanaan Hermez, and Tom Hermez are all either principals or officers of

both Defendant and PAP.  (ECF No. 95-2, PageID.2383, ¶¶ 56–57).  It also asserts

that Defendant transferred substantially all of its assets to PAP and has

"essentially" gone out of business.  PAP—which Alden Hermez formed just one

month after Plaintiff filed this action and operates from the same physical address

using the same telephone number and business model, as well as a virtually

identical URL—then allegedly stepped into Defendant's shoes.  To reiterate,

defense counsel argued that Alden created PAP so that Defendant could carry on

its business unabated.  In doing so, PAP purportedly continued the alleged

infringement of Plaintiff's design patents.  In other words, Plaintiff claims that

Defendant and PAP are sham entities.  This is sufficient to establish the first

---

[11] Though these factors are used to determine when one entity is the "mere
instrumentality" of another entity, these factors have also been assessed when an entity is alleged
to be the alter ego of individual defendants.  *See Yoe v. Crescent Sock Co.*, No. 1:15-CV-3-SKL,
2015 WL 13847410, at *7 (E.D. Tenn. Dec. 11, 2015).

element for alter ego liability.  *See United Wholesale Mortg., LLC*, 2025 WL 502743, at *14 (citing *Servo Kinetics, Inc.*, 475 F.3d at 799) (finding the "mere instrumentality" requirement satisfied where a new entity—formed by the original entity's owners three months after being sued by plaintiff—took over the original entity's business after the original entity ceased operations); *Prime All. Bank, Inc.*, 2024 WL 2607277, at *7 (concluding that the plaintiff plausibly alleged the first element of alter ego liability when the defendant transferred its assets to the two alleged alter ego entities which were operating out of the same office and business locations).

Plaintiff also plausibly alleged that the Individual Proposed Defendants used Defendant and PAP to "effect[ ] a fraud or wrong on the complainant."  *Green*, 873 N.W.2d at 807.  On this element, "it is not necessary to prove that the owner caused the entity to directly harm the complainant; it is sufficient that the owner exercised his or her control over the entity in such a manner as to wrong the complainant."  *Id.* (citing *Gledhill v. Fisher & Co.*, 262 N.W. 371 (Mich. 1935)).  As this Court has held elsewhere, a fraudulent transfer of assets shortly after being sued satisfied this element.  *Prime All. Bank, Inc.*, 2024 WL 2607277, at *8.  As Plaintiff alleged a plausible MUVTA claim, *see supra* Subsection III.B.1.b., Plaintiff satisfied this element.  Moreover, Plaintiff plausibly alleged its design

40

patent infringement claims, so it has adequately pleaded the "fraud or wrong" element.

Lastly, Plaintiff adequately addressed the final element—that is, it suffered an unjust loss.  This element is satisfied if, "considering the totality of the equities, the trial court would be consummating a wrong by honoring an entity's separate existence."  *Green*, 873 N.W.2d at 808 (citing *Gledhill*, 262 N.W. 371).  Here, Plaintiff's principal claim is that Defendant unlawfully infringed on its design patents.  Plaintiff claims that Defendant fraudulently transferred its assets—including the Alleged Infringing Products—to PAP.  Since PAP is now selling the same alleged infringing products, Plaintiff seeks to add PAP to its claims for patent infringement.  Considering that Plaintiff has plausibly alleged its patent infringement and fraudulent transfer claims, the concern is that the Individual Proposed Defendants will simply transfer their assets to another entity to continue the alleged infringement.  To that end, the Court concludes that Plaintiff plausibly alleged that it suffered an unjust loss and that the Court "would be consummating a wrong" if it were to honor Defendant's and PAP's separate existence here.

In all, the Court finds that Plaintiff adequately alleged its alter ego theory of liability.

### c.   Bad Faith

Defendant's final position under Rule 15 is that Plaintiff's motion to amend should be denied because Plaintiff filed its motion in bad faith.  In support of that position, Defendant asserts that Plaintiff's complaint includes allegations that are "not true and not provable."  (ECF No. 104, PageID.2881).  It also contends that Plaintiff's proposed amendment is only meant to harass the putative defendants because Plaintiff can only secure a low to mid-six figure damages award.  (*Id.* at PageID.2881–82).  In response, Plaintiff argues that it has a reasonable basis for its allegations and that discovery will support those assertions; it also states that the amount in controversy has no bearing on the facts giving rise to liability.  (ECF No. 109, PageID.3409–10).

