UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GM GLOBAL TECHNOLOGY
OPERATIONS, LLC,

                              Plaintiff,

v.

QUALITY COLLISION PARTS,
INC., *et al.*,

                              Defendants,

_____

QUALITY COLLISION PARTS,
INC., *et al.*,

                              Counter-
                              Plaintiffs

v.

GENERAL MOTORS COMPANY,
INC., *et al.*,

                              Counter-
                              Defendant.

_____/

Case No. 23-13026

Denise Page Hood
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## **ORDER ON PARTIES' PENDING MOTIONS (ECF Nos. 146, 148, 158, 164)**

Pending before the Court is Defendant/Counter-Plaintiff Quality Collision

Parts, Inc.'s *Motion to Stay* (ECF No. 146, 148)[1] and the related *Re-Filed*

---

[1] The Court is aware that Defendants filed a second motion to stay this morning as to all Defendants based upon different grounds, namely a United States International Trade Commission investigation that was commenced on March 10, 2026. (ECF No. 183). As

*Unopposed Motion for Leave to File Under Seal Exhibits to Its Motion to Stay* (ECF No. 158), and Plaintiff/Counter-Defendant GM Global Technology Operations, LLC's *Motion for Rule 37 Sanctions Against Quality Collision for Failure to Obey a Discovery Order* (ECF No. 164). The Court resolves these motions here.

## I.  BACKGROUND

After new counsel for Defendant Quality Collision Parts, Inc. ("QC") entered their appearances on January 5, 2026, but before the Court resolved Plaintiff GM Global Technology Operations, LLC's, ("GM") motion to amend on January 26, 2026, QC filed the present motion to stay. (ECF Nos. 138, 139, 140, 146, 148, 152). In that motion, QC asks the Court to stay this matter "until the conclusion of the ongoing criminal investigation and resulting criminal proceeding." (ECF No. 146, PageID.4249). Related to this motion is the renewed motion to seal exhibits included with the motion to stay. (ECF No. 148, 158).[2]

Notably, QC filed this motion a little more than a month after the Court denied their separate motion to stay depositions on December 8, 2025. (ECF No. 131). In that Order, the Court determined that QC had not satisfied its burden

---

Plaintiffs oppose that motion, it will be addressed at a later date following full briefing by the Parties.

[2] An unredacted version of the motion to stay is at ECF No. 148 and subject to the motion to seal.

regarding the sought after blanket assertion of the Fifth Amendment privilege for itself and its witnesses. (*Id.* at PageID.4012–16). Accordingly, the Court ordered that the depositions of Bashar Yalda, Nathir Hermez, Kanaan (Ken) Hermez, Alden Hermez, and Tom Hermez take place within thirty days of that Order being filed. (*Id.* at PageID.4026). After the Court granted Plaintiff's motion to amend, Nathir, Kanaan, Alden, and Tom Hermez are now parties here. (ECF No. 152, 174, 175).

But after the Court denied QC's motion to stay and granted Plaintiff's motion to compel depositions, QC's former counsel moved to withdraw from this matter on December 8, 2025—a motion the Court granted, in part, on December 16, 2025. (ECF Nos. 132, 135). Unsurprisingly, the ordered depositions did not take place while QC was seeking new counsel (December 16, 2025, to January 5, 2026). On January 6, 2026—the day after new counsel filed their respective appearances—Plaintiff notified QC that it intended to conduct the ordered depositions between January 22, 2026, and January 30, 2026. (ECF No. 146, PageID.4257; ECF No. 164, PageID.5075–76). After the parties conferred on January 8, 2026, QC represented that it would move to stay proceedings. (ECF No. 164, PageID.5076–77). Plaintiff opposed any such effort to stay the case and the ordered depositions. (*Id.*). That said, GM afforded QC thirty days from the appearance of new counsel to conduct the ordered depositions. (*Id.*). Yet QC

3

apparently did not provide dates for any such depositions, instead falling back on its then-forthcoming motion to stay. (*Id.* at PageID.5076–78).

Ultimately, Plaintiff noticed the ordered depositions to take place on varying dates in January 2026, all of which were scheduled to take place after QC filed the present motion to stay. (*Id.* at PageID.5078). Again, unsurprisingly, QC did not appear for the noticed depositions. Plaintiff, in turn, filed yet another motion for sanctions, this time focusing on QC's failure to appear for the court ordered depositions. (ECF No. 164). And in that motion, Plaintiff asks for sweeping relief, namely, the dismissal of QC's counterclaims, an adverse inference of willful infringement on its affirmative claims for patent infringement, and the prohibition of QC's witnesses from testifying at trial. (*Id.* at PageID.5073–74).