The Court agrees with Plaintiff on this issue.  Though Defendant asserts that Plaintiff's proposed complaint contains false allegations that can be proven to be false, that is the purpose of discovery.  And Defendant cited no authority to support its position on this issue.  The Court also agrees with Plaintiff—any potential damages award has no bearing on liability.  Moreover, Plaintiff's proposed complaint includes requests for injunctive relief.  (*See, e.g.*, ECF No. 95-2, PageID.2420, ¶¶ (d)–(f)).  So, Plaintiff's concerns are not limited solely to damages.

The Court therefore does not find sufficient support in the record that Plaintiff filed its motion to amend in bad faith.[12]

### 2.   Rule 16

The parties dispute whether Plaintiff must satisfy Rule 16 for the Court to grant its motion.  Plaintiff asserts that it need not do so because the scheduling order did not set a deadline for amending the complaint and joining parties.  (ECF No. 95, PageID.2357).  That said, Plaintiff says that it satisfies Rule 16's good cause standard for modifying the scheduling order.  (*Id.* at PageID.2358–59).  Defendant argues that Plaintiff does not satisfy Rule 16 because Plaintiff did not act diligently with respect to the Individual Proposed Defendants.  (ECF No. 104, PageID.2882).  Defendant adds that amending the complaint would also be prejudicial to itself and the new defendants.  (*Id.* at PageID.2883).

The initial Scheduling Order did not include a deadline for a motion to amend.  Even so, there is persuasive authority that holds that Rule 16 still applies when there is no specific deadline for amending the complaint if granting the motion to amend would require amending other dates in the scheduling order.  *See Jones v. Cnty. of Tulare, California*, No. 1:17-CV-1260-SKO, 2018 WL 6271577,

---

[12] During the motion hearing, defense counsel questioned Plaintiff's motive behind filing this amendment because it could not identify another active case against an aftermarket replacement parts vendor in which Plaintiff pursued the claims it pursues here.  But to suggest that this is evidence of bad faith is pure speculation.  There may not be another active case because other aftermarket vendors have secured licenses or otherwise are not engaged in allegedly infringing behavior.

at *3 (E.D. Cal. Nov. 30, 2018) (collecting cases).  As that is the case here, the Court will address the merits of the parties' Rule 16 arguments.

Pursuant to Federal Rule of Civil Procedure 16(b)(4), "[a] schedule may be modified for good cause and with the judge's consent."  "In order to demonstrate good cause, [the movant] must show that the original deadline could not reasonably have been met despite due diligence and that the opposing party will not suffer prejudice by virtue of the amendment."  *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014); *see also Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020) (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)) ("'The primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet' the scheduling order's requirements, but courts also consider 'possible prejudice to the party opposing the modification.'").  The Court enjoys wide discretion under Rule 16(b)(4) but should deny when evidence of diligence is lacking.  *See Hartford Accident & Indem. Co. v. Greater Lakes Ambulatory Surgical Ctr. LLC*, No. 18-CV-13579, 2022 WL 1690159, at *1 (E.D. Mich. May 26, 2022) (citing *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843 (6th Cir. 2020)).

With respect to diligence, the Court has held that Plaintiff acted diligently as to both PAP and the Individual Proposed Defendants.  *See supra* Subsection III.B.1.a.  The same conclusion applies equally here.  And just like the Rule 15

44

argument, the only possible prejudice that matters here is what Defendant may face, not the prospective defendants.  *See Ross*, 567 F. App'x at 306 (referring to the "opposing party" when discussing prejudice); *Garza*, 972 F.3d at 879 (same). Likewise, the Court has determined that Defendant will not suffer undue prejudice as a result of Plaintiff's proposed amendment.  *See supra* Subsection III.B.1.a.

The Court therefore concludes that there is good cause under Rule 16(b)(4) for a modification of the current scheduling order to permit Plaintiff's proposed amendment.