## II. DISCUSSION

Since there are essentially three motions at issue, the Court will address them in kind.

### A. QC's Renewed Motion to Seal (ECF No. 158)

On January 19, 2026, QC filed its initial motion to seal the exhibits attached to its motion to stay. (ECF No. 147). Because QC did not satisfy its burden according to controlling Sixth Circuit precedent, the Court denied that motion without prejudice and permitted QC to refile its motion by February 2, 2026. (ECF

4

No. 154). QC promptly did so. (ECF No. 158). The renewed motion is unopposed, and Plaintiff filed a brief in support of QC's motion. (ECF No. 169).

Though the parties differ on whether Plaintiff's brand protection strategy amounts to a trade secret or something akin to a trade secret, the Court is satisfied with the arguments presented in the briefing and finds that the parties have rebutted the presumption of public access in this instance. Accordingly, QC's *Re-Filed Unopposed Motion for Leave to File Under Seal Exhibits to its Motion to Stay* (ECF No. 158) is **GRANTED**.

### B. QC's Motion to Stay

As has been discussed in other filings, the Federal Government ("the Government") initiated a criminal investigation with QC as its focus for allegedly trafficking in counterfeit goods. (ECF No. 131, PageID.4006 n.1; ECF No. 146, PageID.4256). Indeed, as QC points out, the Government also initiated a civil forfeiture action against QC for unlawfully trafficking in counterfeit parts in violation of 18 U.S.C. § 2320. (ECF No. 146, PageID.4255; ECF No. 146-1, PageID.4271, ¶ 1 (citing 18 U.S.C. § 2320)). Accordingly, QC seeks to stay this action until the criminal investigation is completed and any criminal proceedings are concluded. (ECF No. 146, PageID.4249). In doing so, QC makes a familiar argument—that absent a stay, QC and its witnesses are forced into "the impossible choice of invoking their Fifth Amendment rights to the detriment of their defense

5

in this action or not invoking such rights, to the potential detriment of their position in the criminal investigation." (*Id.* at PageID.4255). Thus, QC reasons, a stay of this case is warranted under the applicable multi-factored test.

True to form, Plaintiff disagrees. For one thing, Plaintiff insists that QC is simply moving for the same relief that the Court has already denied; that is, staying the aforementioned depositions. So, the argument goes, the Court should treat the motion to stay as an untimely motion for reconsideration of the Court's December 8, 2026, Order and deny the request for reconsideration. (ECF No. 160, PageID.4988–96). And for another, Plaintiff contends that the circumstances in this case do not warrant the requested stay. (*Id.* at PageID.4996–5004).

> 1.  Whether QC's Motion Should be Treated as a Motion for Reconsideration

As an initial matter, the Court disagrees with Plaintiff's characterization of QC's motion to stay as a motion for reconsideration. QC's prior motion to stay sought much more limited relief as it focused on Plaintiff's attempt to conduct five separate depositions. (ECF No. 51). At that time, Plaintiff read that motion as essentially seeking an entire stay of this matter. (ECF No. 63) (analyzing QC's prior stay motion under *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014) for staying a civil action during pendency of criminal matters). But QC expressly rejected the notion that it was trying to stay this entire case, a rejection the Court noted in its Order from December 8, 2025. (ECF No. 131, PageID.4015

n.2) (citing ECF No. 71, PageID.1482).  Thus, there is no Order from the Court in the record determining whether a full stay is warranted in this case pursuant to *E.M.A. Nationwide, Inc.*

"[A] motion for reconsideration is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier but were not." *Smith ex rel. Smith v. Mount Pleasant Pub. Schs.*, 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)).  "A motion for reconsideration 'addresses only factual and legal matters that the court may have overlooked. . . .'  It is improper on a motion for reconsideration to 'ask the court to rethink what [it] had already thought through—rightly or wrongly.'" *Carter v. Robinson*, 211 F.R.D. 549, 550 (E.D. Mich. 2003) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).  Put simply, "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).