### 3.    Rule 20

Finally, the parties contest whether the prospective defendants can be properly joined to this action under Federal Rule of Civil Procedure Rule 20.  Rule 20(a)(2) governs the permissive joinder of parties.  Under that provision, Plaintiff may add the prospective defendants if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2)(A)–(B).  The federal statute that governs the joinder of accused patent infringers largely follows Rule 20(a)(2).  35 U.S.C. § 299(a)(1)–(2).[13]  As

---

[13] "With respect to any civil action arising under any Act of Congress relating to patents, . . . parties that are accused infringers may be joined in one action as defendant or counterclaim defendants, or have their actions consolidated for trial, only if—"

the parties' arguments focused exclusively on the first prong of Rule 20(a)(2) (and by extension § 299(a)(1)), the Court understands that Defendant does not contest the second prong. (ECF No. 104, PageID.2885) (referring only to "the first prong of Rule 20").

Plaintiff says that Defendant, PAP, and the Individual Proposed Defendants may all be joined in this action because its claims against them all arise from the same series of transactions. (ECF No. 95, PageID.2360). More specifically, Plaintiff comes to this conclusion because (1) PAP is Defendant's successor; (2) Defendant sold its assets (including the accused infringing products) to PAP after Plaintiff initiated this action; (3) both entities sold or currently sell the same accused infringing products; and (4) the Individual Proposed Defendants are principals and/or officers of Defendant and PAP. (ECF No. 95, PageID.2360). Additionally, Plaintiff argues that the first prong is satisfied because he seeks to hold Defendant, PAP, and the Individual Proposed Defendants jointly liable on its

---

(1)    any right to relief is asserted against the parties jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and

(2)    questions of fact common to all defendant or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a)(1)–(2).

fraudulent transfer claim and aims to hold PAP and the Individual Proposed Defendants jointly and severally liable for its patent infringement claims. (*Id.*). Lastly, Plaintiff asserts that the Individual Proposed Defendants may be joined under Rule 20(a)(2) because Defendant and PAP are their alter egos; that is, the Individual Proposed Defendants created a sham entity to perpetuate a fraudulent scheme so they could continue to sell the Accused Products and infringe on Plaintiff's patents. (*Id.* at PageID.2361).

Defendant resists these contentions. First, Defendant argues that federal law does not permit the joinder of accused infringers simply because they are alleged to have infringed the same patents. (ECF No. 104, PageID.2884). Second, it argues that for joinder to be proper on the patent infringement claims, the claims must share an aggregate of operative facts; since Plaintiff says it only learned about PAP in May 2025, Defendant reasons that the claims and prospective defendants do not share an aggregate of operative facts. (*Id.* at PageID.2884–85). Third, Defendant claims that Plaintiff cannot properly join the prospective defendants to its "bare bone fraudulent transfer claim" since the authority Plaintiff relies on is inapposite. (*Id.* at PageID.2885 n.1). Lastly, Defendant states that Plaintiff cannot hold PAP and the Individual Proposed Defendants jointly and severally liable because Plaintiff has not adequately pleaded successor and alter ego liability. (*Id.* at PageID.2885).

Consider first the fraudulent transfer claim.  Plaintiff principally relies on this Court's decision in *Katebian v. Missaghi*, No. 18-13379, 2019 WL 1515411 (E.D. Mich. Apr. 8, 2019).  (ECF No. 95, PageID.2359–61).  In pertinent part, the *Katebian* Court addressed the plaintiff's first claim which sought a declaration naming him as the sole owner of an entity called Liberty & York as it related to defendants that purportedly did not have legal interests adverse to the plaintiff. 2019 WL 1515411, at *2–3.  Thus, the issue on the first claim was whether the plaintiff owned Liberty & York or one of the other defendants.  *Id.* at *4.  The Court determined that the answer to that question depended on the outcome of the plaintiff's claim that several defendants conspired to fraudulently transfer the plaintiff's ownership interest.  *Id.*  From there, the Court held that the fraudulent transfer claim satisfied Rule 20(a)(2)'s requirements for joinder because (1) the plaintiff alleged that the defendants harmed him as a result of the purportedly fraudulent transfer, and (2) the fraudulent transfer claim raised a question of fact or law that was common to all the defendants.  *Id.*

The same outcome is warranted here.  Just like in *Katebian*, Plaintiff alleges that the fraudulent transfer harmed it because it permitted PAP to continue the alleged infringing activity.  It also plausibly alleged alter ego liability thereby permitting Plaintiff to hold the Individual Proposed Defendants personally liable. Additionally, the fraudulent transfer claim raises a common question of law or fact

with respect to Defendant, PAP, and the Individual Proposed Defendants.  Thus, joinder is proper on Plaintiff's proposed MUVTA claim.