Because the Court has not addressed whether a full stay is warranted, there is nothing for the Court to correct in that respect, nor does QC's present motion to stay direct the Court to matters it may have overlooked in its December 8, 2025, Order.  Rather, the Court treated QC's prior motion to stay depositions for what it

was: an unsuccessful blanket assertion of its Fifth Amendment privilege.  And QC does not revisit that determination in its present motion, unlike the cases cited in Plaintiff's briefing.  (ECF No. 160-1, PageID.5009 (treating a second motion for a certificate of appealability as a motion for reconsideration because the Court had already denied the petitioner a certificate of appealability); ECF No. 160-2, PageID.5012 (same)).

While the Court acknowledges that the effect of a full stay would essentially stay the ordered depositions, the vehicle QC has chosen to do so is different and uses a different substantive test.  Since QC is not asking the Court to reconsider its prior determination on its blanket assertion of its Fifth Amendment privilege, the Court will not treat the present motion to stay as a motion for reconsideration.

### 2.    Whether a Full Stay is Warranted

As the Sixth Circuit has noted, "'nothing in the Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment . . . and 'there is no requirement that a civil proceeding be stayed pending the outcome of criminal proceedings." *E.M.A. Nationwide, Inc.*, 767 F.3d at 627 (quoting *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007) and *S.E.C. v. Novaferon Labs, Inc.*, 941 F.2d 1210 (6th Cir. 1991) (unpublished table decision)); *see also Bowman v. City of Flint*, No. 21-CV-12845, 2023 WL 129736, at *1 (E.D. Mich. Jan. 9, 2023) (quoting *S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376

8

(D.C. Cir. 1980) (en banc)) ("'The Constitution . . . does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings.'").  In determining whether a stay is warranted, district courts have broad discretion. *E.M.A. Nationwide, Inc.*, 767 F.3d at 627 (citation omitted).  Ultimately, the burden is on the movant "'to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order.'"  *Id.* at 628 (quoting *Ohio Env't Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)).

To guide the exercise of its discretion, courts in the Sixth Circuit consider six factors when evaluating the propriety of a stay.  Specifically, courts consider:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Id.* at 627 (citation modified).  Apart from these six factors, courts also consider "the extent to which the defendant's [F]ifth [A]mendment rights are implicated" and whether a stay would further the interests of judicial economy.  *Id.* at 627–28. (citations omitted).  All in all, however, "[t]he most important factor is the balance of the hardships."  *Id.* at 628.

9

***Overlap Between Civil and Criminal Cases***.  Although much of the argument on this factor in QC's brief is redacted, the argument aligns with QC's theory on their counterclaims, which is that Plaintiff and the Government worked closely together, hand-in-glove, to arrange the July 2022 raids that serve as the impetus for the civil cases against QC as well as the concurrent criminal investigation.  (ECF No. 164, PageID.4259–61).  From there, QC asserts that "[Plaintiff's] knowledge of, and involvement in, the government's investigation are disputed factual issues that overlap directly with the ongoing criminal investigation."  (*Id.* at PageID.4261).  But, QC says, its ability to conduct discovery on the nature of Plaintiff's involvement is limited by the Government's invocation of certain privileges thereby forcing it to litigate blindly, all while "under the risk of criminal exposure."  (*Id.* at PageID.4262).  QC also relies heavily on the fact that the Government requested and received a stay in the civil forfeiture case because of the relationship between that action and the criminal investigation.  (*Id.*).  In short, QC argues that "[a]t their core," the criminal investigation and this action involve "the issue of QC[ ] allegedly engaging in the improper sale of aftermarket parts for GM vehicles."  (*Id.* at PageID.4262).

Plaintiff argues that QC has failed to show the type of overlap needed to warrant a stay, just like it did on its earlier motion to stay depositions.  (ECF No. 160, PageID.4998–99).  It also asserts that there can be no overlap between the two

10

cases because there is no criminal indictment. (*Id.* at PageID.4998). And in any event, Plaintiff points out that patent infringement and trademark counterfeiting are two different IP violations with different standards and test—an observation QC does not contest. (*Id.* at PageID.4999). Plaintiff also posits that any suggestion that the criminal investigation and this case involve the same set of parts "is speculative." (*Id.* at PageID.4999–5000).

In response, QC contends that Plaintiff is mistaken and that it "ignores the circumstances giving rise to GM's claims." (ECF No. 163, PageID.5058). In essence, QC argues that the "same governmental raid, which involved GM assessing materials owned by QC[ ] in coordination with the government for the purpose of allegedly identifying patent infringement and/or possession of counterfeit parts, provided the same underlying circumstances that supported the forfeiture action . . . ." (*Id.*). This is pertinent, according to QC, because the Government requested and received a stay in the forfeiture action. (*Id.* at PageID.5059).