Defendant's arguments to the contrary are unavailing.  In a footnote, it contends that *Katebian* is factually distinguishable because that case involved a disputed ownership interest which required an analysis of allegedly forged documents and a conspiracy.  (ECF No. 104, PageID.2885 n.1).  While true, this does not change the *Katebian* Court's determination that the issue depended on the fraudulent transfer claim and the subsequent conclusion that the fraudulent transfer claim satisfied Rule 20(a)(2)'s requirements.  While Defendant also contends that the fraudulent transfer claim is "unsupported and premature," the Court has already determined otherwise.  *See supra* Subsection III.B.1.b.

Joinder is therefore proper with respect to the fraudulent transfer claim.

The final issue is whether PAP and the Individual Proposed Defendants can be joined to the patent infringement claims.  To begin, Defendant is correct on at least one issue: federal law states that "accused infringers may not be joined in one action . . . based solely on allegations that they each have infringed the patent or patents in suit."  35 U.S.C. § 299(b).  But Plaintiff does not rely solely on such allegations.  Plaintiff pursues plausible successor and alter ego theories of liability; it also pursues a plausible state-law fraudulent transfer claim.  That said, successor and alter ego liability do not automatically mean that joinder is proper.  Plaintiff

must still satisfy the strictures of Rule 20. *See Gray Constr., Inc. v. Envirotech Constr. Corp.*, No. CV 5:17-484-DCR 2018 WL 3341182, at \*3 (E.D. Ky. July 6, 2018) (quoting *Dottore v. Nat'l Staffing Servs., LLC*, 3:06CV1942, 2007 WL 2114668, at \*5 (N.D. Ohio July 20, 2007)) ("[A] surety, agent, alter ego, or successor may encounter liability indirectly or derivatively: it is not necessary for the surety, alter ego, or successor itself to have participated in the transaction giving rise to liability. Joinder of such parties may be appropriate in the requirements of Rule 20 are satisfied.").

As mentioned, Defendant argues that for joinder to be proper on these claims, there must be a shared aggregate of operative facts. (ECF No. 104, PageID.2884) (citing *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012)). And since Plaintiff says it only learned about PAP in May 2025, that is evidence that the claims and defendants do not share an aggregate of operative facts. (*Id.* at PageID.2884–85).

Defendant is mistaken in its logic. As has often been quipped, the absence of evidence is not evidence of absence. Simply because Plaintiff learned about PAP in May 2025 does not necessarily mean that there is not an aggregate of operative facts. Indeed, discovery would be needed to flesh that out. And while Defendant insists that PAP cannot be jointly and severally liable on the patent infringement claims because it did not come into being until 2023, a successor

entity—which Plaintiff has plausibly alleged PAP to be—need not have participated in the transaction(s) that gives rise to liability.  *See Gray Constr., Inc.*, 2018 WL 3341182, at *3.

In any event, Defendant is also mistaken as a matter of law.  It relies principally on the Federal Circuit's decision in *In re EMC Corp.*  In that case, the court held that, "[c]laims against *independent defendants (i.e., situations in which the defendants are not acting in concert)* cannot be joined under Rule 20's transaction or occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts."  677 F.3d at 1359 (emphasis added).  But this is not a case in which Plaintiff seeks to add independent defendants that are not acting in concert with one another.  Plaintiff's theory is that PAP has stepped into Defendant's shoes so that it may continue the alleged infringing acts.  Indeed, defense counsel stated as much when he indicated that PAP is a vessel through which Defendant can continue its business without the purported taint of this lawsuit.  To that end, Plaintiff asserts that the Individual Proposed Defendants devised PAP as a sham entity and transferred Defendant's assets to PAP.  This illustrates a coordinated scheme, not allegations that independent actors are simply infringing on the same products.

Notably, the Federal Circuit in *In re EMC Corp.* also pointed out that, "[i]t is clear that where defendants are alleged to be jointly liable, they may be joined

under Rule 20 because the transaction-or-occurrence test is always satisfied." 677

F.3d at 1356; *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (per curiam) (noting

that a joint tortfeasor is a permissive party).