On this factor, "the Court considers the similarities between the legal issues and subject matter such as the charges, fact issues, witnesses, and evidence." *S.E.C. v. Bongiorno*, 594 F. Supp. 3d 938, 943 (N.D. Ohio 2022). For this factor to fall in favor of a stay, there must be the "existence of a nexus between the parallel proceedings sufficient to show that such proceedings are related and involve

11

substantially similar issues." *Vision Real Est. Inv. Corp. v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:18-CV-00014, 2019 WL 7461198, at *2 (M.D. Tenn. Dec. 16, 2019).

The Court is not convinced that there is substantial overlap in this case. In *E.M.C. Nationwide*, the Sixth Circuit deemed this factor neutral where no criminal indictment had been filed since the lack of an indictment made it unclear what the criminal charges may be. 767 F.3d at 628. The panel later concluded that, *"[e]ven if they were to overlap*, because there is not a criminal case, it cannot be said that this factor weighs" in favor of a stay, even though a criminal investigation had been launched into the movants' business activities. *Id.* (emphasis added). QC tries to get around this by referring to the forfeiture action's reference to 18 U.S.C. § 2320, asserting that "the impending charges relate" to that statute. (ECF No. 163, PageID.5058–59). While QC rightfully suggests that charges under § 2320 are likely, if charges are brought at all, there is no way to know whether those will be the only criminal charges filed. So there is still some uncertainty regarding the scope of the criminal investigation. And in any event, the Sixth Circuit concluded that even if there were overlap, this factor would not favor a stay "because there is not a criminal case." *See Nationwide Recovery, Inc. v. City of Detroit*, No. 17-CV-12378, 2017 WL 6032552, at *2 (E.D. Mich. Dec. 6, 2017) (citing *E.M.A. Nationwide, Inc.*, 767 F.3d at 628) (concluding that first factor did not favor a stay

12

despite supposed overlap between criminal investigation and withdrawn counterclaim because there was no pending criminal case or indictment).

Even if the Court were to set aside the lack of a criminal case, there still would not be much overlap. Limiting the analysis to the alleged counterfeiting, Plaintiff accurately points out that patent infringement and trademark counterfeiting are different IP violations and use different tests. As such, QC has not shown how the legal issues in any potential criminal matter are coextensive with the legal issues related to Plaintiff's patent infringement claims; accordingly, the subject matter is different. *See Chao*, 498 F. Supp. 2d at 1039.

In its principal brief, QC argues that "GM's knowledge of, and involvement in, the government's investigation are disputed factual issues that overlap directly with the ongoing criminal investigation." (ECF No. 146, PageID.4261). Apart from this conclusory statement, however, QC does not explain how Plaintiff's knowledge of or participation in the Government's criminal investigation is pertinent to the Government's ability to prove the elements for counterfeiting. Yes, information provided by Plaintiff was used in support of the search warrant application that ultimately led to the July 2022 raids. But QC has not articulated how Plaintiff's knowledge or participation impacts the Government's ability to prove its case in a possible criminal proceeding. Even though it is QC's burden to

establish that a stay is warranted, it has not shown how the legal issues related to counterfeiting overlap with the legal issues pertaining to patent infringement.

That said, QC says that the genesis for all of the legal proceedings against it, both civil and criminal, began with the July raids which only took place because of Plaintiff's relationship with the Government.  While the criminal investigation and Plaintiff's civil action may have the same starting point, they have diverged. Again, there are different alleged IP violations.  Moreover, Plaintiff's case has expanded to include new Defendants, new claims, and new theories of liability. (ECF Nos. 152, 156).  So while there may be a common origin for the proceedings, that is not enough for this factor to favor a stay.  *See Vision Real Est. Inv. Corp.*, 2019 WL 7461198, at *2 (determining that just "some overlap" still "weighs slightly against a stay").

Finally, QC relies heavily on the stay the Government obtained in the civil forfeiture case.  But this argument is unavailing on this factor as well.  If the criminal charges against QC are solely for counterfeiting, then a forfeiture action regarding the alleged counterfeiting necessarily overlaps with the criminal investigation.  What's more is that the Government started the criminal investigation and is the plaintiff in the civil forfeiture action.  And a stay is "'more appropriate when both actions are brought by the government.'"  *Chao*, 498 F. Supp. 2d at 1038 (quoting *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y. 1985)).

Here, the legal claims are unrelated to one another, and the Government is not a party to Plaintiff's patent infringement claims.