On that note, "other courts, including the Supreme Court, have held that

parties that make and sell an infringing device are joint tort-feasors with parties

that purchase an infringing device for use or resale." *Shockley v. Arcan, Inc.*, 248

F.3d 1349, 1364 (Fed. Cir. 2001) (citing *Birdsell v. Shaliol*, 122 U.S. 485, 488–89

(1884)); *see also Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 871–72 (Fed. Cir.

2006). In *Shockley*, the Federal Circuit described a "manufacturing, supply[,] and

distribution relationship" between three entities, Sunex, Telesis, and Arcan. 248

F.3d at 1364. Telesis would import the products into the United States from Sunex

and resell them to Arcan which would sell the infringing products to the broader

public. *Id.* The Federal Circuit therefore held that Telesis was a joint tort-feasor

and consequently jointly and severally liable for damages assessed against Arcan.

*Id.*

Plaintiff alleges a similar dynamic in its proposed amendment. It claims that

Defendant "makes, uses, offers for sale, sells, and/or imports into the United

States" the accused infringing products. (ECF No. 95-2, PageID.2370, ¶ 2.).

Defendant then transferred assets which included the accused infringing products

to PAP which is alleged to be selling the same infringing products on the market.

That is, Defendant is a party that sold allegedly infringing products to another party which then purportedly resold the same infringing products to the broader public. This renders Defendant and PAP joint tort-feasors. *See Shockley*, 248 F.3d at 1364. And since Defendant and PAP are joint tort-feasors, joinder is permissible under Rule 20(a)(2). *See Temple*, 498 U.S. at 7; *In re EMC Corp.*, 677 F.3d at 1356.[14]

The Individual Proposed Defendants may also be properly joined under Rule 20(a)(2). As discussed, Plaintiff has adequately alleged alter ego liability. *See supra* Subsection III.B.1.b. Plaintiff's proposed complaint essentially alleges that the Individual Proposed Defendants orchestrated the fraudulent transfer of assets from Defendant to PAP so that PAP could continue the alleged infringing activity. That is, that Alden Hermez created PAP so that Nathir, Kanaan, and Tom could transfer the assets and keep Defendant's operations going through a different entity. In all, the Individual Proposed Defendants directed the import of the alleged infringing products into the United States, the transfer of those products to

---

[14] Even assuming the test Defendant relies on is appropriate here, Plaintiff would still prevail. Under that test, the same product or process must be involved; additionally, courts consider factors such as the existence of some relationship among the defendants, the use of identically sourced components, the overlap of the products' manufacture, and others. *In re EMC Corp.*, 677 F.3d at 1359–60. District courts "also enjoy considerable discretion when weighing the relevant factors." *Id.* at 1360. As argued in the briefing and as Plaintiff's counsel argued at the motion hearing, the products at issue are the same and come from the same Chinese manufacturer. There is also a plausibly alleged relationship between Defendant, PAP, and the Individual Proposed Defendants. Joinder is therefore proper under this test as well.

PAP, and PAP's sales of those products on the market. The Individual Proposed Defendants are therefore joint tort-feasors and may be joined to Plaintiff's patent infringement claims as well.

## IV.   CONCLUSION

For the above-stated reasons, Plaintiff's *Motion for Leave to File Its First Amended Complaint and Join Parties* (ECF No. 95) is **GRANTED**, and Defendant's *Motion for Leave to File Under Seal Exhibits to its Response to GM's Motion for Leave to File Its First Amended Complaint and Join Parties* (ECF No. 107) is **DENIED**. Plaintiff is **ORDERED** to file its amended complaint **within fourteen days of this Order**. Pursuant to Federal Rule of Civil Procedure 15(a)(3), Defendant, PAP, and the Individual Proposed Defendants are **ORDERED** to respond to Plaintiff's First Amended Complaint **within fourteen days of service of the amended pleading**.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to

a magistrate judge's ruling on a non-dispositive motion, the ruling remains in

effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich.

Local Rule 72.2.


Date: January 26, 2026                              s/Curtis Ivy, Jr.
                                                    Curtis Ivy, Jr.
                                                    United States Magistrate Judge