At bottom, QC has not shown a sufficient nexus between the criminal investigation and Plaintiff's civil action.  Accordingly, this factor does not fall in favor of a stay.

***Status of the Case***.  "'A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct.'"  *E.M.A. Nationwide, Inc.*, 767 F.3d at 628 (quoting *Trs. of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)); *Chao*, 498 F. Supp. 2d at 1037 ("In general, courts recognize that the case for a stay is strongest where the defendant has already been indicted, whereas pre-indictment requests for a stay . . . are usually denied.").  There are two reasons why the presence of an indictment makes a stay more appropriate.  First, "the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued," and second, "the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations."  *E.M.A. Nationwide, Inc.*, 767 F.3d at 628 (citation modified).

Accordingly, "courts generally do not stay proceedings in the absence of an indictment."  *Id.*; *see also In re Flint Water Cases*, No. 5:16-CV-10444, 2019 WL 5802706, at *2 (E.D. Mich. Nov. 7, 2019) (holding that this factor weighed against

15

a stay because there was no indictment); *Barton v. Galella*, No. 2:21-CV-00319-JRS-MG, 2023 WL 3436102, at \*2 (S.D. Ind. May 12, 2023) (denying motion to stay because there was no criminal indictment and collecting cases that held the same).

This factor does not favor QC. Not only is there no indictment, but QC admits that it "has no visibility as to [the] status" of the criminal investigation. (ECF No. 146, PageID.4254). To that end, QC says "QCP and its owners, employees, agents and representatives do not know which of them may be added as defendants in this action *or* whether they are targets of the criminal investigation." (*Id.* at PageID.4263). In other words, QC has no idea what the status of the criminal investigation is yet asks for the Court to stay proceedings anyway.[3]

Consequently, QC has not shown how this motion is any different from other pre-indictment motions to stay—motions which are ordinarily denied. *See Chao*, 498 F. Supp. 2d at 1037. And while QC refers to its Fifth Amendment concerns, the Sixth Circuit reasoned that the case for a pre-indictment stay is

---

[3] The Court notes that, in March 2025, QC argued that some action from the Government must have been forthcoming because the investigation "had been going on for more than three years" and there is a five-year statute of limitations for counterfeiting. (ECF No. 51, PageID.1104). And notably, the Government's investigation into QC started in March 2019 and the raids occurred in July 2022. (ECF No. 146-1, PageID.4274, ¶ 11a). It is now April 2026. Thus, it would seem that if the Government is going to act, the statute of limitations, if it has not already run, makes it such that the Government must act soon, if at all.

16

weaker because the chance of making an incriminating statement is not as great as if there was an indictment. *E.M.A. Nationwide, Inc.*, 767 F.3d at 628; *see also S.E.C. v. Glob. Express Cap. Real Est. Inv. Fund, I, LLC*, 289 F. App'x 183, 191 (9th Cir. 2008) ("The case for staying civil proceedings is weak when no indictment has been returned."). So QC's speculation regarding its Fifth Amendment interests is not enough to carry the day on this factor. Just as other courts have determined, this factor does not favor a stay in the absence of an indictment. *See Barton*, 2023 WL 3436102, at \*2; *In re Flint Water Cases*, 2019 WL 5802706, at \*2; *Nationwide Recovery, Inc.*, 2017 WL 6032552, at \*2; *Franz v. Oxford Cmty. Sch. Dist.*, No. 21-CV-12871, 2022 WL 883022, at \*3 (E.D. Mich. Mar. 24, 2022).

That said, QC is correct that the absence of an indictment is not necessarily conclusive. *See Chao*, 498 F. Supp. 2d at 1038 (recognizing that "a stay should not be categorically denied solely because the defendant has not yet been indicted"); *Walsh Sec. Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998) ("It is 'still possible' to obtain a stay, even though an indictment or information has not yet been returned, if the Government is conducting an active parallel criminal investigation."). But a pre-indictment stay is rare. In *Chao*, the court described the circumstances in which a pre-indictment stay may be appropriate. 498 F. Supp. 2d at 1038 (citing *Brock*, 109 F.R.D. at 119–21). Here, QC has made no effort to

explain why this case falls within the exception to the general rule.  Rather, on this factor, QC has only complained that this civil action has made it difficult to retain counsel related to the criminal investigation and taken issue with inaccurate information included in the affidavit submitted in support of the Government's search warrant application.  (ECF No. 146, PageID.4263–65).  But none of this speaks to the status of the criminal investigation.  And in any event, this case is not like *Chao* where the criminal investigation was sufficient for this factor to weigh in favor of a stay based on representations from the AUSA that an indictment was "an eventuality."  498 F. Supp. at 1039.  Again, QC has indicated it knows nothing about the status of the criminal investigation or whether charges are even forthcoming.  (ECF No. 146, PageID.4266).

Since there is no criminal indictment and QC has not explained how the Government investigation on its own is reason enough to warrant a stay like in *Chao*, this factor also does not favor a stay.

***Balance of the Hardships***.  As mentioned the balance of the hardships—e.g., the third and fourth factors—are the most important when evaluating the propriety of a stay.  *E.M.A. Nationwide, Inc.*, 767 F.3d at 628.  Here, the balance of hardships does not favor a stay.

Start with QC's interests.  In its briefing, QC asserts that its "inability to obtain discovery from the government puts it at a serious disadvantage both in its

18

ability to defend against [Plaintiff's] claims and prosecute its counterclaims." (ECF No. 146, PageID.4266). Thus, QC insists that if the action proceeds now, it "will have to make strategic decisions based on little more than guesswork regarding the impact of such decisions on the criminal investigation and without critical information" that is in the Government's possession. (ECF No. 146, PageID.4266).

Essentially, QC's concern is that without a stay it will have to litigate with a blindfold on since it does not have critical discovery from the Government. Yet, if that is the case, QC's concerns would be alleviated once it had discovery from the Government, assuming QC is even entitled to that discovery.[4] Thus, the asserted prejudice relates to the lack of discovery in QC's possession, not the Government's criminal investigation. In turn, it makes little sense to stay this case until criminal proceedings are concluded if QC's concern relates to its ability to obtain discovery from the Government.

And it is difficult to place much stock in this argument considering that QC has only just now moved for a stay after it has litigated this case since November 2023 without the discovery from the Government. To reiterate, QC, as the movant,

---

[4] Whether QC is entitled to that discovery is yet to be determined. The Court denied without prejudice the Government's motions to quash the subpoenas QC served on the it. (ECF No. 154). If QC's new counsel has been unable to resolve the issues related to those subpoenas—a matter which can be discussed at the upcoming status/scheduling conference—then QC will be able to argue why it should be able to have that discovery.

19

bears the burden of showing that there is "*pressing need for delay*." *E.M.A. Nationwide, Inc.*, 767 F.3d at 627 (emphasis added). QC cannot show that there is a pressing need for delay now when it could have requested a stay much earlier in this litigation for the same reasons it asserts in the instant motion. In other contexts, the delay in seeking a stay weighs against entering a stay, and the Court sees no reason why the principle would not apply here, especially considering the extensive discovery that has taken place and judicial resources expended on navigating the parties' many discovery disputes. *See J.C. v. United States*, No. 1:19-CV-720, 2021 WL 5310935, at *3 (W.D. Mich. Feb. 17, 2021) (quoting *Proctor & Gamble Co. v. Team Techs., Inc.*, No. 1:12-cv-552, 2014 WL 533494 *3 (S.D. Ohio Feb. 11, 2014)) (holding that the timeliness of a motion to stay is "an important factor" and concluding that a stay was not warranted after the parties had conducted significant discovery and where—as here—discovery had been extended further).

Now, turn to Plaintiff's interests. Plaintiff argues that a stay would be prejudicial because it will allow QC and Power Auto Parts, Inc. ("PAP") to continue their willful infringement of Plaintiff's patents. (ECF No. 160, PageID.5000–01).[5] In support of this position, Plaintiff focuses on the fact that the

---

[5] Plaintiff's other position is that a stay risks the loss of evidence because QC does not have a document retention policy in place. (ECF No. 160, PaeID.5001–02). But this argument relies on speculation that perceived deficiencies in QC's document production stems from the

parties are direct competitors in the market and asserts that "[c]ourts routinely recognize the prejudice due to continued patent infringement as a basis for rejecting the stay." (*Id.* at PageID.5001).  On this score, Plaintiff is largely correct.  When determining whether to grant a stay in a patent case pending reexamination of the patent before the United States Patent and Trademark Office ("USPTO"), courts again consider several factors, including prejudice to the non-moving party.  *See Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 762 (S.D. Tex. 2010).  And in considering prejudice to the non-moving party, "[c]ourts regularly find this factor weights strongly against granting a stay where the parties are direct competitors."  *Toshiba Tec Corp. v. Katun Corp.*, No. 15-cv-01979, 2016 WL 9137646, at *4 (C.D. Cal. Sept. 21, 2016) (collecting cases); *see also Tesco Corp.*, 722 F. Supp. 2d at 762 ("Where the parties are direct competitors, a stay would likely prejudice the nonmovant.").  Considering that this authority derives from patent cases and addresses the prejudice the non-movant would suffer as a result of a stay, the Court finds this argument persuasive.

For its part, QC does not offer much in terms of a rebuttal.  First, it asserts that this argument presupposes infringement which is yet to be proved.  (ECF No. 163, PageID.5059).  Fair enough.  But QC makes no attempt to distinguish the

---

lack of a retention policy.  Though Plaintiff points to another case in which this was an issue for QC, Plaintiff has not connected any of the suggested deficiencies in production here to the lack of a retention policy.

authority cited in Plaintiff's brief or explain why courts routinely deem stays prejudicial to the non-movant in patent cases despite not reaching a determination as to whether infringement has occurred.  QC's second argument is equally unavailing.  It submits that neither QC nor PAP sell the aftermarket parts at issue, so there is no risk of continued infringement.  (ECF No. 163, PageID.5059–60).  QC made this argument in response to the motion to amend, and it is just as unsuccessful here as it was there.  While QC has indicated that it is essentially out of business, (ECF No. 152, PageID.4515, n.7), Plaintiff's counsel previously stated on the record that he had purchased one of the accused infringing products from PAP.  (*Id.* at PageID.4494 n.2).  So a stay of the entire case would not necessarily reduce the risk of the patent infringement alleged in Plaintiff's Amended Complaint.

In all, QC has not made a compelling case that the balance of the hardships favors a stay.  Its asserted interests are limited to its ability to obtain discovery from the Government and, even then, that interest is diminished by the fact that QC is only just now moving to stay this case after litigating this action since November 2023—all while the criminal investigation was ongoing.  And for Plaintiff's part, it has shown that a stay would be prejudicial.  Accordingly, the Court cannot conclude that the balance of hardships—the most important consideration—favors a stay.

***Court's Interest***.  The fifth factor "considers the Court's interest, essentially asking how issuing or denying a stay will impact the Court's ability to manage its docket and resolve cases expeditiously." *In re Flint Water Cases*, 2019 WL 5802706, at *3 (citing *Chao*, 498 F. Supp. 2d at 1040).  Again, this factor does not favor QC.  On this issue, QC simply states that "[j]udicial efficiency weighs in favor of a stay" and reasons that after the criminal case is resolved, "discovery can move forward quickly and without court intervention or oversight."  (ECF No. 146, PageID.4267–68).  But QC cites no authority in support of its position.  And, frankly, the Court is skeptical as to whether discovery would proceed without the need for "intervention or oversight" considering the multitude of discovery disputes the parties have brought before the Court.  "Absent an impending criminal indictment, the Court is uncertain as to how long the stay will last." *Nationwide Recovery, Inc.*, 2017 WL 6032552, at *3.  Accordingly, in the interest of judicial economy and efficiency, this civil matter should proceed. *Id.*

***Public Interest***.  On this final factor, QC's showing is just as deficient as it was on preceding issue.  Again, it merely asserts that a stay would be in the public's interest.  (ECF No. 146, PageID.4268).  Conversely, Plaintiff argues that a stay would undermine the values that undergird the system of patents, namely the encouragement of innovation, protection of research and development, and the maintenance of fair competition in the marketplace.  (ECF No. 160, PageID.5004)

(citing *Abbott Lab'ys v. Sandoz, Inc.*, 544 F.3d 1341, 1363 (Fed. Cir. 2008)).  In its reply brief, QC emphasizes that the Government requested and received a stay in the civil forfeiture action and that it would be in the interest of the public—and the Court—to treat this case the same.  (ECF No. 163, PageID.5060–61).

"A stay may be in the public interest where the criminal case advances the same interests as the civil case or where it makes sense to prioritize the interests of the criminal case." *Franz*, 2022 WL 883022, at *5 (citing *Chao*, 498 F. Supp. 2d at 1040).  That said, "the public interest is furthered where individuals' injuries are remedied in a timely manner." *E.M.A. Nationwide, Inc.*, 767 F.3d at 629.

QC has made no meaningful showing that a stay would be in the public interest.  Its only real argument is that the Court should treat this case like the civil forfeiture action.  But as explained above, this matter is distinguishable from the civil forfeiture action in critical ways that make a stay more appropriate there than in this action.  Plainly, the overlap between the forfeiture action and the criminal investigation is greater there than it is here.  What's more is that QC only relies on a single case in support of this public interest argument—*Dedvukaj v. Equilon Enters., LLC*, 301 F. Supp. 2d 664, 669 (E.D. Mich. 2004).  But QC does not explain why that case is helpful.  Nor could it since *Dedvukaj* does not involve a motion to stay and the pincite directs the Court to a summary judgment analysis

regarding the Petroleum Marketing Practice Act ("PMPA"), 15 U.S.C. § 2801 *et seq.*

"A stay of civil proceedings due to a pending criminal investigation is an extraordinary remedy." *E.M.A. Nationwide, Inc.*, 767 F.3d at 627 (citation modified). QC has not shown that the factors weigh strongly in favor of a stay and therefore has not satisfied its burden. Accordingly, its motion to stay (ECF Nos. 146, 148) is **DENIED**.[6]

### C. Plaintiff's Motion for Sanctions

Finally, the Court considers Plaintiff's motion for sanctions related to the Court-ordered depositions from the December 8, 2025, Order. (ECF No. 164). As mentioned, Plaintiff asks for truly sweeping relief—the dismissal of QC's counterclaims, an adverse inference of willful infringement, and an order prohibiting QC's witnesses from testifying at trial. Considering the circumstances that arose after the Court filed its December Order, Plaintiff's motion is **DENIED**.

After the Court denied QC's motion to stay depositions and granted Plaintiff's motion to compel, the Court ordered the depositions to take place within thirty days of that December 8, 2025, Order. (ECF No. 131). And after the Court granted QC's former counsel's motion to withdraw, the Court afforded QC thirty

---

[6] Because the motion is denied, QC need not re-file the motion. (ECF No. 158, PageID.4934).

days from the date of that motion to secure new counsel.  (ECF No. 135).  But because that motion was filed the same day as the December 8, 2026, Order, the deadlines to conduct the depositions and secure new counsel overlapped.  Thus, as QC argues, it was practically impossible for QC to appear for the ordered depositions.  (ECF No. 173, PageID.5296).

Shortly after new counsel made their appearance, there was also a short turnaround to prepare for the motion hearing set for Plaintiff's motion to amend. Common courtesy and common sense would suggest that new counsel would need time to get up to speed on the issues that would be pertinent to the depositions. And between making their appearances and the depositions Plaintiff noticed for late January 2026, QC filed the now-denied motion to stay.

More importantly, in the Court's Amended Omnibus Order, the Court signaled to the parties that following the motion to amend and the appearance of counsel that "a reset of sorts" would be "prudent" considering how contentious discovery has been to this point.  (ECF No. 154).  In doing so, the Court instructed that it would "conduct an in-person status and scheduling conference at which point [the Court] will provide the parties guidance on how to proceed regarding" their discovery disputes after Plaintiff served its First Amended Complaint and after Defendants filed their responsive pleadings.  (*Id.* at PageID.4556). Considering QC filed its motion to stay this entire action and that motion would

26

impact Plaintiff's ability to conduct the ordered depositions, it was appropriate to resolve that motion before scheduling the aforementioned conference, at which point the depositions could be discussed further.

Plaintiff has filed its amended pleading, Defendants have filed their responses, and this motion to stay is now resolved. It was the intent of the Court to schedule a status and scheduling conference concurrently with this order to discuss how to proceed with discovery, including the ordered depositions; however, due to Defendants' motion to stay filed today this case will yet again be unable to proceed forward.

Given the unique circumstances that followed after the Court's December 8, 2026, Order and the fact that the depositions and this case will proceed, the Court will not impose the drastic sanctions that Plaintiff has requested.

## III.   CONCLUSION

For the reasons stated above, it is **ORDERED** that QC's *Re-Filed Unopposed Motion for Leave to File Under Seal Exhibits to its Motion to Stay* (ECF No. 158) is **GRANTED** and its *Motion to Stay* (ECF Nos. 146, 148) is **DENIED**. It is further **ORDERED** that Plaintiff's *Motion for Rule 37 Sanctions Against Quality Collision for Failure to Obey a Discovery Order* (ECF No. 164) is **DENIED**.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as error any defect in this Order to which timely objection was not made.  Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich. Local Rule 72.2.

Date: April 10, 2026                              s/Curtis Ivy, Jr.
                                                  Curtis Ivy, Jr.
                                                  United States Magistrate Judge